## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

NATIONAL RELIGIOUS
BROADCASTERS, SAND SPRINGS
CHURCH, FIRST BAPTIST CHURCH
WASKOM, and INTERCESSORS FOR
AMERICA

      Plaintiffs,

v.

DANNY WERFEL, IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF
THE INTERNAL REVENUE SERVICE, and
THE INTERNAL REVENUE SERVICE

      Defendants.

Civil Action No. _____

## COMPLAINT FOR DECLARATORY RELIEF

### INTRODUCTION

1. The Internal Revenue Code ["IRC"] prohibits only one class of nonprofit organizations from communicating their views about political candidates—those organized under § 501(c)(3) of the IRC. This is the result of language added to the IRC in 1954 and known widely as the Johnson Amendment. In general, this Section prohibits such nonprofits from supporting or opposing candidates for public office, including making statements about such candidates.

2. All for-profit corporations and all nonprofits organized under any other section of the IRC can freely speak their views about political candidates in accordance with the Free Speech Clause of the First Amendment. *Citizens United v. Fed. Election Comm'n,* 510 U.S. 310 (2010).

1

3.  Other kinds of nonprofits are free to speak about political candidates, even though such organizations are exempt from federal income tax and obtain the bulk of their income from revenue that is tax-deductible to the "donor" of the organization—usually as business expenses.

4.  Churches are placed in a unique and discriminatory status by the IRC. Under § 508(c)(1) of the IRC, churches need not apply to the Internal Revenue Service ["IRS"] to obtain recognition of their 501(c)(3) status. The IRC places them automatically within the ambit of 501(c)(3) and thereby silences their speech, while providing no realistic alternative for operating in any other fashion. Churches have no choice; they are automatically silenced vis-à-vis political candidates.

5.  Hundreds of newspapers are organized under § 501(c)(3), and yet many openly endorse political candidates. Others make statements about political candidates that constitute forbidden statements under the IRS' interpretation of the statutory prohibition against supporting or opposing candidates. Plaintiffs believe that nonprofit newspapers have a clear constitutional right to make such endorsements or statements. Plaintiffs simply contend that they should also have the same freedom of speech.

6.  The IRS has formally recognized the right of college newspapers (owned by colleges that are 501(c)(3) nonprofit organizations) to publish endorsements for political candidates. Rev. Rul. 72-513, 1972-2 C.B. 246. While Plaintiffs contend that such newspapers should have such a right under the First Amendment, it is a denial of equal protection to interpret § 501(c)(3) to allow college newspapers to endorse candidates while prohibiting nonprofits like Plaintiffs from doing the same.

7.    Many 501(c)(3) organizations engage in electoral activities that are open, obvious, and well-known, yet the IRS allows some, but not all, such organizations to do so without penalty. Again, Plaintiffs believe that such churches have the constitutional right to engage in such participation; they simply want the same right for themselves.

8.    There is no apparent rational basis for determining which 501(c)(3) organizations will be permitted to proceed, and which will be penalized for violating the Johnson Amendment. The IRS acts in an arbitrary and capricious manner vis-à-vis electoral statements by nonprofit organizations.

9.    The IRS operates in a manner that disfavors conservative organizations and conservative, religious organizations in its enforcement of § 501(c)(3). This is a denial of both religious freedom and equal protection.

10.   Plaintiffs are all religious nonprofit organizations in the business of communicating their views to the public. They regularly speak on a nearly infinite variety of topics and situations, believing that the Christian faith as taught in the Holy Bible speaks to every area of life. However, under the IRC as interpreted and enforced by the IRS, there is one area of life where they are not free to speak—to wit, their views about political candidates and issues.

11.   Some Plaintiffs do not want to formally endorse or oppose political candidates. However, all Plaintiffs desire to communicate their views about candidates' positions that are relevant to the issues Plaintiffs care about. They would do so but for the Johnson Amendment. The IRS operates in a manner whereby the Plaintiffs are in jeopardy of punishment if they forthrightly say that a candidate's positions are unbiblical; or that another candidate's positions are consonant with biblical teaching. The Plaintiffs' speech is clearly chilled in this regard because they are not free to proclaim their views on the issues of the day and then

3

compare their views with the views of the candidates on these same issues. Yet, countless other entities that are similarly situated face no such restrictions by law, in some cases, or in practice, in others.

12.   Plaintiffs have no adequate legal alternative to vindicate their rights to freely speak other than this proceeding. It is inappropriate to require them to disobey IRC rules and/or the IRS' interpretation of the IRC, as doing so requires them to risk their tax-exempt status if their challenge is unsuccessful.

13.   Plaintiffs do not contend that the limitation on lobbying activity violates the First Amendment. Nor do they contend that their inability to directly donate to political candidates violates their First Amendment rights. Rather, they only seek a declaratory judgment that they may use their regular means of communication to expound their views concerning political candidates who seek to represent them. Plaintiffs seek no relief from the operation of the Johnson Amendment outside of this context.

14.   Plaintiffs contend that the Johnson Amendment, as written and as applied by the IRS, violates the First Amendment's Free Speech Clause, Free Exercise Clause, the Fifth Amendment's Due Process Clause (Void for Vagueness), the Fifth Amendment's Due Process Clause (Equal Protection), and the Religious Freedom Restoration Act.

15.   As with all fundamental rights, deprivation of those rights is irreparable injury per se. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

## JURISDICTION AND VENUE

16.   Plaintiffs seek declaratory, injunctive, and other appropriate relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

17.  This Court has the authority to grant such relief to Plaintiffs under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02; the Constitution of the United States; and the Court's inherent equitable powers.

18.  This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the U.S. Constitution and federal law. Specifically, this Court has subject-matter jurisdiction to determine if a law of Congress violates the Constitution of the United States as applied to Plaintiffs.

19.  This Court has jurisdiction under 28 U.S.C. § 1346(a) because this is a civil action against the United States.

20.  An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

21.  Venue is proper in this District under 28 U.S.C. § 1391, including paragraph (e).

22.  Defendants are an officer of the United States and an agency of the United States, acting in their official capacities or under color of legal authority.

23.  Plaintiff Sand Springs Church is located in Athens (Henderson County), Texas. First Baptist Church Waskom is located in Waskom, Texas. Both churches are located within the Eastern District of Texas. Sand Springs Church is located within the Tyler Division of the District. Venue is therefore proper within this district under 28 U.S.C. § 1391, including paragraph (e).

**PARTIES**

24.  Plaintiff National Religious Broadcasters is a nonprofit corporation with tax exempt status under § 501(c)(3) of the Internal Revenue Code. National Religious Broadcasters is located in Washington, DC.

25. Plaintiff Sand Springs Church is a nonprofit corporation with tax exempt status under § 501(c)(3) of the Internal Revenue Code. Sand Springs Church is located in Athens, Texas.

26. Plaintiff First Baptist Church Waskom is a nonprofit corporation with tax exempt status under § 501(c)(3) of the Internal Revenue Code. First Baptist Church Waskom is located in Waskom, Texas.

27. Plaintiff Intercessors for America is a nonprofit corporation with tax exempt status under § 501(c)(3) of the Internal Revenue Code. Intercessors for America is located in Purcellville, Virginia.

28. Defendant Danny Werfel is the Commissioner of the Internal Revenue Service. He has the responsibility of enforcing the tax laws of the United States, including § 501(c)(3) of the Internal Revenue Code. His office is in Washington, DC, and he is sued solely in his official capacity.

29. Defendant the Internal Revenue Service is an agency of the government of the United States with the responsibility for enforcing the Internal Revenue Code, including § 501(c)(3).

**STANDING**

30. As described with more particularity below, Plaintiffs have suffered "an injury in fact" and have shown that there is a "sufficient causal connection" between the Johnson Amendment, as written and as applied by the IRS, and that the injury "will be redressed by a favorable decision." *Glass v. Paxton*, 900 F.3d 233, 238 (5th Cir. 2018). "Nothing in this Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163 (2014).

31.   This case arises under the First Amendment, and Plaintiffs' central claim is that their right to speak freely about political candidates and issues are being improperly chilled by the Johnson Amendment, as written and as enforced by the IRS. They are subject to sanction by the IRS for any violation of the Johnson Amendment. "[S]tanding rules are relaxed for First Amendment cases so that citizens whose speech might otherwise be chilled by fear of sanction can prospectively seek relief." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024); "[t]he First Amendment challenge has unique standing issues because of the chilling effect, self-censorship, and in fact the very special nature of political speech itself.' It is not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 331 (5th Cir. 2020).

32.   None of the Plaintiffs have heretofore violated the Johnson Amendment, but all have engaged in self-censorship to avoid doing so and incurring the commensurate penalties provided in the IRC. "In pre-enforcement cases alleging a violation of the First Amendment's Free Speech Clause, the Supreme Court has recognized that chilled speech or self-censorship is an injury sufficient to confer standing." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024). "Because [Plaintiffs] intended future conduct concerns political speech, it is certainly 'affected with a constitutional interest.' . . . [T]he constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014). This satisfies the first standing requirement to demonstrate that there is an injury in fact.

33.   Plaintiffs have suffered an injury in fact if they (1) have an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) their intended future conduct is proscribed by Johnson Amendment, and (3) the threat of future enforcement of the Johnson Amendment is substantial as outlined herein. *Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020).

34.   The text of the Johnson Amendment and its enforcement by the Defendants, as described more particularly below, are the causes of the chilling of Plaintiffs' speech and the other constitutional violations as alleged below. This satisfies the second standing requirement to demonstrate that there is a sufficient causal connection between the actions of the Defendants and the injury suffered by Plaintiffs.

35.   The Johnson Amendment is actively enforced by the IRS. Its website contains strong warnings to relevant nonprofits to avoid violating its provisions. Moreover, "[r]egarding this third [standing] requirement, when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Barilla v. City of Houston, Texas*, 13 F.4th 427, 431–32 (5th Cir. 2021).

## FACTS

36.   Title 26, § 501(c)(3) of the United States Code provides as follows:

Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of

athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), **and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office**. (Emphasis added).

37.   The bolded language in said statute was added by Senator Lyndon Johnson in 1954 (although it was slightly amended later). This portion of this section is widely known as the Johnson Amendment, and it is this portion that is challenged in this litigation.

38.   Insofar as this section prohibits nonprofit organizations organized under § 501(c)(3) from speaking freely about political candidates, it is a violation of the First Amendment's protection of freedom of speech. The political speech prohibited is core protected speech under the First Amendment, and there is no compelling governmental interest that justifies this limitation of constitutional freedom.

39.   Plaintiffs have not "participated in," or "intervened in," or "published or distributed any statement" in "any political campaign on behalf of or in opposition to any candidate for public office." Nor have Plaintiffs knowingly violated any regulation or interpretation of the IRS vis-à-vis the Johnson Amendment. No adverse action of any kind by the IRS is pending against any Plaintiff, because Plaintiffs have censored     their own speech to avoid incurring any sanction by the IRS.

40.    The IRS has sanctioned Cornerstone Chapel, another 501(c)(3) organization, for violating the Johnson Amendment. See, Paragraph 71. One of the factors it used in reaching this conclusion was that said organization distributed a voting guide produced by Plaintiff Intercessors for America. There was no determination that Intercessors for America violated the Johnson Amendment, and there is no action pending between the IRS and this Plaintiff.

41.    Each Plaintiff is constrained from speaking freely about political candidates by the Johnson Amendment and by the arbitrary and capricious interpretation and enforcement by the IRS. Each Plaintiff desires the freedom to discuss political candidates and their fidelity to Plaintiffs' interests and values. Plaintiffs' speech has been unconstitutionally chilled by both the Johnson Amendment and its arbitrary interpretation and enforcement.

42.    For example, Plaintiff National Religious Broadcasters (NRB) is engaged in a major effort in Congress to ensure that automobile manufacturers do not eliminate AM radios from their cars and trucks. Members of Congress have taken positions on their support or opposition to the NRB position on this issue. NRB desires to communicate such information to its members encouraging them to remember this fact when voting. However, because of the Johnson Amendment and the uncertainty surrounding its enforcement, Plaintiff NRB is unable to encourage its members or the public to vote for congressional candidates who support AM radio, or to vote against candidates who side with the automobile manufacturers. Yet, automobile manufacturers are free to publicly support or oppose candidates based on their positions on this, or any other issue of interest to them. Plaintiffs' speech has been chilled in this and countless other similar manners.

43.    All Plaintiffs are Christian organizations that embrace a biblical worldview, which includes the belief that every aspect of life is subject to the jurisdiction and standards of God as set

forth in the Bible. There are no areas of life that are outside of God and His standards. This includes political issues. To faithfully carry out each of their respective ministries, each Plaintiff believes it has a duty before God to teach what the Word of God says about every issue of life, and to apply such teaching in practical ways rather than speaking in merely theoretical terms. In fact, the Book of James teaches that it is a sin for a person to know the right thing to do but to fail to do it. James 4:17.

44.     Moreover, the Book of Hosea teaches that Israel was punished for "setting up" kings and making princes without God's permission. Hosea 8:4. In Deuteronomy 17:14 et seq., God set forth standards for choosing kings for Israel. The people were taught to choose kings who did not deviate either to the right or to the left from God's standards. Although these passages were written literally to the nation of Israel in the Old Testament, the New Testament teaches that all Scripture is given by God and is profitable for enabling every believer to do good works. 2 Timothy 3:16. Plaintiffs believe this means that the prescriptions of the Old Testament concerning the duty to follow God's standards in the selection of a political leader are applicable by principle to Christians today. Accordingly, Plaintiffs believe that every Christian has a duty to vote in accordance with the standards of God's Word.  Plaintiffs believe that they have a duty to teach the full counsel of the Word of God, and to declare when candidates have deviated from the right or the left of God's standards. Plaintiffs cannot do so without fear of punishment from the IRS.

45.     But for the Johnson Amendment and its arbitrary enforcement, each Plaintiff would engage in speech that clearly states the positions of candidates on issues, while at the same time teaching the standards of the Word of God on such issues. This comparison—the standards of the Word of God vis-à-vis the position of candidates on the same issues—is deemed by

the IRS to constitute support or opposition to candidates in violation of the Johnson Amendment.

**IRS's Arbitrary and Capricious Enforcement
Of the Johnson Amendment**

**NEWSPAPERS**

46.    In addition to its power of audit, § 6852 of the Internal Revenue Code provides that if the IRS determines that an organization has violated the Johnson Amendment, the Service may immediately determine the amount of income and § 4955 tax due. Moreover, § 7409 grants the IRS the power to seek an injunction against an exempt organization that flagrantly violates the political campaign prohibition to prevent further political expenditures by the organization.

47.    Despite this authority, the IRS routinely allows favored organizations to openly and notoriously violate the Johnson Amendment.

48.    There are hundreds of newspapers that are owned by and operated as nonprofits under § 501(c)(3). Many such newspapers routinely endorse political candidates.

49.    Upon information and belief, the IRS has never enforced the Johnson Amendment against a nonprofit newspaper.

50.    *The Philadelphia Inquirer* is the largest newspaper in the nation that is owned by a § 501(c)(3) nonprofit organization—the Lenfest Institute. "*The Philadelphia Inquirer* is the largest American newspaper owned by a nonprofit and dedicated to public service. The Lenfest Institute is joined by thousands of individual donors in supporting investigative journalism, diversity, and product innovation at *The Inquirer*." https://www.lenfestinstitute.org/our-work/the-philadelphia-inquirer/.

12

51. Its own website (https://www.lenfestinstitute.org/our-work/the-philadelphia-inquirer/) further describes *The Philadelphia Inquirer*'s ownership and operation as follows:

**Inquirer ownership**

The Lenfest Institute for Journalism is a non-profit LLC formed for charitable and educational purposes. The Institute is *The Inquirer*'s non-controlling majority shareholder.

The Institute is an affiliate of The Lenfest Institute for Journalism Special Asset Fund of Philadelphia Foundation (Formerly The Philadelphia Foundation Special Assets Fund), a tax-exempt organization under the Internal Revenue Code Section 501(c)(3) and a public charity. Neither The Institute nor TPF control *The Inquirer*. Instead, The Inquirer's Board of Directors is responsible for operational and key decision-making. The Inquirer remains a for-profit business, a "B-Corp" or Public Benefit Corporation.

Although the Institute technically owns *The Inquirer*, under the legal structure– and to protect its editorial independence – *The Inquirer* operates independently under its current management team and its Board of Directors.

The Institute owns 9,999 non-voting shares in *The Inquirer*. The charitable Inquirer Trust holds the one voting share of stock of *The Inquirer*. The trustees of the charitable trust are the same as the members of the Board of Directors of *The Inquirer*. The purpose of the charitable trust was to vest control of *The Inquirer* in the hands of its Board of Directors so as to ensure it would be operated independently from the Institute and maintain editorial independence.

The Institute's Board of Managers governs the tax-exempt mission of the Institute. Although inherently connected to *The Inquirer*, these are independent bodies with independent missions and independent responsibilities.

52. Thus, the Lenfest Institute is a 501(c)(3) organization that uses its money to fund the publication of *The Philadelphia Inquirer*. *The Philadelphia Inquirer*, in turn, regularly issues formal endorsements for political candidates—almost always members of the Democratic Party. Its endorsements in the 2024 primary election can be found here: https://www.inquirer.com/opinion/editorials/inq2/inquirers-2024-primary-endorsement-guide-20240419.html. Its endorsements for 2023 can be found here: https://www.inquirer.com/opinion/inq2/2023-general-election-endorsements-20231021.html. Its endorsements for 2022 can be found here: https://www.inquirer.com/opinion/inq2/2022-election-pennsylvania-endorsements-guide-20221009.html.

53. The Lenfest Institute uses its nonprofit resources to publish a newspaper that endorses political candidates. Despite its elaborate corporate structure, there is no doubt that a nonprofit is funding a newspaper that endorses political candidates. This clearly violates the Johnson Amendment. The IRS allows this to proceed unhindered.

54. The Positive Futures Network is a 501(c)(3) organization that owns Yes!Media which publishes *Yes!Magazine*. About YES! - YES! Magazine Solutions Journalism (yesmagazine.org). This online news source endorsed Bernie Sanders for president in 2016 in the Democratic primary and explicitly said "A Trump presidency would be a climate disaster." Choosing a President in a Time of Climate Crisis - YES! Magazine Solutions

14

Journalism (yesmagazine.org). The IRS allowed this unlawful activity to proceed unhindered.

55.    *Witness LA* is an online newspaper that solicits tax-deductible contributions "through Community Partners, our fiscal sponsor." Support WitnessLA|. It issued endorsements in the 2012 election for Congress, District Attorney, and President ("**OH, YEAH, AND FOR THE OFFICE OF PRESIDENT OF THE UNITED STATES, WE RECOMMEND: Barak Obama.** (But you probably knew that.")) (Emphasis in original.) The WitnessLA November 2012 Elections Endorsements |. The IRS allowed this to proceed unhindered.

56.    Real News Project, Inc., is 501(c)(3) organization that publishes *WhoWhatWhy*—an online newspaper. It takes a position on elections that clearly violates the Johnson Amendment's prohibitions on making statements that support or oppose candidates. For example, in the runup to the 2016 election, *WhoWhatWhy* published a long anti-Donald Trump article (https://whowhatwhy.org/opinion/editorial-donald-trump/) which included the following:

> Like it or not, Trump is as much an American as Martin Luther King. If it hadn't been for people like Trump in the past, there would have been no need for people like King. You cannot wash racism, ignorance and demagoguery out of American history…It is fatuous to say Trump is "not who we are." He is who many of us were in the era of slavery and lynching, and who many of us are in the era of police shootings and Islamophobia.

> All I can say about Trump is what Mark Twain is alleged to have said about the Jews: "Jews are part of the human race. Worse than that, I cannot say of them." The fears Trump stokes are our own. Democracy is ever at risk from demagogues and would-be "strong men." The test is whether we succumb to their

blandishments, or whether we offer allegiance to those who summon what Abraham Lincoln called "the better angels of our nature."

In the runup to the 2024 election it published another anti-Trump article (Donald Trump: Political Force or Political Farce? - WhoWhatWhy) that included the following:

It's like that with Trump. Obviously, people should be afraid of a malignant narcissist who leads a cult of heavily armed, gullible idiots. That's a scary prospect… and it's going to be a problem for as long as he is around.

As a result, the danger he poses to democracy and stability in the US is also very real… and of course it would be amplified if he ever returned to the White House again.

The IRS allows this to proceed unhindered.

57.   Growing Community Media is a 501(c)(3) organization that publishes the *Wednesday Journal of Oak Park and River Forest*. Growing Community Media NFP (neoncrm.com). It publishes many anti-Trump articles including one that contained the following, dated July 19, 2024: https://www.oakpark.com/2024/07/16/thoughts-and-prayers-for-donald-trump/:

You didn't deserve to be shot, but you do deserve to be defeated at the polls in November, and I don't want you to die because I want you to experience that defeat. It's the only way to kill (if you'll excuse that violent phrasing) the authoritarian, anti-democratic movement you represent. Killing a person doesn't kill off an ideology, even one as reprehensible as yours.

The IRS allows this to proceed unhindered.

58.   Washington Monthly is a 501(c)(3) organization. https://washingtonmonthly.com/about/. A staff writer for this online news source endorsed Kamala Harris for president in the 2024

election prior to President Biden's withdrawal. The piece was published on July 11, 2024, and explicitly said "[o]nly one person can build on the administration's accomplishments, have unfettered access to funds and ballot lines, and do so without wasting precious time. Her name is Kamala Harris." https://washingtonmonthly.com/2024/07/11/im-a-dnc-member-and-a-public-opinion-professional-its-highly-unlikely-biden-can-win/. The IRS allows this to proceed unhindered.

59.   Subsequent to Biden's withdrawal, the Washington Monthly published a second endorsement article by one of its editors. Here is another endorsement article for Kamala Harris for president from the Washington Monthly. This piece was published on July 22, 2024, and said "[f]ortunately, Biden was able to recognize his limitations, stand down, and lift Harris up. His Number Two, with sharper communication skills, has the ability to defend the record of the last four years and erode the rhetorical foundation of Trump's comeback campaign.

60.   At the risk of being excessively optimistic amid an exhilarating moment, I believe the former prosecutor can set the economic record straight. If she does, the presidential election won't be all that close." https://washingtonmonthly.com/2024/07/22/kamala-can-correct-trumps-tallest-tale/. The IRS allows this to proceed unhindered.

61.   The Red & Black Publishing Company, Inc is a 501(c)(3) organization that publishes The Red & Black. https://www.redandblack.com/site/about_the_red__black.html. This online news source explicitly endorsed Stacey Abrams on October 25, 2018, and said "ENDORSEMENT: Athens and UGA need Stacey Abrams as governor." https://www.redandblack.com/opinion/endorsement-athens-and-uga-need-stacey-abrams-

as-governor/article_8907626c-d7cf-11e8-8898-6fb2ff2111b4.html. The IRS allows this to proceed unhindered.

62. Capital Region Community Media Inc is a 501(c)(3) organization that publishes the online news source, The Bridge. https://montpelierbridge.org/about/. The Bridge published a piece on April 22, 2016 under a double byline. The first is Tom Brown identified as its contributing editor. The second is Thomas Mullholland, who is not further identified. This Opinion piece explicitly endorsed Bernie Sanders as the democratic nominee. The piece said "[i]f Sanders is not nominated at the Democratic National Convention I will vote for him as a write-in candidate. To vote for Hillary Clinton is a disavowal of the revolution. This I will not do." https://montpelierbridge.org/2016/04/opinion-vote-for-bernie/. The IRS allows this to proceed unhindered.

63. Forward Assoc Inc is a 501(c)(3) organization that publishes the online news source, Forward. https://forward.com/about-us/. The Forward published a piece on June 28, 2024 that expressly opposed presidential candidate, Donald Trump. The piece said "[i]n 2016, Trump's outrageousness was rewarded with the presidency. Over the past four years, many of us have let fade the memory of the profound rot in our culture that followed his first term in office; the sense of rot we felt in our own souls. This time, we cannot treat his lies with the same cavalier attitude. We owe it to the U.S. — and the world — to react." https://forward.com/opinion/628743/trumps-lies-debate-biden/. The IRS allows this to proceed unhindered.

64. Street Sense Media is a 501(c)(3) organization that publishes the online news source, Street Sense Media. https://streetsensemedia.org/about/. Street Sense Media published a piece on April 29, 2020 that expressly endorsed Biden for president. It is written by Jeff Taylor who

is identified as a vendor for Street Sense Media. The piece said that "[t]here's a saying that, much to my displeasure, rings true: Republicans fall in line, Democrats fall in love. This November there will undoubtedly be some Democrats who aren't in love with Joe Biden. I'm here to say to them, "Get over yourself and do what needs to be done to quite literally save the world. Vote for Joe Biden." But I suspect the vast majority of Democrats (and others) will be excited to do so, especially after Obama, Warren, and yes, Sanders, among others, help them to fully understand that everything, and I mean EVERYTHING is at stake!" https://streetsensemedia.org/article/get-excited-for-president-biden/. The IRS allows this to proceed unhindered.

65.  Stocktonia News Group Inc is a 501(c)(3) organization that publishes the online news source, Stocktonia News Service. https://stocktonia.org/about/. Stocktonia News Service published a piece on February 24, 2024 that strongly opposed one candidate, Tom Patti, in the primary election for mayor of Stockton. In somewhat milder terms, it opposed Christina Fugazi in the same six-way primary. The piece concluded, "Better still, select from the other mayoral candidates, Jesus Andrade, Jessica Velez, Shakeel Ahmad, and Dan Wright. They offer    a    choice    between    politicos    with    no    toxic    affiliations." https://stocktonia.org/news/opinion/2024/02/24/its-the-corruption-stupid/. The IRS allows this to proceed unhindered.

66.  The San Antonio Report is a 501(c)(3) organization that publishes the online news source, The San Antonio Report. https://sanantonioreport.org/about-us-3/. The San Antonio Report published a piece on December 24, 2023 that expressly condemned presidential candidate, Donald Trump. It was written by Robert Rivard who is identified as the co-founder of the San Antonio Report. The piece said that "[w]e are entering a presidential election year with

the first state primaries one month away. Candidate Trump infamously has doubled down on his dehumanizing slander that immigrants are 'poisoning the blood of our country.' Those are cruel words from a nativist whose mother and grandfather were immigrants. Two of his three wives were immigrants. Yet all were white, undoubtedly the telling difference for Trump in his contempt for the Mexicans he has vilified since he announced his candidacy for president at Trump Tower in 2015." https://sanantonioreport.org/a-nation-founded-by-immigrants-needs-to-safeguard-its-values/. The IRS allows this to proceed unhindered.

67. Patagonia Regional Times is a 501(c)(3) organization that publishes the online news source, Patagonia Regional Times. https://patagoniaregionaltimes.org/about-us/. This online news source published a piece by one of their contributors on February 1, 2023 that expressed condemnation of presidential candidate, Donald Trump. The piece said that "[n]obody's never heard of Donald Trump. He clearly knows instinctively what every ad man knows: There's no such thing as bad publicity. I'm not among his devotees, as you will know if you have read this rustic rag before. But there is no ignoring that he hates being ignored. He's huge. So big that even we who think of Donald as a miscreant cannot deny his massive influence." It continues: "When some ambitious psychopath just farts at decency, it stimulates the billion little pathogens out there, who, bored with waiting in the wings, and seeing what he gets away with based on The Big Lie, are hungry, antsy, and impatient to give it a try. We're threatened with a vast pandemic now, more dangerous than Omicron can be, when copycats like Bolsonaro, Kari, Marjorie and Matt – along with Greasy Rudy and small, wormlike Lindsay Graham, will wag their crooked tongues and hawk their sick, corrosive lies, and see it as success if true democracy just dies."

https://patagoniaregionaltimes.org/life-among-the-humans-none-of-your-rules-apply-to-me/. The IRS allows this to proceed unhindered.

68. Kentucky Center for Public Service Journalism is a 501(c)(3) organization that publishes the online news source, The NKyTribune. https://nkytribune.com/who-we-are-2/. This online news source published a piece in April 2024 (no specified date given in article beyond month and year) that condemned presidential candidate, Donald Trump. The piece said that "[i]n a weird way, it doesn't much matter what Trump has done in the past. What is frightening is what he plans to do in the future if he returns to power — using the Justice Department to get revenge on his foes, initiating a more authoritarian government, implementing lessons he's learned from his heroes Viktor Orban, the prime minister of Hungary, and Recep Tayyip Erdoğan, the president of Turkey, further undermining the democratic process and destroying NATO, thus threatening world stability." https://nkytribune.com/2024/04/opinion-bill-straub-fathoming-the-unfathomable-is-just-incomprehensible-no-matter-how-you-look-at-it/. The IRS allows this to proceed unhindered.

69. National Catholic Reporter is a 501(c)(3) organization that publishes the online news source, National Catholic Reporter. https://www.ncronline.org/mission-and-values. This news source published a piece on September 19, 2023 that condemned presidential candidate, Donald Trump. The piece said:

> Here was new American politics where the lying, the language, the late-night TV show were being used to squeeze the concept of "Republic" out of the United States and turn it into a demaguery minus a Senate-approved Cabinet. We had gotten ourselves a tiny little king. But how? Who was voting for him? Who would

put someone like that — an accused liar, thief, rapist, egomaniac — into the highest office in the land? And why? Who would support this kind of political chicanery themselves? What kind of people — what kind of country — were we who would simply step aside and allow the walls of decency, dignity and public political values to collapse? And all of it with the kids of the nation in the room watching us and who now, as a result, had no political steel of the soul left to admire. Living through this kind of presidency once is difficult enough. The very thought that this could become the tone of America's politics in the future is dizzying. Terrifying maybe: As in, bring on the guns. Stop the immigrants. Forget the allies. Dally with dictatorships. And you can forget "Invictus," too — "I am the master of my fate; I am the captain of my soul" — as you watch our democracy go slowly by."

https://www.ncronline.org/opinion/ncr-voices/where-are-we-getting-our-values-these-days. The IRS allows this to proceed unhindered.

70.   A second article from the National Catholic Reporter, published on July 8, 2024, that also condemned presidential candidate, Donald Trump and his potential presidential team. The article said that "Biden's opponent was combative and on message, even though almost every word out of his mouth was a lie. The president's performance made us sad; Donald Trump's performance was scary. Also scary are the people with whom the former president will surround himself if he returns to the White House. The presidency is not a single person; it is also all the people the president brings to the executive branch to run the government. Many of the experienced people who surrounded Trump in his first term have denounced him and endorsed Biden. The second Trump presidency will be filled with incompetent

sycophants." https://www.ncronline.org/opinion/guest-voices/old-president-and-old-pope. The IRS allows this to proceed unhindered.

71.   Foundation for National Progress is a 501(c)(3) organization that publishes the online news source, Mother Jones. https://www.motherjones.com/about/. This news source published an article on May 31, 2023 that condemned Ron DeSantis as the Republican nominee. The piece said that "[i]t can feel pointless to fact-check a candidate who does not care that he's wrong. But in kicking off his campaign in this way, DeSantis is echoing the style and politics of the man he seeks to supplant, Donald Trump, who began his own bid for president eight years ago by characterizing migrants who were crossing the southern border as "rapists." Trump was lying then, but he told that lie because he meant it. This is not a trivial slip-up from DeSantis, either. It is a falsehood that expresses a truth: Whether your papers say you belong here is not the same thing as whether Ron DeSantis and his fans think you do." https://www.motherjones.com/politics/2023/05/ron-desantis-cant-stop-smearing-asylum-seekers/. The IRS allows this to proceed unhindered.

72.   Isthmus Community Media Inc is a 501(c)(3) organization that publishes the online news source, Isthmus. https://isthmus.com/about. This news source published an article on November 8, 2023 that expressly endorsed anyone but presidential candidate, Donald Trump. The piece said that "I have one goal for the election that will take place exactly a year from now: Make sure Donald Trump does not return to the White House." https://isthmus.com/opinion/citizen-dave/time-to-break-from-joe-biden/. The IRS allows this to proceed unhindered.

73.   Midwest Center for Investigative Reporting Inc is a 501(c)(3) organization that publishes the online news source, Investigate Midwest. https://investigatemidwest.org/about/. This

news source published an article on March 27, 2024 that expressly condemned the presidential candidate, Donald Trump. The article said that "[f]armers should beware a second Trump term…Those who cannot remember the past are condemned to repeat it. Don't say you haven't been warned." https://investigatemidwest.org/2024/03/27/farmers-should-beware-a-second-trump-term/. The IRS allows this to proceed unhindered.

74.    In These Times is a 501(c)(3) organization that publishes the online news source, In These Times. https://inthesetimes.com/about. This news source published an article on February 9, 2024 that expressly condemned presidential candidate, Donald Trump. The article said that "Trump is trying to court union members by saying he's a 'friend' to labor—but he's actually a billionaire scab out to strip workers of their rights." https://inthesetimes.com/article/donald-trump-labor-union-teamsters-uaw. The IRS allows this to proceed unhindered.

75.    Highway58Herald.org is a 501(c)(3) organization that publishes the online news source, Highway 58 Herald. https://highway58herald.org/about/. This news source published an article on July 3, 2024 that expressly condemned presidential candidate, Donald Trump. The article said that "Joe Biden is a good man and he's done a good job as president, but his showing in the debate was so shaky that I wish he would do the right thing and step aside. He's too old, I'm sorry. The Dems have half a dozen potential candidates who would wipe the floor with Trump, who is — repeat after me — a vile, buffoonish con man, liar, braggart, cheat, fool, felon, groper and, worst of all, a traitor to democracy and to our Constitution." https://highway58herald.org/the-vengeful-old-rose-and-other-musings/. The IRS allows this to proceed unhindered.

76.   High Country News is a 501(c)(3) organization that publishes the online news source, High Country News. https://www.hcn.org/about/. The news source published an article on July 17, 2024 that expressly condemned presidential candidate, Donald Trump. The article said that "[g]iven everything Trump did — or tried to do — during his first term and since it ended, and given all he's promised to do in the future, it's hardly extreme or inflammatory to call on Americans to stand up and stop him." https://www.hcn.org/articles/who-is-spouting-violent-rhetoric/. The IRS allows this to proceed unhindered.

77.   El Tecolote is a 501(c)(3) organization that publishes the online news source, El Tecolote. https://eltecolote.org/content/en/about/. This news source published an article on October 27, 2021 that endorsed David Campos for California's 17th Assembly District. The article said that "David Campos' experience, ideological conviction make him the best candidate for District 17 seat." https://eltecolote.org/content/en/david-campos-experience-ideological-conviction-make-him-the-best-candidate-for-district-17-seat/. The IRS allows this to proceed unhindered.

78.   Latino Media Collaborative is a 501(c)(3) organization that publishes the online news source, CALÓ News. https://www.calonews.com/site/about.html. The news source published an article on November 1, 2022 that endorsed Karen Bass for LA mayor. The article said that "EDITORIAL: CALÓ NEWS endorses Karen Bass for LA mayor." https://www.calonews.com/news/politics/editorial-cal-news-endorses-karen-bass-for-la-mayor/article_40666526-c46d-5d76-91f7-128757550e36.html. The IRS allows this to proceed unhindered.

79.   The IRS has issued a private letter ruling concerning the student newspaper at Northwestern University. The publications "include endorsement of political candidates in partisan

campus races." In addition, the newspaper "has plans to report in a similar manner off-campus elections." The IRS concluded that such political endorsements for candidates in on-campus or off-campus races (i.e., races for government positions) were not in violation of the Johnson Amendment. https://www.thefire.org/research-learn/irs-letter-daily-northwestern.

80.     In Rev. Rul. 72-513, 1972-2 C.B. 246, the IRS determined that a student newspaper funded by a university operating under § 501(c)(3) did not violate the Johnson Amendment by virtue of the publication of endorsements for political office in such newspapers.

## DEMOCRATIC CAMPAIGN ACTIVITY
## IN CHURCHES

81.     On July 7, 2024, President Joseph Biden was the featured speaker at the Mount Airy Church of God in Christ in Philadelphia, Pennsylvania. There is no doubt that this visit crossed the line established by the Johnson Amendment in multiple respects. For example:

● The church's board member leading prayer asked for God's blessing on President Biden in unobjectionable ways, but then said, "[o] God, bless each and every voter, to get out the vote, Jesus." And, later in the same prayer (concerning the people in the congregation), said, "[h]elp us to know what is going on politically so we can make the right decision."[1]

● The church's pastor delivered a lengthy sermon that laced numerous discussions about President Biden with various Scriptural passages, stories, and illustrations.

---

[1] https://youtu.be/eANfPiAbWSM?t=1749 at 29:09 to 30:41.

26

- The pastor began a series of comparisons between President Biden and Donald Trump, although the name Trump was never spoken.[2] There was no doubt of his meaning in any of these instances.

- The pastor said, "[t]his president doesn't sell Bibles, he actually reads the Bible."[3] This was a statement that clearly communicated that President Biden reads the Bible, a favorable fact, while former President Trump merely sells Bibles, an unfavorable fact. This comparison was deliberately made to communicate a favorable view of Biden and an unfavorable view of Trump, which was clearly understood by the audience.

- The pastor said, "[w]e need to challenge the notion that there are people on the conservative side of the political perspective who are right. We need to challenge that notion because you can't kill police officers on January 6 and be right...Our president is a man of love a man of compassion…[Regarding the pandemic] this man who brought us back to health, …don't get amnesia and forget it was this man who took an economy that was on the ropes and brought us back to prosperity…we pray for you…we love you President Biden…be encouraged…"[4]

- Again, the pastor compared Biden and Trump in the June 2024 debate. "Our president is a man of vision and integrity. And since our president is right let us correct the record the notion that a few days ago during a debate he was accused of never having fired anybody. He fired the one who accused him of never firing anybody."[5]

---

[2] https://youtu.be/eANfPiAbWSM?t=3401 at 56:41-57:10.
[3] https://youtu.be/eANfPiAbWSM?t=3539 at 58:57-59:02.
[4] https://youtu.be/eANfPiAbWSM?t=3560 at 59:22-1:00:49.
[5] https://youtu.be/eANfPiAbWSM?t=3730 at 1:02:08-1:02:39.

- The pastor said, "[l]et the record show that the election of 2020 was not stolen…What did happen was a call to Atlanta Georgia to find me 11,000 votes."[6]

- The pastor said, "I don't know why you want to make an issue of the President and his condition with stammering and not being able to bring forth words at certain times while another person lies fluently, and you never challenge his lies."[7]

- In a sequence where the pastor challenged the "lies" of Trump and his political party, the pastor said (implicitly concerning his political party): "You are not the party of law, we are the party of law. We are the party of right. We are the party of law. We are the party of respect. We are the party of reconciliation. We have the big tent. We have genuine love for America."[8]

- The pastor closed his sermon with a lengthy analogy between Joseph (of the coat of many colors in the Book of Genesis) and Joseph Biden. This long sequence was laced with the pastor leading the congregation in a chant of "Go Joseph," sometimes referring to the Old Testament hero and sometimes referring to President Biden.[9]

- In this final sequence, the pastor closed his sermon saying, "[y]ou have a dream. I have a dream. The President has a dream of keeping America safe for four more years. A dream of keeping democracy safe. A dream of giving us prosperity. A dream of keeping us in peace. A dream of reducing hatred, racism, sexism, and bigotry. Joseph has a dream. If Joseph could get out of the pit, If Jesus could get out of the pit, President Biden is

---

[6] https://youtu.be/eANfPiAbWSM?t=3775 at 1:02:51-1:03:38.
[7] https://youtu.be/eANfPiAbWSM?t=3820 at 1:03:43-1:04:04.
[8] https://youtu.be/eANfPiAbWSM?t=3849 at 1:04:17-1:04:50.
[9] https://youtu.be/eANfPiAbWSM?t=4157 at 1:09:20-1:11:05.

coming back. He's a fighter, he's a champion. He's the comeback kid. Hallelujah. Let us pray."[10]

- President Biden's speech was a mixture of some Scripture verses, spiritual sayings, and clear political messaging on issues like student loans, the economy, and many other issues that were normal campaign rhetoric.

- President Biden ended his speech admonishing the congregation that he and the congregation should continue to "work together."[11]

This church service, and other church services like it that promote Democratic candidates, are not challenged or limited in any fashion by the IRS.

82.    On January 8, 2024, President Biden was the featured speaker at Mother Emanuel AME Church in Charleston, South Carolina. He was introduced by Representative Jim Clyburn in a lengthy and explicit political endorsement of Biden's reelection. Among other things, Clyburn:

- Praised President Biden's efforts to forgive student loans.[12]

- Asked the crowd who they wanted to oversee the program of student loan forgiveness, Biden or Trump? "Trump doesn't even want the program."[13]

- Condemned Trump's nominees on the Supreme Court for reversing *Roe v. Wade.*[14]

- Praised President Biden for planning to preserve abortion rights.[15]

---

[10] https://youtu.be/eANfPiAbWSM?t=4268 at 1:11:08-1:14:48.
[11] https://youtu.be/eANfPiAbWSM?t=4946 at 1:22:18-1:22:33.
[12] https://youtu.be/ebT-nbVzJns?t=271 at 4:27-9:02.
[13] https://youtu.be/ebT-nbVzJns?t=546 at 9:03-9:33.
[14] https://youtu.be/ebT-nbVzJns?t=698 at 11:33-11:57.
[15] https://youtu.be/ebT-nbVzJns?t=718 at 11:58-12:21.

- Said, "It is with great pride that I present to you the man best qualified, the man totally committed to making every American a part of the American dream, Joe Biden."[16]

- The congregation responded to this introduction with chants of "four more years."[17]

- President Biden discussed several standard political issues, such as his healthcare and economic achievements, lacing his comments with statements like, "Trump is a loser."[18]

- Biden ended his remarks in this South Carolina church with a statement that there was much work yet to be done and that "we need to keep the faith and do it together."[19]

This church service, and other church services like it, that promote Democratic candidates are not challenged or limited in any fashion by the IRS.

83.   A press release dated Sunday, January 5, 2020, issued by the Biden for President campaign indicated that "Vice President Biden Worshiped at Corinthian Baptist Church this morning." The press release contained the following endorsement by this church's Associate Minister, Rev. Rob Johnson:

> After serving as Vice President for eight years, I believe Joe Biden has seen what it is going to take to be the President of the United States," said Rev. Rob Johnson Associate Minister in Des Moines. "Joe can tell voters not only what he wants to do, but what he's done — passed the Violence Against Women Act, banned assault weapons and helped get Obamacare across the finish line. The Vice President can empathize with folks and feel their pain. He knows what pain looks and feels like from his own experiences. When my nephews look at the President of the United States, I want them to find hope and see a leader they can look up

---

[16] https://youtu.be/ebT-nbVzJns?t=1210 at 20:06-20:25.
[17] https://youtu.be/ebT-nbVzJns?t=1267 at 21:05-21:24.
[18] https://youtu.be/ebT-nbVzJns?t=2133 at 35:33-35:46.
[19] https://youtu.be/ebT-nbVzJns?t=3185 at 53:05-53:39.

to. In the next 29 days, I'm eager to help lead the Biden campaign's faith outreach

efforts and speak with caucus-goers and people of Faith across the state about

Joe's mission to restore the soul of this nation.

The press release also stated: "In helping to lead Biden for President's Iowa Faith

Outreach efforts, Rev. Johnson will travel across the state and speak in churches

about Biden's efforts to restore the soul of the nation and grow the middle

class."[20]

This kind of promotion of Democratic campaigns in churches goes unhindered by the IRS.

84.    On May 19, 2024, this same Rev. Kevin R. Johnson gave the message during the Pentecost

Sunday Worship Service at Abyssinian Baptist Church in New York City. Among many

other statements that clearly violate the Johnson Amendment, the Rev. Johnson said:

Don't you know, beloved, that since 2021 Republican controlled state houses

have passed a swarm of laws to restrict voting rights, increase penalties for public

protest, and pose new restrictions on transgender youth and ban books…this is

not the time for the church to not be united. While we are sitting up here doing

other stuff, they are planning a 2025. This is not the time for the church to not be

united. We've got to make sure the people get out and vote this November like

never before. This is not the time…you can't turn your back on Biden because

what are you turning your back to. Beloved, this is not the time. This is not the

time.[21]

This kind of church service favoring Democratic candidates goes on unhindered by the IRS.

---

[20] https://www.presidency.ucsb.edu/documents/biden-campaign-press-release-rev-rob-johnson-endorses-joe-biden-will-help-lead-campaigns. Accessed August 8, 2024.
[21] https://youtu.be/jTYvP125pMY?t=229 at 3:48-4:52.

85.   On January 15, 2023, President Biden spoke at Ebenezer Baptist Church in Atlanta, Georgia
      to commemorate Dr. Martin Luther King, Jr. Sen. Raphael Warnock introduced Biden by
      saying that he was "inspired by [Biden's] lifelong commitment to service"[22] by the way "in
      which he has transformed his pain into power."[23]   Biden said:

●   "This is the time of choosing. This is the time of choosing direct choices we have. Are
    we a people who will choose democracy over autocracy?"[24]

●   "It is still the task of our time to make [Martin Luther King's dream] a reality because it
    is not there yet."[25]

●   "That's what I try to do every day—to build a future we all want."[26]

●   "But at this inflection point, we know that there is a lot of work that has to continue in
    economic justice, civil rights, voting rights, and protecting our democracy…"[27]

●   That he has a bust of Martin Luther King and Rosa Parks in the Oval Office.[28]

●   "My message to the nation on this day is we go forward. We go together…"[29]

●   "May God bless you all and let's go find the light. We can do this!"[30]

This kind of promotion of Democratic campaigns in churches goes unhindered by the IRS.

86.   On September 15th, 2019, Joe Biden, while a presidential candidate, spoke for about twenty
      minutes at the 16th Street Baptist Church in Birmingham, Alabama as the church
      commemorated the bombing in 1963. Guest speaker Rev. Dr. Ruth Naomi Segres delivered
      the sermon. She spoke on the story of Job, then transitioned to the black experience during

---

[22] https://youtu.be/Uf4wBIjVS4O?t=44 at 0:47-0:54.
[23] https://youtu.be/Uf4wBIjVS4O?t=186 at 3:04-3:15.
[24] https://youtu.be/Uf4wBIjVS4O?t=1328 at 22:08-22:21.
[25] https://youtu.be/Uf4wBIjVS4O?t=1523 at 25:22-25:27.
[26] https://youtu.be/Uf4wBIjVS4O?t=1716 at 28:35-28:43.
[27] https://youtu.be/Uf4wBIjVS4O?t=1858 at 30:56-31:10.
[28] https://youtu.be/Uf4wBIjVS4O?t=1944 at 33:22-34:00.
[29] https://youtu.be/Uf4wBIjVS4O?t=2066 at 34:27 to 34:31.
[30] https://youtu.be/Uf4wBIjVS4O?t=2200 at 36:40 to 36:43.

segregation in America, and then to the racism of the present day. "Keep the story alive!" she said. A young singer in the church sang a gospel song, and then Biden took the pulpit. His remarks included the following:

- Agreement with Segres that racism is still alive and that we need to fix it.

- "Now hate is on the rise again. We're at a defining moment again in American history."[31]

- "I know there is nothing we can't accomplish if we stand together. Stand against hate. Stand for, what at best, our nation believes—honesty, decency, treating everyone with dignity and respect, giving everyone a fair shot, leaving nobody behind, giving hate no safe harbor, demonizing no one…and that's why I believe so passionately that we have got to work to bring this country together."[32]

- "So, my prayer to all of us this morning is that in this moment when our nation must again once decide who we are and what we stand for…and will choose once more to fight for our shared American dream."[33]

This kind of promotion of Democratic campaigns in churches goes unhindered by the IRS.

87. On June 15, 2008, presidential candidate, Barack Obama, delivered the Father's Day sermon for Apostolic Church of God in Chicago, Illinois. The pastor, Bishop Arthur Brazier, introduced future-President Obama as his "good friend who has changed the course of America."[34] He added:

- Barack Obama loves people, cares about middle-class America, and is "a true patriot."[35]

---

[31] https://www.facebook.com/watch/live/?ref=watch_permalink&v=531779430906778 at 48:46-48:54.
[32] https://www.facebook.com/watch/live/?ref=watch_permalink&v=531779430906778 at 52:30-53:08.
[33] https://www.facebook.com/watch/live/?ref=watch_permalink&v=531779430906778 at 55:43-56:12.
[34] https://youtu.be/uPT2vsuD7lw?t=1063 at 17:42-18:02.
[35] https://youtu.be/uPT2vsuD7lw?t=1104 at 18:20-18:58.

- "[Michelle Obama] is an outstanding woman, a true patriot, I have known both of them for years and they love their country, and they have been responsible for a monumental sea change in America."[36]

Another pastor, Byron T. Brazier, introduced Obama as "a man who believes in change. Those of us, those who believe in God, believe in being born again, we know what change is…"[37]

President Obama's message included the following:

- "Yes, we need fewer guns in the hands of people who shouldn't have it. Yes, we need more money for our schools and more outstanding teachers in the classroom and more after school programs for our children. Yes, we need more jobs and more job training and more opportunity in our community. We know all that. That is why I am running for president of the United States of America."[38]

- "What was interesting was how many people would come up to me and say 'Barack, we love you man, we're rooting for you, but we just don't think that a black man can be elected president.' I mean we had already defeated ourselves before we even started…"[39]

- "[Government] should be meeting [fathers] halfway. We should be making it easier for fathers who make responsible choices and harder for those who avoid them. We should get rid of the financial penalties we impose on married couples right now, and start making sure every dime of child support goes directly to helping children instead of bureaucrats…"[40]

---

[36] https://youtu.be/uPT2vsuD7lw?t=1308 at 21:52-22:07.
[37] https://youtu.be/uPT2vsuD7lw?t=2958 at 49:20-49:40.
[38] https://youtu.be/uPT2vsuD7lw?t=3662 at 1:01:03-1:01:25.
[39] https://youtu.be/uPT2vsuD7lw?t=4170 at 1:09:30-1:09:48.
[40] https://youtu.be/uPT2vsuD7lw?t=4572 at 1:16:12-1:16:33.

- "What kind of world am I leaving [my children]? Are we leaving them a country where there is a huge gap between a few people who are wealthy and a whole bunch of people who are struggling every day? Am I leaving them a country that's still divided by race…am I leaving them a country where we're hated around the world because we don't cooperate with other nations…"[41]

- "If we rise up, if we have faith in the Lord, if we're working hard, if we do what we must do as fathers, and as mothers, as grandfathers, and grandmothers, if we're looking after our children, then I promise you better days are ahead. God's going to lead us in a bright direction. God's going to lead us in a better direction. God bless you all…pray for me. Pray for Michelle…"[42]

This kind of church service favoring Democratic candidates goes on unhindered by the IRS.

88.   On March 13, 2016, presidential candidate, Hillary Clinton, appeared as a guest speaker at Mount Zion Fellowship Church in Highland Hills, Ohio. Clinton entered to much applause and hugged the pastor, and they seemed to stand for a photo op.[43] The senior pastor, Ronald Williams II said to Clinton, "Secretary, no, we call those things that are not as though they are, Miss President." This was meant as an acknowledgment that she would become president. Thunderous applause followed from the congregation.[44] Congresswoman Marcia Fudge, the pastor's sister, introduced Clinton with several positive and supportive statements:

- I'm not just supporting her just because she is a Democrat. It is important to me that she is—no question about it. But I am supporting her because she understands me and all the

---

[41] https://youtu.be/uPT2vsuD7lw?t=4755 at 1:19:14-1:19:40.
[42] https://youtu.be/uPT2vsuD7lw?t=4880 at 1:21:20-1:21:49.
[43] https://youtu.be/tMO7ETk1hdI?t=1857 at 30:55-31:27.
[44] https://youtu.be/tMO7ETk1hdI?t=2240 at 37:25-37:35.

people who are like me. We have to start voting for people who are going to make a difference in our lives.[45]

- "The person who is the best qualified candidate on either side of the aisle…"[46]

- Clinton then took the podium and began her speech, which included the following statements:


- [Referring to the congresswoman] "…and I can't wait, if I'm so fortunate enough to be your president, working with her to make sure we get all the changes we all know we need."[47]

- "I'm running for president because I want to knock down any barrier that stands in the way of any American getting ahead and staying ahead in our country."[48]

- Praise for her husband's presidency and policies, and criticism of the policies of her husband's replacement.[49]

- "I don't think President Obama gets the credit he deserves for digging us out of the ditch we were put into." [Met with thunderous applause from congregation and pastor.][50]

- Several instances of promoting her policies as she would at a campaign event.

- "I'm the only candidate who has laid out a comprehensive jobs program."[51]

- "I want to be a small business president."[52]

---

[45] https://youtu.be/tMO7ETk1hdI?t=2420 at 40:27-40:54.
[46] https://youtu.be/tMO7ETk1hdI?t=2550 at 42:29-42:35.
[47] https://youtu.be/tMO7ETk1hdI?t=2706 at 45:06-45:15.
[48] https://youtu.be/tMO7ETk1hdI?t=2949 at 49:09-49:19.
[49] https://youtu.be/tMO7ETk1hdI?t=3177 at 52:57-53:58.
[50] https://youtu.be/tMO7ETk1hdI?t=3309 at 55:09-55:17.
[51] https://youtu.be/tMO7ETk1hdI?t=3421 at 57:00-57:05.
[52] https://youtu.be/tMO7ETk1hdI?t=3519 at 58:40-58:42.

- "I can't get there without your help. I need your help, your support, your guidance, and your vote on Tuesday. And I promise you, if you will come vote for me, I will work my heart out every single day to make the changes we know we need."[53]

The pastor then walked "the president" out of the service.[54]

This kind of church service favoring Democratic candidates goes on unhindered by the IRS.

89.   Hillary Clinton spoke at Little Rock AME Zion Church in Charlotte, North Carolina on October 2, 2016. Her speech included the following:

- "We've got to take action. We've got to start now. Not tomorrow. Not next year. Now. We know we can't solve all these problems overnight, which means we don't have a moment to lose…so let's hold on to a common vision. Let's come together to make America a place where every child…has the chance to live up to their God-given potential."[55]

- Endorsement of several of her policies throughout the speech.

- "Now there are some out there who see this as a moment to fan the flames of resentment and division, who want to exploit people's fears even though it means tearing our nation even further apart. They say that all of our problems would be solved with more law and order as if the systemic racism plaguing our country doesn't exist."[56]

- "I want us to commit ourselves to this common vision. That is why I will build on the work that President Obama has done, and I will be sure that this is not just about a

---

[53] https://youtu.be/tMO7ETk1hdI?t=4212 at 1:10:12-1:10:40.
[54] https://youtu.be/tMO7ETk1hdI?t=4250 at 1:10:55.
[55] https://youtu.be/-EqZGZpOqjc?t=61 at 1:00-1:37.
[56] https://youtu.be/-EqZGZpOqjc?t=369 at 6:10-6:40.

campaign or an election…these are issues I have been fighting for since I was a young lawyer…"[57]

- "We will not grow weary, and we will not lose heart. We will get up every single day, have faith in one another and in our future and work toward that better day for all of God's people."[58]

This kind of church service favoring Democratic candidates goes on unhindered by the IRS.

90. Plaintiffs believe that the activity described in the preceding paragraphs demonstrates ongoing, open, and obvious violations of the Johnson Amendment by churches friendly to Democratic candidates. However, Plaintiffs contend that all such activity is constitutionally protected. Plaintiffs only seek the freedom to engage in similar activity.

## IRS TARGETING CONSERVATIVE NONPROFITS FOR UNFAVORABLE TREATMENT

91. On October 26, 2017, United States Attorney General Jeff Sessions announced a settlement of two cases brought by groups of conservative political organizations against the IRS.[59] His statement included the following:

> But it is now clear that during the last Administration, the IRS began using inappropriate criteria to screen applications for 501(c) status. These criteria included names such as "Tea Party," "Patriots," or "9/12" or policy positions concerning government spending or taxes, education of the public to "make America a better place to live," or statements criticizing how the country was

---

[57] https://youtu.be/-EqZGZpOqjc?t=430 at 7:10-7:40.
[58] https://youtu.be/-EqZGZpOqjc?t=609 at 10:10-10:28.
[59] https://www.justice.gov/opa/pr/attorney-general-jeff-sessions-announces-department-justice-has-settled-plaintiff-groups

being run.  It is also clear these criteria disproportionately impacted conservative groups.

As a result of these criteria, the IRS transferred hundreds of applications to a specifically designated group of IRS agents for additional levels of review, questioning and delay.   In many instances, the IRS then requested highly sensitive information from applicants, such as donor information, that was not needed to make a determination of tax-exempt status.

The IRS's use of these criteria as a basis for heightened scrutiny was wrong and should never have occurred. It is improper for the IRS to single out groups for different treatment based on their names or ideological positions. Any entitlement to tax exemption should be based on the activities of the organization and whether they fulfill requirements of the law, not the policy positions adopted by members, or the name chosen to reflect those views.

92.   On October 18, 2020, Pastor Gary Hamrick of Cornerstone Chapel, Leesburg, Virginia preached an "election sermon" urging the congregation to vote and to vote consistent with the values set forth in the Bible. He compared the political platforms of the two major parties vis-à-vis their compatibility with the teachings of the Bible.   He clearly stated that the Republican Platform was in greater alignment with the Bible than the Democratic Platform. And though he explicitly said that people "don't have to vote for Trump" to be in compliance with the Bible's standards, he made it clear that a vote for a Democratic candidate would be unbiblical in light of the content of that party's platform. Subsequently the IRS began an enforcement action against Cornerstone Chapel on the basis of implicit support or opposition of political candidates. The IRS levied and Cornerstone Chapel paid a tax penalty for violating the Johnson Amendment. Similar and even more explicit examples of support or

opposition of candidates by 501(c)(3) nonprofits go unchallenged by the IRS especially if the candidates in question are from the Democratic Party.

93.  On June 18, 2021, the Internal Revenue Service issued a letter denying status under § 501(c)(3) to an organization called "Christians Engaged." The specific reason given for the rejection was:

> [Y]ou educate believers on national issues that are central to their belief in the Bible as the inerrant Word of God. Specifically, you educate Christians on what the bible says in areas where they can be instrumental in the areas of sanctity of life, the definition of marriage, biblical justice, freedom of speech, defense, and borders and immigration, U.S. and Israel relations. The bible teachings are typically affiliated with the [Republican] party and candidates. This disqualifies you from exemption under IRS Secgtion 501(c)(3).

Although this denial was ultimately reversed, it is yet another example of the discriminatory practices of the IRS vis-à-vis conservative, particularly religiously conservative, organizations.

94.  Upon information and belief, the IRS has continued its     policy of political favoritism in its enforcement of the Johnson Amendment. Plaintiffs are aware of instances of recent investigations and adverse actions against conservative religious organizations under the Johnson Amendment. To Plaintiffs' knowledge, no investigation, and particularly no adverse action, has ever been taken against any left-leaning or Democrat-affiliated nonprofit. The proportion of adverse actions taken against 501(c)(3) nonprofits skews disproportionately against conservative organizations. The IRS is enforcing the Johnson Amendment in a politically biased manner.

## INAPPLICABILITY OF THE ANTI-INJUNCTION ACT

95.   In general, the Anti-Injunction Act (26 U.S.C.A. § 7421) (hereinafter, AIA) imposes a barrier to seeking equitable relief, whether an injunction or declaratory judgment, if the case involves any form of federal taxation. This case fits within one or more of the recognized exceptions to this rule.

96.   The AIA does not apply "where the plaintiff has no alternative means to challenge the IRS's action." *Z St. v. Koskinen*, 791 F.3d 24, 30 (D.C. Cir. 2015) citing *South Carolina v. Regan*, 465 U.S. 367 (1984).

97.   Plaintiffs have not violated the Johnson Amendment but have chosen to censor their own speech to avoid its penalties. Unless and until Plaintiffs violate the Johnson Amendment and are subjected to adverse action by the IRS, they will be unable to challenge the constitutionality of the Johnson Amendment either facially or on an as-applied basis. Our legal system does not require Plaintiffs to put themselves at risk to determine their rights to freedom of speech, religion, due process, or equal protection.

98.   In addition, the Plaintiffs' claims herein have "no implications for tax collection" and this matter is thus exempt from the AIA. *Z St. v. Koskinen*, 791 F.3d 24, 30 (D.C. Cir. 2015) citing *Cohen v. United States*, 650 F.3d 717, 724 (D.C.Cir.2011) (en banc).  If Plaintiffs prevail, they will be free to engage in political speech. If Plaintiffs do not prevail, they will not be free to engage in political speech and will continue to live under the regime of the Johnson Amendment, suffering its chilling effect on their core political and religious expression. In either case, no tax liability will be affected by the outcome of this litigation.

99.   In addition, the AIA does not apply when "in administering the tax code, the IRS …. discriminate[s] on the basis of viewpoint." *Z St. v. Koskinen*, 791 F.3d 24, 30 (D.C. Cir.

2015). Moreover, "[t]he tax code may not "discriminate invidiously" *True the Vote, Inc. v. Internal Revenue Serv.*, 831 F.3d 551, 560-61 (D.C. Cir. 2016) quoting *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 548.

100. As previously alleged, the IRS has engaged in discriminatory treatment pertaining to freedom of speech and enforces the Johnson Amendment in a manner that constitutes a textbook example of invidious discrimination. Accordingly, the AIA is inapplicable to this case.

## CAUSES OF ACTION

## COUNT I – FIRST AMENDMENT - FREEDOM OF SPEECH

101. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

102. Political speech is "central to the meaning and purpose of the First Amendment." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 329 (2010).

103. Plaintiffs are juridical persons which are entitled to constitutional protections including freedom of speech. Plaintiffs have been denied freedom of speech about political candidates by that portion of § 501(c)(3) of the Internal Revenue Code known as the Johnson Amendment. This creates an unconstitutional restriction on the free speech rights of the Plaintiffs protected by the First Amendment to the Constitution of the United States. "Political speech must prevail against laws that would suppress it, whether by design or inadvertence. Laws that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) (Cleaned up.)

104. It is no defense to say that the natural persons involved with the Plaintiffs have other avenues for speaking about candidates. These Plaintiffs, themselves, as legal persons, have the protected right of freedom of speech. *Citizens United, supra.*

105. The Johnson Amendment, as written, creates both a subject matter restriction and a speaker restriction on political speech in violation of the First Amendment. Nonprofits organized under § 501(c)(3) may not discuss the subject of political candidates for public office in a manner that is deemed to support or oppose such candidates. Only nonprofits organized under § 501(c)(3) are so silenced. All other forms of nonprofit organizations and all for-profit organizations are permitted to speak in a manner that supports or opposes political candidates. This includes nonprofits that operate primarily from tax-deductible membership dues. "The First Amendment stands against attempts to disfavor certain subjects or viewpoints. See, e.g., *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000) (striking down content-based restriction). Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others. See *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 784 (1978). As instruments to censor, these categories are interrelated: Speech restrictions based on the identity of the speaker are all too often simply a means to control content." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010).

106. The Johnson Amendment, as arbitrarily and capriciously enforced by the IRS, additionally violates the Plaintiffs' freedom of speech in that some 501(c)(3) nonprofits, such as newspapers and Democrat-leaning churches, are not restricted in their open support or opposition for political candidates, while others, including Plaintiffs, are told that they must obey the strictures of said Amendment. While the Johnson Amendment may be viewpoint-

neutral on its face, the IRS has applied and continues to apply it in a manner that discriminates against speakers based on viewpoint.

**COUNT II – FIFTH AMENDMENT - DUE PROCESS—VOID FOR VAGUENESS**

107.   Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

108.   The Johnson Amendment, as enforced by the IRS, is void for vagueness in violation of the Due Process Clause of the Fifth Amendment.  "Even when speech is not at issue, the void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way. When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *F.C.C. v. Fox Television Stations, Inc.,* 567 U.S. 239, 253–54 (2012).

109.   The IRS repeatedly states that the Johnson Amendment is not capable of hard and fast rules but that its application depends on the "facts and circumstances" of each situation. "Certain activities or expenditures may not be prohibited depending on the facts and circumstances." https://www.irs.gov/charities-non-profits/charitable-organizations/the-restriction-of-political-campaign-intervention-by-section-501c3-tax-exempt-organizations. This is the central operating rule of the IRS on the meaning of the Johnson Amendment.

110.   While the IRS uses the "facts and circumstances" test in many other areas of tax law, this ambiguity is unconstitutional when it is used in the context of restrictions on the freedom of speech because it allows the government to freely discriminate against speech based on viewpoint. By definition, a law that cannot be stated with precision in the area of speech restriction is void for vagueness.

111.  Moreover, the Johnson Amendment is unconstitutionally void for vagueness in actual operation because some 501(c)(3) nonprofits (such as newspapers and Democrat-leaning churches) are permitted to routinely violate its provisions while the IRS warns others, including Plaintiffs, that they must obey its provisions.

**COUNT III – FIRST AMENDMENT - FREE EXERCISE OF RELIGION**

112.  Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

113.  Plaintiffs have a bona fide religious conviction that they must teach and preach about all areas of life. No area of life is exempt from the reach of Scripture. And teaching is not limited to generalized principles. Proper teaching includes a precise application of scriptural principles to every area of life.

114.  This includes the spiritual duty to teach about issues of life that may arise in the public arena. Issues such as religious freedom, the right to life, racism, and the duties of parents to their children have obvious moral and spiritual implications, and each of these topics is also a current political topic that is treated in different manners by different political candidates.

115.  Plaintiffs cannot fulfill their spiritual duties to teach the full counsel of the Word of God if they fail to address such issues and to inform their listeners how the views of various political candidates compare to the Bible's position on such matters. However, if they do both things, that is, teach what the Bible says and inform the public what a candidate believes on such an issue, the IRS insists that such teaching violates the Johnson Amendment. Any such violation comes with the prospect of substantial penalties, including the loss of tax-exempt status for the organization.

116.  Thus, the Johnson Amendment imposes a substantial burden on Plaintiffs' free exercise of religion.

45

117.   As it pertains to churches, there is an additional violation of the Plaintiffs' right to the free exercise of religion.

118.   Churches are placed in a unique and discriminatory status by the IRC Code. Under § 508(c)(1) of the Internal Revenue Code, churches need not apply to the IRS to obtain recognition of their 501(c)(3) status. The Code places them automatically within the ambit of 501(c)(3), and thereby silences their speech while providing no realistic alternative for operating in any other fashion. Churches have no choice; they are automatically silenced vis-à-vis political candidates.

119.   The silencing of churches on political candidates is a substantial burden on their free exercise of religion.

120.   The Plaintiffs' right to the free exercise of religion is protected by the First Amendment of the Constitution of the United States. At a minimum, a regime of discriminatory enforcement that is motivated by religious animus violates the Free Exercise Clause.

121.   The IRS enforces the Johnson Amendment, as alleged above, in a discriminatory manner, giving preference to speakers and viewpoints it prefers by refraining from enforcing the Johnson Amendment against them, while subjecting religious positions it disfavors to the realistic possibility of enforcement.

122.   Under the controlling rule of *Employment Division v. Smith,* 494 U.S. 872 (1990), the Johnson Amendment, as written, is not a neutral rule of general applicability. It is not a general rule because every form of juridical person other than 501(c)(3) nonprofits is able to support or oppose political candidates. This includes organizations that, like 501(c)(3) nonprofits, pay no organizational taxes themselves. It also includes organizations that have as a principal source of income membership revenue which is tax deductible as a business

46

expense. Such organizations can either raise additional "clean" (i.e. non-deductible) donations for a campaign communication, or inform their members to only deduct the proportion of their dues not attributable to such communications. None of these options are available to 501(c)(3) organizations. These are less restrictive alternatives that would bear on the constitutionality of the Johnson Amendment if such were available.

123. Additionally, the Johnson Amendment is not a neutral rule of general applicability as implemented and enforced by the IRS. The vast disparities previously identified demonstrate that some 501(c)(3) nonprofits are allowed to engage in campaign activity with impunity, while others, like Plaintiffs, are warned to not do so.

124. Moreover, churches have no choice. They are automatically silenced in a unique fashion, by virtue of a prior restraint. They are given no alternative form of organization since they are automatically exempt without application. This rule is neither general nor neutral. It is a narrow rule aimed specifically at churches and is thus unconstitutional in violation of the Free Exercise Clause.

### COUNT IV – RELIGIOUS FREEDOM RESTORATION ACT

125. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

126. Plaintiffs have a bona fide religious conviction that they must teach and preach about all areas of life. No area of life is exempt from the reach of Scripture. And teaching is not limited to generalized principles. Proper teaching includes a precise application of scriptural principles to every area of life.

127. This includes the spiritual duty to teach about issues of life that may arise in the public arena. Issues such as religious freedom, the right to life, racism, and the duties of parents to their

children have obvious moral and spiritual implications, and each of these topics is also a current political topic that is treated in different manners by different political candidates.

128. Plaintiffs cannot fulfill their spiritual duties to teach the full counsel of the Word of God if they fail to address such issues and to inform their listeners how the views of various political candidates compare to the Bible's position on such matters. However, if they do both things, that is, teach what the Bible says and inform the public what a candidate believes on such an issue, the IRS insists that such teaching violates the Johnson Amendment. Any such violation comes with the prospect of substantial penalties, including the loss of tax-exempt status for the organization.

129. Thus, the Johnson Amendment imposes a substantial burden on Plaintiffs' free exercise of religion.

130. As it pertains to churches, there is an additional violation of the Plaintiffs' right to the free exercise of religion.

131. Churches are placed in a unique and discriminatory status by the IRC Code. Under § 508(c)(1) of the Internal Revenue Code, churches need not apply to the IRS to obtain recognition of their 501(c)(3) status. The Code places them automatically within the ambit of 501(c)(3), and thereby silences their speech while providing no realistic alternative for operating in any other fashion. Churches have no choice; they are automatically silenced vis-à-vis political candidates.

132. The silencing of churches on political candidates is a substantial burden on their free exercise of religion.

133. The Religious Freedom Restoration Act 42 U.S § 2000bb-1 provides:

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

(b)Exception

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

134.   The Johnson Amendment, as written, constitutes a substantial burden on the Plaintiffs' exercise of their religion in violation of RFRA. There is no compelling interest that justifies the restriction of the Plaintiffs' speech. Nor is the government's policy executed in the least restrictive means available.

135.   The IRS enforces the Johnson Amendment, as alleged above, in a discriminatory manner, giving preference to speakers and viewpoints it prefers by refraining from enforcing the Johnson Amendment against them, while subjecting religious positions it disfavors to the realistic possibility of enforcement.

136.   Moreover, churches have no choice. They are automatically silenced in a unique fashion, by virtue of a prior restraint. They are given no alternative form of organization since they are automatically exempt without application. This rule is neither general nor neutral. It is a narrow rule aimed specifically at churches and is thus unconstitutional in violation of the Free Exercise Clause.

### COUNT V – FIFTH AMENDMENT - EQUAL PROTECTION

137.   Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

138. Plaintiffs have been treated unequally by the Johnson Amendment, as written and as enforced by the IRS, in at least three ways: (1) 501(c)(3) nonprofits have no legal alternative to engage in political speech while all other forms of nonprofit organizations have a legal path to do so; (2) some 501(c)(3) nonprofits are regularly warned to obey the rules of the Johnson Amendment prohibiting political speech, while other 501(c)(3) nonprofits (in particular newspapers and Democrat-leaning churches) are permitted to engage in such political speech with impunity; (3) the IRC automatically silences churches by placing them into the 501(c)(3) category without application, thereby precluding them from engaging in political speech. No other entity is silenced without any action on its part.

139. Denial of equal protection rights by any agency of the government of the United States violates the Due Process Clause of the Fifth Amendment to the Constitution. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

140. The Johnson Amendment, as written and as enforced by the IRS, denies Plaintiffs equal protection because "two or more classifications of similarly situated persons were treated differently" under the statute. *Gallegos–Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012); *see also Stefanoff v. Hays Cty.*, 154 F.3d 523, 525–26 (5th Cir. 1998)." *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 353–54 (5th Cir. 2017).

141. This denial of equal protection is subject to "strict scrutiny" because the "legislative classification … impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995) (citing *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 17 (1973))." *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 353–54 (5th Cir. 2017). The Johnson Amendment infringes on both the freedom of speech and the free exercise of religion, both of which are recognized as

fundamental rights. *De Jonge v. State of Oregon*, 299 U.S. 353, 364 (1937) (freedom of speech); *Wisconsin v. Yoder*, 406 U.S. 205, 214 (1972) (free exercise of religion).

142. There is no compelling government interest that justifies any of these denials of equal protection.

143. The government has not pursued its policy in the least restrictive means possible. At a minimum, 501(c)(3) nonprofits could be given the same opportunity as 501(c)(6) nonprofits that operate principally on tax-deductible membership dues; to wit, 501(c)(3) organizations could be given the opportunity to raise non-deductible funds to engage in political speech, or they could inform their donors that a pro-rata share of their donation is not deductible.

## REQUESTS FOR RELIEF

144. Plaintiffs are entitled to a declaratory judgment that the Johnson Amendment, on its face, unconstitutionally prohibits 501(c)(3) organizations, including Plaintiffs, from engaging in protected political speech.

145. Plaintiffs are entitled to a declaratory judgment that the Johnson Amendment, as enforced by the IRS, unconstitutionally prohibits Plaintiffs from engaging in protected political speech in violation of the First Amendment.

146. Plaintiffs are entitled to a declaratory judgment that the Johnson Amendment, as enforced by the IRS, is void for vagueness in violation of the Fifth Amendment.

147. Plaintiffs are entitled to a declaratory judgment that the Johnson Amendment, on its face and as applied by the IRS, violates the Religious Freedom Restoration Act.

148. Plaintiffs are entitled to a declaratory judgment that the Johnson Amendment, on its face and as applied by the IRS, violates the Plaintiffs' rights to the free exercise of religion as protected by the First Amendment.

149. Plaintiffs Sand Springs Church and  First Baptist Church Wascom are entitled to a declaratory judgment that the Johnson Amendment is unconstitutional vis-à-vis churches because it prohibits aspects of the free expression of churches without exception, thus violating the rights of churches to freedom of speech and the free exercise of religion, both protected by the First Amendment, and, furthermore, violates the Religious Freedom Restoration Act for the same reasons. Further, this provision violates the equal protection principle contained within the Fifth Amendment.

150. Plaintiffs are entitled to a declaratory judgment that the Johnson Amendment, on its face and as applied by the IRS, treats Plaintiffs in an unconstitutionally unequal manner as alleged above in violation of the Fifth Amendment.

151. If the Defendants fail to voluntarily abide by the declaratory judgment of this Court, Plaintiffs are entitled to injunctive relief to prohibit the continued application of the Johnson Amendment insofar as it operates to prohibit political speech.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court grant Plaintiffs a judgment as follows:

1. A declaratory judgment that the Johnson Amendment is unconstitutional as alleged above.

2. Injunctive relief against the Defendants, if required, to ensure compliance with this Court's ruling.

3. Reasonable attorney's fees under 28 U.S.C. § 2412.

4. Such other and further relief as the Court may deem just and appropriate.

Dated: August 28, 2024                    Respectfully submitted,

                                          */s/ Andrew W. Stinson*
                                          Michael Farris
                                          DC Bar No. 385969
                                          National Religious Broadcasters
                                          20 F Street
                                          Seventh Floor
                                          Washington, DC 20001
                                          571-359-6000
                                          mfarris@nrb.org
                                          (*Application for Admission pending*)

                                          David A. Kallman
                                          MI Bar No. P34200
                                          Kallman Legal Group, PLLC
                                          Attorney at Law
                                          5600 W. Mount Hope Hwy.
                                          Lansing, MI 48917
                                          517-322-3207
                                          dave@kallmanlegal.com
                                          (*Application for Admission forthcoming*)

                                          Andrew W. Stinson
                                          State Bar No. 24028013
                                          RAMEY & FLOCK, PC
                                          100 E. Ferguson Street, Suite 500
                                          Tyler, TX 75702
                                          903-597-3301
                                          andys@rameyflock.com

                                          *Attorneys for Plaintiff*