IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| NATIONAL RELIGIOUS BROADCASTERS, SAND SPRINGS CHURCH, FIRST BAPTIST CHURCH WASKOM, and INTERCESSORS FOR AMERICA,<br><br>    Plaintiffs,<br><br>v.<br><br>DANNY WERFEL, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE INTERNAL REVENUE SERVICE, and THE INTERNAL REVENUE SERVICE,<br><br>    Defendants. | CIVIL NO: 6:24-cv-00311 |

## UNITED STATES' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Jonathan L. Blacker*
JONATHAN L. BLACKER
Texas Bar No. 00796215
*/s/ Eduardo R. Mendoza*
EDUARDO R. MENDOZA
Texas Bar. No. 24096680
Attorneys, Tax Division
U.S. Department of Justice
1700 Pacific Avenue, Suite 3700
Dallas, Texas 75201
(214) 880-9765 (Blacker)
(214) 880-9735 (Mendoza)
(214) 880-9741 (FAX)
Jonathan.Blacker2@usdoj.gov
Eduardo.Mendoza@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

# I.      TABLE OF CONTENTS

I.     TABLE OF CONTENTS ..................................................................................................... 2

II.    TABLE OF AUTHORITIES ............................................................................................. 3

III.   INTRODUCTION ............................................................................................................ 9

IV.    STATEMENT OF THE ISSUES .................................................................................... 11

V.     BACKGROUND ............................................................................................................ 11

VI.    LEGAL STANDARD ..................................................................................................... 14

VII.   ARGUMENT .................................................................................................................. 15

   A.   The Court lacks jurisdiction because Plaintiffs lack Article III standing for all of their claims. .... 16

      1)   Plaintiffs show no intention to engage in a course of conduct arguably affected with a constitutional interest. ............................................................................................................. 18

      2)   Plaintiffs failed to show that Section 501(c)(3) arguably proscribes their desired conduct. ........ 25

   B.   The Court lacks jurisdiction because the suit is "with respect to federal taxes" and is thus barred by the Declaratory Judgment Act. ............................................................................. 27

      1)   The AIA does not prevent the DJA from barring this suit. .......................................................... 28

      2)   This suit is not a Section 7428 action excepted from the DJA's federal tax exception. .............. 29

      3)   The plain language of the DJA and caselaw make clear that Plaintiffs' claims are with respect to federal taxes and thus barred by the DJA's Federal tax exception. ..................................... 30

   C.   Except for Plaintiffs' Religious Freedom Restoration Act claim, sovereign immunity denies the Court jurisdiction over all of Plaintiffs' other claims. ............................................................ 32

   D.   All of Plaintiffs claims fail to state a claim for which relief may be granted. ............................... 34

      1)   Count 1 fails to state a claim under the First Amendment's Free Speech Clause. ...................... 34

      2)   Count 2 Fails to State a Claim Under the Void for Vagueness Doctrine of the Fifth Amendment's Due Process Clause ............................................................................................ 41

      3)   Counts 3 and 4 Fail to State a Claim Under the First Amendment's Free Exercise Clause and the RFRA .................................................................................................................................. 44

      4)   Count 5 Fails to State a Claim Under the Fifth Amendment's Equal Protection Clause ........... 46

VIII.  CONCLUSION ............................................................................................................... 48

## II.    TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraugh v. Altimus*,
26 F.4th 298 (5th Cir. 2022) ...................................................................................13

*Apache Bend Apartments, Ltd. v. United States*,
964 F.2d 1556 (5th Cir. 1992) ...............................................................................43

*Armour v. City of Indianapolis*,
566 U.S. 673 (2012).........................................................................................43, 44

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................12, 44

*Barilla v. Cty of Houston, Texas*,
13 F.4th 427 (5th Cir. 2021) .....................................................................16, 21, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................12

*Berman v. United States*,
264 F.3d 16 (1st Cir. 2001) ....................................................................................31

*Branch Ministries v. Rossotti*,
211 F.3d 137 (D.C. Cir. 2000) ........................................................................ *passim*

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014).........................................................................................24, 35

*Bustos v. United States*,
No. 6:20-CV-00292-ADA-JCM, 2021 WL 11670028 (W.D. Tex. Feb. 25,
2021) ......................................................................................................................30

*Cammarano v. United States*,
358 U.S. 498 (1959)................................................................................................34

*Church of New Testament v. United States*,
783 F.2d 771 (9th Cir. 1986) .................................................................................27

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010).........................................................................................36, 37

*Cohen v. United States*,
578 F.3d 1 (D.C. Cir. 2009) (Kavanaugh, J. dissenting) .......................................26

*Diaz v. Collins*,
  114 F.3d 69 (5th Cir. 1997) ...........................................................................41

*Doe v. Prosper Indep. Sch. Dist.*,
  No. 4:22-CV-813, 2024 WL 1117937 (E.D. Tex. Mar. 14, 2024) ...........................................12

*Fabricant v. Comm'r of Internal Revenue*,
  No. CV 21-2902, 2023 WL 2906190 (C.D. Cal. Mar. 6, 2023) ...........................................29

*FCC v. Fox Television Stations*,
  567 U.S. 239 (2012)...........................................................................39

*Fitzgerald v. Racing Association of Cent. Iowa*,
  539 U.S. 103 (2003)...........................................................................43

*Food and Drug Admin. v. Alliance for Hippocratic Med.*,
  602 U.S. 367 (2004)...........................................................................15

*Franklin v. United States*,
  No. 3:20-CV-1303-N, 2021 WL 4458377 (N.D. Tex. Sept. 29, 2021) ...................................26

*Frye v. Anadarko Petroleum Corp.*,
  953 F.3d 285 (5th Cir. 2019) ...........................................................................14

*Fund Texas Choice v. Paxton*,
  658 F. Supp. 3d 377 (W.D. Tex. 2023)...........................................................................23

*Glass v. Paxton*,
  900 F.3d 233 (5th Cir. 2018) ...........................................................................16

*Gonzalez v. Mayhill Behav. Health, LLC*,
  No. 4:19-CV-230-ALM-KPJ, 2019 WL 2395274 (E.D. Tex. June 6, 2019) ...........................14

*Groome Res. Ltd. v. Par. of Jefferson*,
  234 F.3d 192 (5th Cir. 2000) ...................................................38, 39, 40, 41

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
  634 F.3d 787 (5th Cir. 2011) ...........................................................................15

*Harris v. McRae*,
  448 U.S. 297 (1980)...........................................................................44

*Hobby Distillers Assoc. v. Alcohol and Tobacco Tax and Trade Bureau*,
  No. 4:23-CV-1221-P, 2024 WL 3357841 (N.D. Tex. July 10, 2024) ...................20, 21, 22

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010)...........................................................................39

4

*Home Builders Assoc. Miss., Inc., v. City of Madison*,
    143 F.3d 1006 (5th Cir. 1998) ................................................................13

*Jenkins v. McCanless*,
    No. CA-3-77-0316-D, 1977 WL 1184 (N.D. Tex. May 27, 1977)........................................29

*Joiner v. United States*,
    955 F.3d 399 (5th Cir. 2020) ................................................................30

*Jolles Foundation v. Moysey*,
    250 F.2d 166 (2d Cir. 1957)................................................................29

*Jolly v. United States*,
    488 F.2d 35 (5th Cir. 1974) ................................................................25

*Jones v. Reeves*,
    No. 24-60371, 2024 WL 4823875 (5th Cir. 2024) ................................................14

*Kakkonen v. Guardian Life Ins. of Am.*,
    511 U.S. 375 (1994)................................................................13

*Kennedy v. Bremerton Sch. Dist.*,
    597 U.S. 507 (2022)................................................................41

*Lamie v. U.S. Tr.*,
    540 U.S. 526 (2004)................................................................28

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................15

*Mauro v. Freeland*,
    735 F. Supp. 2d 607 (S.D. Tex. 2009) ................................................................30

*McCabe v. Alexande*r,
    526 F.2d 963 (5th Cir. 1976) ................................................................25

*McCarthy v. Marshall*,
    723 F.2d 1034 (1st Cir. 1983)................................................................28

*Mississippi State Democratic Party v. Barbour*,
    529 F.3d 538 (5th Cir. 2008) ................................................................17, 21, 22

*Mortland v. IRS*,
    No. A-03-CA-115-SS, 2003 WL 21791249 (W.D. Tex. June 24, 2003) ................................................................30

*National Federation of the Blind of Texas, Inc. v. Abbott*,
    647 F.3d 202 (5th Cir. 2011) ................................................................15, 17, 19

*Olageshin v. Dep't of Veteran Affairs*,
    No. 5:18-CV-1248-FB-RBF, 2020 WL 13610376 (W.D. Tex. Feb. 14, 2020) .....................30

*Paxton v. Dettelbach*,
    105 F.4th 708 (5th Cir. 2024) ......................................................................................19, 20, 22

*Phillips v. Collin Cmty. Coll. District*,
    701 F. Supp. 3d 525 (E.D. Tex. 2023) (Mazzant, J.) ..............................................39

*Pingree v. United States*,
    No. 3:98-CV-2886-D, 1999 WL 714759 (N.D. Tex. Sept. 14, 1999) .....................................30

*Randall D. Wolcott, M.D., v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011) ...............................................................................39

*Regan v. Taxation With Representation of Washington*,
    461 U.S. 540 (1983) ............................................................................................ *passim*

*Richardson v. Morris*,
    409 U.S. 464 (1973) ...........................................................................................31

*Rivero v. Fid. Investments, Inc.*,
    1 F.4th 340 (5th Cir. 2021) ..........................................................................25, 26

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ...........................................................................................23

*Schaffer v. United States*,
    889 F.3d 238 (5th Cir. 2018) .............................................................................30

*Schor v. Select Portfolio Serv.*,
    No. 4:16-CV-829-ALM-KPJ, 2017 WL 2486090 (E.D. Tex. May 11, 2017) .................12, 36

*Serv. Employees Intern. Union, Loc. 5 v. City of Houston*,
    595 F.3d 588 (5th Cir. 2010) .............................................................................33

*Shields of Strength v. U.S. Dept. of Defense*,
    No. 6:21-CV-00484, 2024 WL 3581976 (E.D. Tex. July 30, 2024) (Barker, J.) ...................31

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) ........................................................................1, 16, 23

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...........................................................................................15

*Stephenson v. Brady*,
    927 F.2d 596 (4th Cir. 1991) .............................................................................29

*Stockman v. Fed. Election Com'n,*
    138 F.3d 144 (5th Cir. 1998) ....................................................................................13

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009)..................................................................................................15

*Texas v. United States,*
    50 F.4th 498 (5th Cir. 2022) ....................................................................................15

*United States v. Kay,*
    513 F.3d 432 (5th Cir. 2007) ....................................................................................38

*United States v. Lawrence,*
    179 F.3d 343 (5th Cir. 1999) ..............................................................................37, 38

*United States v. Texas,*
    599 U.S. 670 (2023)..................................................................................................15

*United States v. Vogel,*
    No. 4:08-CR-224, 2009 WL 10673439 (E.D. Tex. Sept. 2, 2009) ..........................38

*In re Vitro S.A.B. de CV,*
    701 F.3d 1031 (5th Cir. 2012) ..................................................................................28

*Warnock v. Pecos Cty.,*
    88 F.3d 341 (5th Cir. 1996) ......................................................................................30

*Wayte v. United States,*
    470 U.S. 598 (1985)..................................................................................................37

*Matter of Westmoreland Coal Company,*
    968 F.3d 526 (5th Cir. 2020) ....................................................................................26

*Williams v. Am. Comm. Lines,*
    No. 21-30609, 2022 WL 1652778 (5th Cir May 24, 2022)......................................13

*Willis v. Alexander,*
    575 F.2d 495 (5th Cir. 1978) ....................................................................................28

*Woodlands Pride, Inc. v. Paxton,*
    694 F. Supp. 3d 820 (S.D. Tex. 2023) .....................................................................16

*Z Street v. Koskinen,*
    44 F. Supp. 3d 48 (D.D.C. 2014).............................................................................27

*Zimmerman v. City of Austin, Texas,*
    881 F.3d 378 (5th Cir. 2018) ........................................................................16, 19, 20

**Statutes**

26 U.S.C. § 501 ...............................................................................................................27

26 U.S.C. § 170 .............................................................................................................9, 37

28 U.S.C. § 2201 ..............................................................................................25, 28, 29, 30

28 U.S.C. § 1346 ...............................................................................................................31

26 U.S.C. § 7421 .........................................................................................................25, 26

Religiosu Freedom Restoration Act, 42 U.S.C. § 2000bb-1 ............................... *passim*

**Other Authorities**

U.S. CONST., ART. III, § 2 ..................................................................................... *passim*

U.S. CONST., amend. 1 ......................................................................................... *passim*

U.S. CONST., amend. 5 ......................................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ............................................................ *passim*

Federal Rules of Civil Procedure 12(b)(1) ........................................................... *passim*

Local Rule CV-7(1) .............................................................................................................9

MERRIAM-WEBSTER, DICTIONARY ...............................................................................28

*Internal Revenue Service*, RESTRICTION OF POLITICAL CAMPAIGN INTERVENTION
BY SECTION 501(C)(3) TAX-EXEMPT ORGANIZATIONS, available at
https://www.irs.gov/charities-non-profits/charitable-organizations/restriction-of-
political-campaign-intervention-by-section-501c3-tax-exempt-organizations (Last
Updated August 20, 2024)) ..............................................................................................40

*Internal Revenue Service*, CHARITIES, CHURCHES AND POLITICS, *available at*
https://www.irs.gov/newsroom/charities-churches-and-politics (Last updated
Jan. 30, 2024) ...................................................................................................................10

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the United States moves to dismiss the Plaintiffs' Complaint in its entirety.

### III.    INTRODUCTION

It is fundamental that Congress's refusal to subsidize lobbying and other political activity through tax benefits does not infringe the First Amendment to the United States Constitution. *See Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 546 (1983) ("Congress has not infringed any First Amendment rights or regulated any First Amendment activity. Congress has simply chosen not to pay for TWR's lobbying."); *Cammarano v. United States*, 358 U.S. 498, 513 (1959) ("Petitioners are not being denied a tax deduction because they engage in constitutionally protected activities, but are simply being required to pay for those activities entirely out of their own pockets."); *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000) ("Congress has not violated an organization's First Amendment rights by declining to subsidize its First Amendment activities." (cleaned up) (citing *Taxation With Representation*, 461 U.S. at 548). Yet Plaintiffs' Complaint ignores the clear distinction between a law that restricts political speech and one that simply declines to promote it on a nondiscriminatory basis.

Plaintiffs' Complaint seeks a declaratory judgment that a portion of Section 501(c)(3) of the Internal Revenue Code (26 U.S.C.) concerning limitations on certain political activities as a condition of their continued tax-exempt status violates the Religious Freedom Restoration Act (RFRA) and the First and Fifth Amendments to the United States Constitution. Plaintiffs admit they have not engaged in the kinds of political activities that might cause them to lose their tax-exempt status. Plaintiffs also admit the IRS has not taken any action against them. For several reasons, Plaintiffs' Complaint fails to invoke the Court's jurisdiction and states no claim for relief.

*First*, Plaintiffs have failed to show any injury in fact to satisfy the doctrine of standing as required by Article III of the Constitution. Plaintiffs demonstrate no intent to "engage in a course of conduct arguably affected with a constitutional interest" or that their allegedly intended conduct is "arguably proscribed by statute." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020).

*Second*, Plaintiffs' suit is barred by the Declaratory Judgment Act's, 28 U.S.C. § 2201, (DJA's) federal tax exception because this suit is "with respect to Federal taxes" and is not an action "brought under section 7428 of the Internal Revenue Code." Because the DJA's federal tax exception is jurisdictional, the Court has no power to award the relief Plaintiffs seek in this case.

*Third*, except for Plaintiffs' claim under the RFRA, Plaintiffs have failed to show that the United States waived its sovereign immunity for any of the claims here. A waiver of sovereign immunity is a jurisdictional prerequisite that a plaintiff must plead. Thus, the Court has no jurisdiction over those claims for which Plaintiffs fail to show any waiver of sovereign immunity.

*Fourth*, Plaintiffs have failed to state any claim for which relief may be granted. Their claims rely on an erroneous point of law that supports no cognizable legal theory. Plaintiffs incorrectly characterize Section 501(c)(3) as a statute by which Congress has restricted constitutionally protected activity. Section 501(c)(3) restricts no activity—it sets eligibility requirements for an organization to be eligible for a government subsidy administered through the tax system. Plaintiffs remain free to intervene in political campaigns if they so choose even if they cannot receive tax-exempt status and tax-deductible contributions under Section 501(c)(3). Plaintiffs may operate as for-profit entities and engage in political activities as they see fit. They may also retain their Section 501(c)(3) exempt status and create Section 501(c)(4) affiliates which may engage in limited political campaign activities but would be ineligible for tax-deductible

contributions. Because all of Plaintiffs' claims rest on the erroneous assertion that Section 501(c)(3) restricts constitutionally protected activity, they fail to state any claim for relief.

## IV.    STATEMENT OF THE ISSUES

Consistent with Local Rule CV-7(1), a statement of the issues before the Court is below:

1)  Have Plaintiffs satisfied the elements necessary for Article III standing, and in particular, the elements for an "injury in fact"?

2)  Are Plaintiffs' claims "with respect to Federal Taxes" such that the Declaratory Judgment Act's "Federal tax exception" bars the claims?

3)  Have Plaintiffs shown a waiver of the United States' sovereign immunity for each of their claims?

4)  Does Section 501(c)(3) restrict constitutionally protected activity or does it set out requirements for a government-subsidized tax exemption?

## V.    BACKGROUND

This action centers on Section 501(c)(3) of the Internal Revenue Code. The section provides a government-subsidized tax exemption to qualifying organizations. Contributions to such organizations are generally deductible by donors for income tax purposes. 26 U.S.C. § 170.

To qualify for the tax exemption under Section 501(c)(3), an organization must (among other things) meet the following requirements:

1)  The organization must be organized and operated "exclusively" for certain purposes, such as educational, religious, or scientific purposes;

2)  No substantial part of the activities of the organization may be carrying on propaganda, or otherwise attempting "to influence legislation" (lobbying); and

3)  The organization must be one that "does not participate" or "intervene" in any "political campaign on behalf of (or in opposition to) any candidate for public office."

26 U.S.C. § 501(c)(3). This third quoted qualification is often called the "Johnson Amendment" because Senator Lyndon B. Johnson proposed it as a floor amendment to Section 501(c)(3) over

five decades ago. *See IRS,* Charities, Churches and Politics, *available at* https://www.irs.gov/newsroom/charities-churches-and-politics (Last updated Jan. 30, 2024) (providing background including that "In 1954, Congress approved an amendment by Sen. Lyndon Johnson to prohibit 501(c)(3) organizations, which includes charities and churches, from engaging in any political campaign activity.").

All Plaintiffs are "religious nonprofit organizations," and two are churches (Dkt. No. 1, ¶¶ 10, 25, 26). Churches receive dual tax benefits from Section 501(c)(3) status. They enjoy an exemption from income taxation and benefit from their eligibility to receive charitable contributions that are deductible by their contributors under Section 170(c). Section 508(c)(1)(A) initially excepts churches, their "integrated auxiliaries," and "conventions or associations of churches" from the requirement to file an application with the IRS for recognition of exemption under Section 501(c)(3). Plaintiffs allege this exception "places [churches] automatically within the ambit of 501(c)(3)" and "thereby silences" their speech (Dkt. No. 1, ¶ 118). However, this exception from the requirement to apply for exempt status does not forever lock a church or other organization under Section 508(c)(1)(A) into restrictions against political activity and substantial lobbying; they are free to engage in that activity without tax-exempt status. Nor does the exception protect them from any subsequent revocation of such exempt status. *See Branch Ministries,* 211 F.3d at 141–142 (concluding the IRS had statutory authority to revoke church's tax-exempt status).

Plaintiffs now attack the requirements set by Congress to qualify for the dual tax benefits afforded by Section 501(c)(3). They allege they are tax-exempt organizations under Section 501(c)(3) (Dkt. No. 1, ¶¶ 24–27) and that the Johnson Amendment violates the RFRA and the U.S. Constitution in multiple ways, mainly by infringing on their constitutional rights. Against that backdrop, Plaintiffs ask for seven forms of declaratory relief, all of which focus on the Johnson

Amendment, and for an injunction should Defendants violate any declaratory judgment that the Court issues. (*See* Dkt. No. 1, ¶¶ 144–151).

Despite the relief requested, Plaintiffs make no allegation that they have—or intend to—participate or intervene in any political campaign on behalf of or in opposition to any candidate for public office. Nor do Plaintiffs allege that any Plaintiff has failed to abide by Section 501(c)(3)'s eligibility requirements or that the IRS has claimed that any Plaintiff has done so (*id.*). Plaintiffs, in fact, concede none of that occurred (*id.*):

> Plaintiffs have not "participated in," or "intervened in," or "published or distributed any statement" in "any political campaign on behalf of or in opposition to any candidate for public office." Nor have Plaintiffs knowingly violated any regulation or interpretation of the IRS vis-à-vis the Johnson Amendment. No adverse action of any kind by the IRS is pending against any Plaintiff . . . .

(Dkt. No. 1, ¶ 39)

Instead, Plaintiffs state they "all have engaged in self-censorship" to avoid "violat[ing]" the Johnson Amendment of Section 501(c)(3) and "commensurate penalties," including "risk[ing] their tax-exempt status" (*Id.* ¶¶ 12, 32). Their "central claim" is that "their right to speak freely about political candidates and issues are being improperly chilled by the Johnson Amendment, as written and as enforced by the IRS" (*Id.* ¶ 31). And "they only seek a declaratory judgement that they may use their regular means of communication" to "expound their views concerning political candidates who seek to represent them" and "seek no relief . . . outside of this context" (*Id.* ¶ 13). This matter thus comes before the Court not for any violation of Section 501(c)(3) but for Plaintiffs' alleged voluntary suppression of certain activities and their desire to "expound their views" on United States politics.

Plaintiffs filed this lawsuit on August 28, 2024 (Dkt. No. 1), naming as Defendants the Internal Revenue Service and "Danny Werfel," who is the Commissioner of the IRS (Dkt. No. 1,

¶ 28–29). Plaintiffs' Complaint lodges the following five causes of action: (1) violation of the First Amendment's Free Speech clause; (2) violation of the Fifth Amendment's Due Process Clause on Void for Vagueness grounds; (3) violation of the First Amendment's Free Exercise clause; (4) violation of the RFRA; and (5) violation of the Fifth Amendment's Equal Protection clause (Dkt. No. 1, pp. 42–51). The United States files this Motion to Dismiss Plaintiffs' Complaint under Rule 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure.

## VI.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a civil action "for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case." *Doe v. Prosper Indep. Sch. Dist.*, No. 4:22-CV-813, 2024 WL 1117937, at *2 (E.D. Tex. Mar. 14, 2024) (citation omitted). "If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Id*. (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). And "[o]nce a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction." *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, assuming the truth of all facts alleged in the complaint, it fails to state a "claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a plausible claim for relief, a complaint must include "allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007). The Court may dismiss a claim "under Rule 12(b)(6) if either the complaint fails to assert a cognizable legal theory or the facts asserted are insufficient to support relief under a cognizable legal theory." *Schor v.*

*Select Portfolio Serv.,* No. 4:16-CV-829-ALM-KPJ, 2017 WL 2486090, at *2 (E.D. Tex. May 11, 2017). "Dismissal under Rule 12(b)(6) is a judgment on the merits and is typically with prejudice." *Williams v. Am. Comm. Lines*, No. 21-30609, 2022 WL 1652778, at *1 (5th Cir May 24, 2022).

## VII.    ARGUMENT

Federal courts have limited jurisdiction; thus, not every question is fit for federal judicial review. Courts must "dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Fed. Election Com'n*, 138 F.3d 144, 151 (5th Cir. 1998). This limitation recognizes that federal courts may exercise only those powers authorized by "Constitution and statute." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). Indeed, if a federal court had power to hear every question, the division of power among the branches of our constitutional system "could exist no longer," and other branches "would be swallowed up by the [J]udiciary." *DaimlerChrysler Corp.*, 547 U.S. 332, 341 (2006) (quoting 4 PAPERS OF JOHN MARSHALL 95 (C. Cullen ed. 1984)). For that reason, among others, federal courts owe a "constitutional duty" to decline jurisdiction if there is none, *Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022), and must dismiss an action "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Assoc. Miss., Inc., v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). This is one of those cases.

Plaintiffs fail to invoke any constitutional or statutory power by which the Court may adjudicate this case. For starters, Plaintiffs have no Article III standing. They show no "serious intention" to engage in conduct arguably affected with a constitutional interest or that their desired conduct is "arguably proscribed" by Section 501(c)(3). *See Speech First, Inc.*, 979 F.3d at 330. In truth, Plaintiffs seek an inappropriate advisory opinion disguised as declaratory relief that the Johnson Amendment is unlawful.

Moreover, the Court has no power to issue the declaratory relief that Plaintiffs seek. The DJA excepts from its applicability cases that are "with respect to Federal taxes," and caselaw confirms this is such a case given that Plaintiffs ask the Court to declare a portion of the Internal Revenue Code unlawful and unconstitutional. Further, the United States has not waived sovereign immunity for suits alleging constitutional claims or seeking declaratory relief, and except under the RFRA, the United States has not waived sovereign immunity for any claim lodged here.

Finally, Plaintiffs have failed to state any claim for relief because their claims are based on an erroneous point of law that leads to no cognizable legal theory. Plaintiffs incorrectly characterize Section 501(c)(3) as a statute by which Congress has restricted conduct. Section 501(c)(3) proscribes no conduct. It sets qualifications for a government-subsidized tax exemption. In other words, an organization is free to engage in the conduct Section 501(c)(3) describes as disqualifying but must do so without the government-subsidized tax exemption.

Thus, as explained below, dismissal is appropriate under Rules 12(b)(1) and 12(b)(6).

## A.    The Court lacks jurisdiction because Plaintiffs lack Article III standing for all of their claims.[1]

Article III of the U.S. Constitution confines the jurisdiction of federal courts to "Cases" and "Controversies." U.S. CONST., ART. III, § 2. The doctrine of "standing" gives meaning to this limit by "identify[ing] those disputes which are appropriately resolved through the judicial

---

[1] When, as here, a Rule 12(b)(1) motion challenges the court's subject matter jurisdiction based on Article III standing and on the DJA's federal tax exception, the court should first determine standing because standing is a requirement of Article III's case or controversy requirement, and a "[d]eclaratory judgment is available only in circumstances where an 'actual controversy' exists." *Gonzalez v. Mayhill Behav. Health, LLC*, No. 4:19-CV-230-ALM-KPJ, 2019 WL 2395274, at *1 (E.D. Tex. June 6, 2019) (citing *Orix Credit All.. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000)); *compare Jones v. Reeves,* No. 24-60371, 2024 WL 4823875, at *3 (5th Cir. 2024) ("Critical to [Article III's] case-or-controversy requirement is that plaintiffs, based on their complaint, must establish that they have standing to sue" (cleaned up)), *with Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019) ("The [DJA's] requirement of a case of 'actual controversy' refers to an Article III case or controversy."). Thus, if a plaintiff lacks standing, then there is no actual controversy to which the DJA may apply.

process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing is "built on a single basic idea—the idea of separation of powers." *United States v. Texas*, 599 U.S. 670, 675 (2023). This separation of powers helps safeguard the Judiciary's limited role in our constitutional system. *Id.* Indeed, a "basic charter promulgated by the Framers of the Constitution" *id.*, standing demands that someone who files suit "have a personal stake in the dispute." *Food and Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 379 (2004) (citation omitted). As explained below, the focus of standing is a redressable injury in fact.

A motion to dismiss for lack of Article III standing is appropriately considered under Federal Rule of Civil Procedure 12(b)(1). *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 795 n.2 (5th Cir. 2011). Plaintiffs bear the burden to establish Article III standing. *Texas v. United States*, 50 F.4th 498, 513 (5th Cir. 2022). To do so, they must show that: (1) they have suffered or likely will suffer an injury in fact, (2) the injury likely was caused or will be caused by the defendant, and (3) the injury likely would be redressed by the requested judicial relief. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan*, 504 U.S. at 555. Standing "is not dispensed in gross," and Plaintiffs must establish standing for each claim they bring. *National Federation of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). And at the pleading stage, a plaintiff must "clearly" allege "facts demonstrating each element of standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

When an alleged injury in fact has not yet occurred because, as here, a plaintiff has filed a "pre-enforcement" challenge, the plaintiff may establish an injury in fact if it demonstrates that it (1) intends to engage in a course of conduct arguably affected with a constitutional interest, (2) such intended future conduct is arguably proscribed by the challenged law, and (3) the threat of

future enforcement of the challenged law is substantial. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (*citing Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014)).

For pre-enforcement freedom-of-speech claims, if a plaintiff is relying on a chilling effect (or "self-censorship") to establish standing, it must still allege specific, present, and objective harm or a threat of harm by the government in order to establish all three elements for an injury in fact. *See Glass v. Paxton*, 900 F.3d 233, 238–239 (5th Cir. 2018) ("Any allegation of a chilling effect was subjective in nature. Allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." (cleaned up)); *Fenves*, 979 F.3d at 330–331 (recognizing that the in pre-enforcement context, the chilling of speech can satisfy the injury in fact requirement but analyzing in turn each of the three elements for injury in fact identified above); *Woodlands Pride, Inc. v. Paxton*, 694 F. Supp. 3d 820, 839 (S.D. Tex. 2023) (applying three prongs for injury in fact in a pre-enforcement action alleging chilling of speech).

Here, as explained below and without even addressing the third element for an injury in fact—that the threat of future enforcement of the challenged law is substantial—Plaintiffs fail to satisfy Article III standing because they fail to establish the first two elements of an injury in fact.

> 1) *Plaintiffs show no intention to engage in a course of conduct arguably affected with a constitutional interest.*

To satisfy this element, a plaintiff must demonstrate a "serious intent" to engage in proscribed conduct by taking some steps toward their desired activity. *See Barilla v. Cty. of Houston, Texas*, 13 F.4th 427, 432 (5th Cir. 2021) ("We must first determine whether Barilla has sufficiently pleaded his intention to engage in a course of conduct arguably affected with a constitutional interest. This court has previously held that a plaintiff must demonstrate a 'serious intent' to engage in proscribed conduct by taking some steps toward their desired activity." (cleaned up)). To do that, a plaintiff "must demonstrate a serious [intent] in acting contrary to a

statute." *Nat. Federation of Blind of Tex*, 647 F.3d at 209 (cleaned up). This requires a showing of "concrete plans" or "objective evidence" reflecting such serious intent. *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 546 (5th Cir. 2008). Plaintiffs make no such showing.

### i. Plaintiffs allege no steps taken toward the conduct purportedly proscribed by the statute.

As an initial matter, and as explored later in this motion, the Johnson Amendment portion of Section 501(c)(3) does not "proscribe" conduct—it sets qualifications for one to become eligible for the government subsidy in the form of a tax exemption. But even if it did, as Plaintiffs allege, Plaintiffs show no serious intention to engage in the conduct allegedly proscribed by the statute.

To qualify for the tax exemption provided by Section 501(c)(3), an organization must be one that "does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office." 26 U.S.C. § 501(c)(3). Again, Plaintiffs concede they have not engaged in this conduct and that the IRS has not taken any adverse action against them:

> Plaintiffs have not "participated in," or "intervened in," or "published or distributed any statement" in "any political campaign on behalf of or in opposition to any candidate for public office." Nor have Plaintiffs knowingly violated any regulation or interpretation of the IRS vis-à-vis the Johnson Amendment. No adverse action of any kind by the IRS is pending against any Plaintiff . . . .

Dkt. No. 1, ¶ 39.

But more than that, Plaintiffs make no showing that they *intend* to engage in that conduct. Nowhere in the Complaint do Plaintiffs specify any intention to "participate in," or "intervene in," or "publish or distribute any statement" in "any political campaign on behalf of or in opposition to any candidate for public office." Likewise, nowhere do Plaintiffs assert that their desired conduct amounts to conduct allegedly proscribed by Section 501(c)(3). Instead, Plaintiffs merely allege a "desire" to engage in "communication[s]" about their "views":

- "Some Plaintiffs do not want to formally endorse or oppose political candidates. However, all Plaintiffs **desire to communicate their views about candidates' positions that are relevant to the issues Plaintiffs care about**. They would do so but for the Johnson Amendment." (Dkt. No. 1, ¶ 11) (emphasis added).

- "Plaintiffs' speech is clearly chilled in this regard because they are not free to **proclaim their views on the issues of the day and then compare their views with the views of the candidates on these same issues**" (Dkt. No. 1, ¶ 11) (emphasis added).

- "[Plaintiffs] only seek a declaratory judgment that they may **use their regular means of communication to expound their views concerning political candidates who seek to represent them**" (Dkt. No. 1, ¶ 13) (emphasis added).

- "Each Plaintiff desires the freedom to **discuss political candidates and their fidelity to Plaintiffs' interests and values**" (Dkt. No. 1, ¶ 41) (emphasis added).

- "But for the Johnson Amendment and its arbitrary enforcement, each Plaintiff would engage in speech that **clearly states the positions of candidates on issues, while at the same time teaching the standards of the Word of God on such issues**" (Dkt. No. 1, ¶ 45) (emphasis added).

- "For example, Plaintiff National Religious Broadcasters (NRB) is engaged in a major effort in Congress to ensure that automobile manufactures do not eliminate AM radios from their cars and trucks. Members of Congress have taken positions on their support or opposition to the NRB position on this issue. **NRB desires to communicate such information to its members encouraging them to remember this fact when voting** . . . Plaintiff NRB is unable to **encourage its members or the public to vote for congressional candidates who support AM radio, or to vote against candidates who side with the automobile manufactures** (Dkt. No. 1, ¶ 42 (emphasis added).

None of these allegations specify any intention to "participate in," "intervene in," or "publish or distribute any statement" in "any political campaign" on "behalf of" or "in opposition to" any "candidate for public office." At best, the allegations reflect a theoretical desire to "communicate," "proclaim," "expound," and "discuss" nondescript "views" that may in some way

touch on politics. Plaintiffs thus show no serious intent in "acting contrary to a statute." *Nat. Federation of Blind of Tex.* 647 F.3d at 209.[2]

This conclusion finds support in recent decisions by the Fifth Circuit. In *Paxton v. Dettelbach*, 105 F.4th 708 (5th Cir. 2024), plaintiffs sued to enjoin enforcement of federal statutes that criminalized "making silencers for personal use" without applying for permission from the government, among other requirements of the statute. *Dettelbach*, 105 F.4th at 710. In addressing standing, the Fifth Circuit found the plaintiffs showed no "serious intention to engage in conduct *proscribed* by law" because they merely declared an intention to manufacture a firearm suppresser for personal use but had not alleged an intention to do so "*without complying with the applicable procedures and requirements*," which is what the statutes proscribed. *Id.* (emphasis in original). Thus, the Fifth Circuit concluded the plaintiffs had made no showing of an injury in fact.

The Fifth Circuit took the same approach in *Zimmerman v. City of Austin, Texas*, 881 F.3d 378 (5th Cir. 2018). In that case, a plaintiff city councilmember challenged provisions of a campaign finance law that restricted certain campaign contributions to candidates. *Id.* at 382. The plaintiff argued that such limits "caused an injury in fact because it caused him to change his campaign strategy and withhold solicitations he otherwise would have sent." *Id.* at 389. The Fifth Circuit found the plaintiff "failed to establish a serious intention to engage in conduct proscribed by law" because the contribution limits did "not preclude solicitations; [they] preclude[] only" accepting contributions over the limit. *Id.* So by "choosing to not solicit funds," the plaintiff took no "steps towards reaching or exceeding the aggregate limit of the kind that would" show an injury.

---

[2] Even if Plaintiffs' allegation in ¶ 42 quoted above somehow inches toward conduct allegedly proscribed by the Johnson Amendment, that allegation still fails to show a sufficient "serious intention" for the reasons discussed below in Section VII(A)(1)(ii).

*Id.* Accordingly, like in *Dettelbach, Zimmerman* focused on the conduct outlined in the statute: the statute there proscribed *accepting* contributions over the limit but not *soliciting* them.

*Dettelbach* and *Zimmerman* explain that it is insufficient for a plaintiff to allege an intention to engage in conduct that is merely related to the conduct outlined by the statute. Here too, Plaintiffs show no serious intent to engage conduct allegedly "proscribed" by Section 501(c)(3). They allege no steps taken toward, for instance, distributing any "statement" in any "political campaign" on behalf of or in opposition to any particular candidate "for public office"—nor that they intend to. Thus, Plaintiffs fail this element of injury in fact and lack standing.

### ii. Plaintiffs allege no concrete plans or objective evidence reflecting any serious intent.

Even if Plaintiffs alleged some intention to engage in the conduct described in Section 501(c)(3) as being disqualifying, they still fail to satisfy this element because they provide no concrete plans or objective showing of any serious intent. Caselaw provides examples of "serious intent," and those cases reflect a degree of concrete planning that contrasts with the Plaintiffs' allegations here.

For example, a court recently determined plaintiffs had "shown a serious intent to engage in proscribed conduct" in challenging federal statutes that regulated the location of "stills," which are used to distill beverage alcohol. *Hobby Distillers Assoc. v. Alcohol and Tobacco Tax and Trade Bureau*, No. 4:23-CV-1221-P, 2024 WL 3357841, at *3 (N.D. Tex. July 10, 2024). The plaintiffs sought to "distill spirits at home for personal consumption." *Id.* Finding "serious intent" to engage in proscribed conduct, the district court there observed the following:

- "At least one Plaintiff currently operates a still in a shed on his residential property, permitted for distilling."

- "Another [Plaintiff] currently possesses a still in his garage that he has used to produce ethanol in the past."

- "Another [Plaintiff] possesses a permit to re-distill alcohol at his place of business; and could 'easily' transport one of his business's stills to his residence."

- "And the fourth [Plaintiff] has become proficient at making beer and wine at home and has identified only one missing part—a condenser—to repurchase before his home still is operable *again*." (emphasis in original).

- "In short, each of these plaintiffs is no more than one overt act away from criminal liability under the challenged statutes."

*Id*. at *3. Those allegations demonstrated the plaintiffs, as the court indicated, "kn[e]w what they want, what they need to do it, and how to make it happen," which helped show serious intent. *Id.*

Similarly, the Fifth Circuit recently considered an appeal where a professional musician who wanted to "busk" ("i.e., perform music while soliciting tips") challenged on First Amendment grounds three city ordinances that restricted busking. *Barilla*, 13 F.4th 427. The Fifth Circuit observed the plaintiff alleged he had applied for and received a "busking permit"—and that the plaintiff had engaged in his desired conduct by "busking" in a theatre. *Id.* at 433. This showed a "serious intent to busk." *Id.*

In contrast, in *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538 (5th Cir. 2008), the Fifth Circuit reversed, for lack of standing, a case where a district court had overturned a "semi-closed primary statute" as unconstitutional. *Id.* at 541. In reversing, the Fifth Circuit said the plaintiffs "suffered no threat of imminent injury" and had no "concrete plans or any objective evidence to demonstrate a serious interest in a closed primary" that would violate the challenged law. *Id.* at 546. For instance, the court observed the plaintiffs had "taken no steps to authorize the party to conduct closed primaries," had not "adopted any policies" that were counter to the challenged law, and had "provided no affidavit evidence that it intend[ed] to." *Id.* at 545. In other words, the plaintiffs had shown no "specific intent to [violate the challenged law.]" *Id*.

This case is closer to *Barbour* than *Hobby* or *Barilla*. Here, there is nothing in the record from which the Court may infer that any Plaintiff is "one overt act away" from engaging in their desired conduct. *Hobby Distillers*, 2024 WL 3357841, at *3. Unlike the plaintiff in *Hobby* who needed "one missing part" before his work became operable again or the plaintiff who could "easily" transport a still from his business to his home, nothing here suggests that Plaintiffs are imminently ready to engage in their desired conduct. There is no allegation that Plaintiffs, for example: hold meetings about the types of ideas they intend to communicate to their members; preserve in writing or by other means the specific "information" they intend to distribute; or have ready any statement they intend to distribute to their members. And unlike the plaintiff in *Barilla*, Plaintiffs have *not* alleged they have ever engaged in the conduct that is the basis for their claims. And they allege no steps taken toward engaging in such conduct. Instead, Plaintiffs are similar to the plaintiffs in *Barbour*: they show no "concrete plans or any objective evidence" that they seriously intend to engage in their desired conduct, such as making *any* strides toward that conduct.

For instance, Plaintiffs' allegation in paragraph 42 that Plaintiff National Religious Broadcasters (NRB) "desires to communicate" information to "its members encouraging them to remember [the information] when voting" fails to allege (i) when NRB intends to convey that information, (ii) that NRB is imminently ready to convey the information, and (iii) that NRB has taken *any* steps toward conveying the information. Plaintiff NRB's mere "desire" to communicate "information" is insufficient; the law requires "concrete plans" or "objective evidence." *Barbour*, 529 F.3d at 538. Plaintiffs' allegations in paragraphs 43 through 44 are similarly insufficient.

At bottom, Plaintiffs' "someday intentions" to engage in their desired conduct, "without any concrete details," including "when" such conduct will happen, "is insufficient to establish injury in fact." *Dettelbach*, 105 F.4th at 714; *see id.* (finding no standing where "Plaintiffs ha[d]

24

expressed only a vague intention to [violate the challenged law] at some indeterminate point in the future."). Thus, the Court should find that Plaintiffs fail to satisfy the injury in fact element of standing. However, even if the Court finds that Plaintiffs' allegations are adequate on the injury in fact element of standing, Plaintiffs must still show that such injury is caused by Section 501(c)(3).

> ### 2)  *Plaintiffs failed to show that Section 501(c)(3) arguably proscribes their desired conduct.*

In addition to showing a serious intent to engage in certain conduct, Plaintiffs must show the law they challenge arguably proscribes that conduct. *Barilla*, 13 F.4th at 433. Unlike the first element of an injury in fact—which focuses on a plaintiff's intentions—this element centers on the challenged law. This element is established when a plaintiff would face criminal punishment, civil penalties, a combination of civil and criminal consequences, or other sanctions for engaging in the conduct at issue. *See Speech First, Inc.* 979 F.3d at 333 (element satisfied where the conduct could result in "punitive sanctions," "criminal prosecution," "suspension from campus," and other "sanctions authorized"); *Fund Texas Choice v. Paxton*, 658 F. Supp. 3d 377, 397 (W.D. Tex. 2023) (finding that the plaintiffs had not satisfied arguably proscribed element where the "[s]traightfoward applications of statutory construction lead to the conclusion" that "civil penalties" could not be pursued for the plaintiffs' desired conduct).

Plaintiffs fail to satisfy this element because the statute they challenge—Section 501(c)(3)—does not "arguably proscribe" any conduct, and Plaintiffs identify no authority that subjects them to sanctions or criminal or civil penalties should they engage in their desired conduct. Section 501(c)(3) does not prohibit political campaign intervention. Rather—like other provisions in the Internal Revenue Code that deny tax benefits for political-campaign activities—Section 501(c)(3) implements Congress's policy decision to remain neutral in political matters and to not

subsidize partisan political activity through tax benefits. *See* 26 U.S.C. §§ 162(e)(1)(B), 501(c)(3), 4945(d)(2).

Plaintiffs claim the IRS will penalize them for "violating" the Johnson Amendment. *See* Dkt. No. 1, ¶ 31 ("[Plaintiffs] are subject to sanction by the IRS for any violation of the Johnson Amendment."). Plaintiffs also characterize the "loss of tax-exempt status" under Section 501(c)(3) as a "substantial" penalty. *Id.* ¶ 115. But as explained below in Section VII(D)(1), Section 501(c)(3) does not "proscribe" conduct. Instead, it sets a condition of eligibility that allows an organization to receive the government subsidy in the form of a federal tax exemption. Organizations who wish to engage in activity described in Section 501(c)(3) as being disqualifying may do so. The statute merely requires they do so without a government subsidy. What Plaintiffs paint as a "substantial" penalty—the loss of tax-exempt status—is merely the consequence of their decision to engage in activity that renders them ineligible for the subsidy as determined by Congress. But Congress does not "proscribe" conduct by setting such conditions, and the Supreme Court agrees. *Infra* VII(D)(1); *see Rust v. Sullivan*, 500 U.S. 173, 193 (1991) ("The Government can, without violating the Constitution, selectively fund a program to encourage certain activities . . . A refusal to fund protected activity, without more, cannot be equated with the imposition of a 'penalty' on that activity." (citations omitted)).

Indeed, the fact that Plaintiffs enjoy other avenues for their desired conduct further rebuts any allegation that Section 501(c)(3) "arguably proscribes" the conduct. Of course, Plaintiffs remain free to intervene in political campaigns if they choose to do so, but they cannot do so while continuing to receive tax-exempt status and tax-deductible contributions. Or they may also choose to operate for profit. As observed by the Supreme Court:

> [O]rganizations with religious and charitable aims might organize as for-profit corporations because of the potential advantages of that corporate form, such as the

freedom to participate in lobbying for legislation or campaigning for political candidates who promote their religious or charitable goals.

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 712 (2014).

Plaintiffs may also retain their Section 501(c)(3) status and create Section 501(c)(4) affiliates that may engage in limited political campaign activities but would be ineligible for tax-deductible contributions. *See Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 544 (1983) ("It also appears that TWR can obtain tax deductible contributions for its non-lobbying activity by returning to the dual structure it used in the past, with a § 501(c)(3) organization for non-lobbying activities and a § 501(c)(4) organization for lobbying.").

The choice belongs to Plaintiffs, and it is their decision to remain tax-exempt under Section 501(c)(3). Any attempt to deflect the consequences of that decision onto Congress by alleging that Section 501(c)(3) "arguably proscribes" conduct is not accurate.

Thus, Plaintiffs fail to show that Section 501(c)(3) arguably proscribes their desired conduct and fails to satisfy this element required for an injury in fact. As such, Plaintiffs fail to satisfy Article III standing, and the Court lacks constitutional power to adjudicate this case.

## B.    The Court lacks jurisdiction because the suit is "with respect to federal taxes" and is thus barred by the Declaratory Judgment Act.

The DJA "authorizes federal courts to provide declaratory relief." *Jolly v. United States*, 488 F.2d 35, 36 (5th Cir. 1974). It provides: "[i]n a case of actual controversy within its jurisdiction, except with respect to Federal Taxes other than actions brought under section 7428 of the Internal Revenue Code" any court of the United States "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

The text of the DJA excepts from its applicability cases that are "with respect to Federal Taxes other than actions brought under section 7428." *Id.* This federal tax exception "deprives a

court of jurisdiction that might otherwise exist in cases 'with respect to Federal taxes.'" *Rivero v. Fid. Investments, Inc.*, 1 F.4th 340, 345 (5th Cir. 2021). Here, Plaintiffs' Complaint fails to address the applicability of the DJA's federal tax exception and does not allege that Section 7428 applies. (*see generally* Dkt. No. 1). Rather, Plaintiffs allege that a different statute, the Anti-Injunction Act (AIA), does not bar this suit (*id.* ¶ 95–100.).

### 1) *The AIA does not prevent the DJA from barring this suit.*

The DJA and the AIA are separate statutes that each bar certain suits in tax matters, and whether the AIA applies does not prevent the DJA from barring this suit. The AIA is codified at Section 7421(a) of the Internal Revenue Code. It provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." In the Fifth Circuit, the DJA's federal tax exception is "at least as broad as" the AIA. *Rivero*, 1 F.4th at 345; *McCabe v. Alexand*er, 526 F.2d 963 (5th Cir. 1976) (citing *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 n.7 (1974)).

Although several circuits have determined the AIA and DJA are "coterminous" or "coextensive," the Fifth Circuit has avoided making such determination. *See Matter of Westmoreland Coal Company*, 968 F.3d 526, 533 n.7 (5th Cir. 2020) (acknowledging the text of the AIA and DJA differ but "assum[ing] *without deciding* that the two statutes are coterminous." (emphasis added)). Indeed, the Fifth Circuit has shown a willingness to find that the DJA bars a suit that is "with respect to Federal taxes" even when the "action does not involve 'the assessment or collection of any tax,' such that the AIA does not frustrate jurisdiction" because "the AIA [was] simply inapplicable." *Rivero*, 1. F.4th at 345 (cleaned up); *see id.* at 345–346 (finding that "the AIA is simply inapplicable" and holding that the district court "properly dismissed Rivero's action

for lack of jurisdiction" because of the DJA's federal tax exception); *see Franklin v. United States*, No. 3:20-CV-1303-N, 2021 WL 4458377, at *6 (N.D. Tex. Sept. 29, 2021) ("In fact, a recent Fifth Circuit decision implies that the [federal tax] limitation in the DJA may restrict the jurisdiction of a court even further than the AIA." (citing *Rivero*, 1 F.4th at 345–346)); *Cohen v. United States*, 578 F.3d 1, 18 (D.C. Cir. 2009) (Kavanaugh, J. dissenting) ("By their terms, of course, the statutes are not coterminous: § 2201(a) bars declaratory relief 'with respect to Federal taxes,' and the Anti-Injunction Act precludes injunctive relief 'restraining the assessment or collection of any tax.").

Thus, in the Fifth Circuit, the DJA may bar a suit even where the AIA may not apply. *See Rivero*, 1. F.4th at 345–346. Here, Plaintiffs title a section of their Complaint as "Inapplicability of the Anti-Injunction Act" (Dkt. No. 1, p. 41). But an analysis under the AIA is not required here. Whether the AIA applies or not, the DJA still bars this suit for the reasons explained below.

2)  *This suit is not a Section 7428 action excepted from the DJA's federal tax exception.*

As an initial matter, Plaintiffs do not bring this action under Section 7428 of the Internal Revenue Code such that the DJA's federal tax exception may not apply. *See* 28 U.S.C. § 2201 (noting the federal tax exception's applicability "other than [in] actions brought under section 7428 of the Internal Revenue Code"). Indeed, Plaintiffs make no reference to Section 7428 (Dkt. No. 1). And they make no request for declaratory relief regarding their own Section 501(c)(3) status which is the only remedy available under section 7428. *See Church of New Testament v. United States*, 783 F.2d 771, 773 (9th Cir. 1986) ("The only relevant exception to [the DJA Federal tax exception is] for actions brought under 26 U.S.C. § 7428, which provides for declaratory judgments concerning the status of organizations under 26 U.S.C. 501(c)(3)"); *Z Street v. Koskinen*, 44 F. Supp. 3d 48, 66 (D.D.C. 2014) ("Accordingly, the only available remedy under Section 7428

is a declaration with respect to [an organization's] initial qualification or continuing qualification for tax exempt status.").

This Court is also not a tribunal before which a Section 7428 claim may be heard. *See Church of New Testament*, 783 F.2d at 773 (observing that Section 7428 "authorizes only three specific federal courts to entertain such actions: the Tax Court, the Court of Claims, and the District Court for the District of Columbia"). Thus, the corollary question is whether Plaintiffs' suit is an action that is "with respect to Federal tax" such that the DJA bars the suit? The answer is yes.

> 3) *The plain language of the DJA and caselaw make clear that Plaintiffs' claims are with respect to federal taxes and thus barred by the DJA's Federal tax exception.*

Federal courts interpret any statute according to its plain language. *See In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1047 (5th Cir. 2012) ("We interpret statutes according to their plain meaning."); *see Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (cleaned up)). Looking then to the text, the words composing the federal tax exception to the DJA are neither overly technical nor otherwise complicated. "Except" means "with the exclusion"[3] of, and "with respect to" means "with reference to" or "in relation to."[4] Thus, the plain language of the DJA applies with the exclusion of cases that are with reference or in relation to federal taxes.

This suit easily fits that formula. All of Plaintiffs' claims are both with reference to and in relation to federal taxes because Plaintiffs ask that the Court declare unconstitutional or unlawful a portion of the Internal Revenue Code. Courts have consistently found that such actions are "with

---

[3] MERRIAM-WEBSTER, DICTIONARY, EXCEPT, available at https://www.merriam-webster.com/dictionary/except.

[4] MERRIAM-WEBSTER, DICTIONARY, RESPECT, available at https://www.merriam-webster.com/dictionary/with%20respect%20to.

respect to" federal taxes. *See Willis v. Alexander*, 575 F.2d 495, 496 (5th Cir. 1978) (considering appeal where plaintiff sought declaratory relief "with respect to the constitutionality of certain federal income tax laws" and concluding the "very language of the Declaratory Judgment Act precludes a federal court from giving relief in actions involving federal taxes"); *McCarthy v. Marshall*, 723 F.2d 1034, 1037 (1st Cir. 1983) ("If [a case] call[s] in question a specific provision of the Internal Revenue Code, or to a ruling or regulation issued under the Code, the claim would clearly come under the general bars to jurisdiction and declaratory relief at this stage in the proceedings."); *Stephenson v. Brady*, 927 F.2d 596, at *1–5 (4th Cir. 1991) (considering appeal where the plaintiff "sought declarations that certain IRS regulations . . . were ultra vires, and that [plaintiff] was not liable for a penalty" and holding that "[b]ecause the matter at hand concerns federal taxes, there is a statutory bar which prevents this court from granting the relief [plaintiff] seeks: the 'tax exception' to the Declaratory Judgment Act"); *Jenkins v. McCanless*, No. CA-3-77-0316-D, 1977 WL 1184 (N.D. Tex. May 27, 1977) (citing DJA and holding the court had no "jurisdiction to consider a declaratory judgment action involving federal taxes" in a case where the plaintiff sought a declaration that "all of the Rules and Regulations promulgated by the Secretary of the Treasury" are unconstitutional); *Fabricant v. Comm'r of Internal Revenue*, No. CV 21-2902, 2023 WL 2906190, at *3 (C.D. Cal. Mar. 6, 2023) (observing that an action "which seeks a declaratory judgment that a portion of the Internal Revenue Code is unenforceable, is undeniably 'with respect to federal taxes.'" (citations omitted)).

Thus, regardless of the claims brought and "the lengthy recital of assumed violations of constitutional rights," Plaintiffs' claims are all "with respect to Federal Taxes"—and "in this field the courts have no jurisdiction to enter declaratory judgments." *Jolles Foundation v. Moysey*, 250 F.2d 166, 169 (2d Cir. 1957). The Court should therefore find that it has no jurisdiction to entertain

any part of this suit because the suit is one "with respect to Federal Tax" under the DJA's federal tax exception.

If the Court agrees the DJA's federal tax exception bars this suit on jurisdictional grounds, the Court may dismiss all of Plaintiffs' claims for lack of jurisdiction without addressing the remainder of this motion. The Court may also then dismiss as moot Plaintiffs' request for injunctive relief (Dkt. No. 1, ¶ 151) because Plaintiffs make that request in case the United States "fail[s] to abide by the declaratory judgment of this Court," and there would be no declaratory judgment issued by the Court for which any injunctive relief may be sought.

### C.    Except for Plaintiffs' Religious Freedom Restoration Act claim, sovereign immunity denies the Court jurisdiction over all of Plaintiffs' other claims.

Plaintiffs have named as Defendants the Commissioner of the IRS in his "official capacity" and the IRS itself (Dkt. No. 1, ¶¶ 28, 29). "Suits against federal agencies such as the IRS are construed as suits against the United States, invoking sovereign immunity." *Mortland v. IRS*, No. A-03-CA-115-SS, 2003 WL 21791249, at *2 (W.D. Tex. June 24, 2003) (citing *Perez v. United States*, 312 F.3d 191, 194 (5th Cir. 2002)). And suits "against government officers in their official capacities," as here, are also "suits against the government itself." *Mauro v. Freeland*, 735 F. Supp. 2d 607, 616 (S.D. Tex. 2009). Plaintiffs' suit is therefore against the United States.

The United States, as sovereign, is "immune from suit save as it consents to be sued." *Schaffer v. United States*, 889 F.3d 238, 242 (5th Cir. 2018). This "sovereign immunity" implicates "a federal court's subject matter jurisdiction." *Joiner v. United States*, 955 F.3d 399, 403 (5th Cir. 2020). A plaintiff must thus "affirmatively and distinctly plead jurisdiction" in federal court and "establish that the United States has waived its sovereign immunity." *Olageshin v. Dep't of Veteran Affairs*, No. 5:18-CV-1248-FB-RBF, 2020 WL 13610376, at *1 (W.D. Tex. Feb. 14, 2020), *adopted* 2020 WL 13610375 (W.D. Tex. Mar. 4, 2020). This includes pleading any waiver to the United

States' sovereign immunity. *See Pingree v. United States*, No. 3:98-CV-2886-D, 1999 WL 714759, at *2 (N.D. Tex. Sept. 14, 1999) ("Plaintiffs must plead the basis on which they rely to avoid sovereign immunity."). A motion to dismiss on the basis of this sovereign immunity is properly considered under Rule 12(b)(1). *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996).

As a preliminary matter, federal courts "have consistently held that the United States has not waived sovereign immunity for constitutional claims." *Bustos v. United States*, No. 6:20-CV-00292-ADA-JCM, 2021 WL 11670028, at *2 (W.D. Tex. Feb. 25, 2021) (collecting cases). And as this Court acknowledged only a few months ago, "the Declaratory Judgment Act does not waive the sovereign immunity of the United States." *Shields of Strength v. U.S. Dept. of Defense*, No. 6:21-CV-00484, 2024 WL 3581976, at *2 (E.D. Tex. July 30, 2024) (Barker, J.) (citation omitted). Thus, if Plaintiffs contend the United States has waived sovereign immunity for the claims in this suit, they must plead and identify the statutory vehicle through which such waiver exists.

Other than the RFRA, the only statute that Plaintiffs cite through which the United States waives sovereign immunity in certain situations is 28 U.S.C. § 1346(a) (the Tucker Act); *see* Dkt. No. 1, ¶ 19 ("The Court has jurisdiction under 28 U.S.C. § 1346(a) because this is a civil action against the United States."). But neither of the subsections in that statute provides any waiver of sovereign immunity for the claims here. One section waives immunity for suits against the United States for the recovery of any tax alleged to have been erroneously or illegally assessed or collected or to recover certain penalties, and the other waives immunity for claims involving money damages. *See* 28 U.S.C. § 1346(a).

This case does not involve taxes or penalties that have been assessed or collected. Instead, as explained above, Plaintiffs seek to declare unlawful and unconstitutional a portion of the Internal Revenue Code that sets qualifications for organizations to be eligible for the subsidy of a

federal tax exemption. Accordingly, section 1346(a)(1) does not act to waive the United States'
sovereign immunity here.

Nor does section 1346(a)(2). Contrary to Plaintiffs' assertions, section 1346(a)(2) only
waives sovereign immunity with respect to claims for money damages, of which Plaintiffs claim
none. As the Supreme Court noted in *Richardson v. Morris*, 409 U.S. 464, 465-66 (1973), "the Act
has long been construed as authorizing only actions for money judgments and not suits for
equitable relief against the United States." *Id.; see also, e.g.*, *Berman v. United States*, 264 F.3d 16
(1st Cir. 2001) ("The jurisdiction of the district courts is limited to claims for money damages 'not
exceeding $10,000 in amount.' [Section 1346(a)(2)] does not authorize claims that seek primarily
equitable relief." (citations omitted)).

Plaintiffs seek no money damages and cite no other statute (aside from the RFRA[5])
indicating any waiver of the United States' sovereign immunity. Consequently, aside from claims
falling under the RFRA, all claims here should be dismissed for lack of subject matter jurisdiction.

## D.    All of Plaintiffs claims fail to state a claim for which relief may be granted.

### 1)    *Count 1 fails to state a claim under the First Amendment's Free Speech Clause.*

Plaintiffs allege the Johnson Amendment, as written and enforced by the IRS, violates the
First Amendment's freedom of speech clause (Dkt. No. 1, at pp. 42–43). They specifically allege
the Johnson Amendment, as written, creates a subject matter restriction and a speaker restriction
on political speech in violation of the First Amendment. They also allege that the Johnson
Amendment, as "arbitrarily and capriciously enforced" by the IRS, violates Plaintiffs' freedom of
speech in that some Section 501(c)(3) organizations, such as newspapers and Democrat-leaning

---

[5] As discussed below, the Plaintiffs fail to state a claim for relief under the RFRA.

churches," are not restricted in their open support or opposition of political candidates, while others, including Plaintiffs, are told that they must obey the strictures of the Johnson Amendment (*id.* ¶¶ 105–106).

But Plaintiffs allege no facts which even if true engender any cognizable legal theory. Therefore, and as explained below, the Court should dismiss this claim under Rule 12(b)(6).

> **i.   Plaintiffs Fail to State a Claim that the Johnson Amendment as Written Violates the First Amendment.**

Plaintiffs fail to state a claim that the Johnson Amendment as written violates the First Amendment because they lodge a legal theory that is not cognizable—that the Johnson Amendment regulates speech. In truth, Section 501(c)(3) merely sets qualifications for an organization to be eligible for a government subsidy. Section 501(c)(3) does not prohibit Plaintiffs from engaging in their desired conduct—they may engage in political intervention without the subsidies of tax exemption and tax-deductible contributions if they choose to do so. Supreme Court and other caselaw support this proposition.

"The First Amendment provides that 'Congress shall make no law  . . . abridging the freedom of speech." *Serv. Emp. Int'l Union, Loc. 5 v. City of Houston*, 595 F.3d 588, 595 (5th Cir. 2010) (quoting U.S. CONST. amend. I)). Plaintiffs allege the Johnson Amendment abridges their freedom of speech by "creat[ing] an unconstitutional restriction on the free speech rights of Plaintiffs protected by the First Amendment" (Dkt. No. 1, ¶ 103). Plaintiffs also assert that the Johnson Amendment, "as written, creates both a subject matter restriction and a speaker restriction on political speech in violation of the First Amendment" (*id.* ¶ 105). Plaintiffs are mistaken.

 "Section 501(c)(3) does not violate the First Amendment. Congress has not infringed any First Amendment rights or regulated any First Amendment activity but has simply chosen not to subsidize [the plaintiff's desired conduct.]" *Regan v. Taxation With Representation of Washington*,

461 U.S. 540, 540-41 (1983). In *Taxation With Representation*, the plaintiff argued that Section 501(c)(3)'s "substantial lobbying" provision was "unconstitutional under the First Amendment and the equal protection component of the Fifth Amendment's Due Process clause"—and that the statute "impose[d] an 'unconstitutional condition' on the receipt of tax-deductible contributions." *Id.* at 542–545. The Supreme Court rejected the argument. It emphasized that Section 501(c)(3) reflects that "Congress has merely refused to pay for the lobbying out of public monies." *Id.* at 545 ("The Code does not deny [plaintiff] the right to receive deductible contributions to support its non-lobbying activity, nor does it deny [plaintiff] any independent benefit on account of its intention to lobby . . . This Court has never held that the Court must grant a benefit such as [plaintiff] claims here to a person who wishes to exercise a constitutional right."). Accordingly, the Supreme Court has rejected the argument that Section 501(c)(3) somehow infringes on First Amendment rights. And while the Court acknowledged the "case would be different if Congress were to discriminate invidiously in its subsidies in such a way as to aim at the suppression of dangerous ideas," *id.* at 548 (internal quotation omitted), Plaintiffs do not allege the Johnson Amendment discriminates in its subsidies so as to "aim at the suppression of dangerous ideas." *Id.*

The Court made a similar ruling in considering a First Amendment challenge to a Treasury Regulation that disallowed a deduction for ordinary and necessary business expenses for amounts spent on lobbying. *Cammarano v. United States*, 358 U.S. 498 (1959). The Court underscored that Congress not subsidizing an activity does not mean Congress has restricted the activity: "Petitioners are not being denied a tax deduction because they engage in constitutionally protected activities, but are simply being required to pay for those activities entirely out of their own pockets, as everyone else engaging in similar activities is required to do under the provisions of the Internal Revenue Code." *Id.* at 513. The Court indeed relied on *Cammarano* in *Taxation With*

*Representation*. *See Taxation With Representation*, 461 U.S. at 546 ("We held that Congress is not required by the First Amendment to subsidize lobbying. In this case, like in *Cammarano*, Congress has not infringed any First Amendment rights or regulated any First Amendment Activity."). Furthermore, the D.C. Circuit applied both *Taxation With Representation* and *Cammarano* in concluding the First Amendment does not require Congress to subsidize First Amendment rights. *See Branch Ministries,* 211 F.3d at 144 ("Nor does the Church succeed in its claim that the IRS has violated its First Amendment free speech rights by engaging in viewpoint discrimination. The restrictions imposed by section 501(c)(3) are viewpoint neutral; they prohibit intervention in favor of all candidates for public office by all tax-exempt organizations, regardless of candidate, party, or viewpoint.").

Similarly, non-tax cases have also followed this same path. For example, in *United States v. American Library Ass'n Inc*., 539 U.S. 194 (2003), the Supreme Court rejected a claim by public libraries that a law enacted by Congress that conditioned funds for Internet access on the libraries installing a filtering software violated the libraries' First Amendment rights. *Id.* The Court observed the law did not "penalize" libraries who chose not to install the software or "deny them the right to provide their patrons with unfiltered Internet access." *Id.* at 212. Rather, the Court explained the law "simply reflects Congress' decision not to subsidize their doing so"—"to the extent that libraries wish to offer unfiltered access, they are free to do so without federal assistance." *Id.*; *see id.* ("A refusal to fund protected activity, without more, cannot be equated with the imposition of a penalty on that activity." (quoting *Rust v. Sullivan*, 500 U.S. 173, 193 (1991)).

The common thread in those cases is this: Congress does not restrict activity by setting conditions precedent for a government subsidy. That is what a tax exemption is: "[b]oth tax exemptions and tax-deductibility are a form of subsidy that is administered through the tax system.

37

A tax exemption has much the same effect as a cash grant to the organization of the amount of tax it would have to pay on its income." *Taxation With Representation*, 461 U.S. at 544.

Thus, the Johnson Amendment restricts no speech. Far from it. Plaintiffs enjoy a menu of options to engage in political intervention. Plaintiffs remain free to intervene in political campaigns if they choose to do so—but cannot do so while receiving tax-exempt status and tax-deductible contributions. And again, Plaintiffs may operate as for-profit entities and engage in political activities as they see fit, as the Supreme Court stated in *Burwell*, 573 U.S. at 712. Plaintiffs may also retain their Section 501(c)(3) status and create Section 501(c)(4) affiliates, which affiliates would be permitted to engage in limited political campaign activities but would be ineligible for tax-deductible contributions. *See Taxation With Representation*, 461 U.S. at 544 ("It also appears that TWR can obtain tax deductible contributions for its non-lobbying activity by returning to the dual structure it used in the past, with a § 501(c)(3) organization for non-lobbying activities and a § 501(c)(4) organization for lobbying.").

The choice, again, belongs to Plaintiffs. And if Plaintiffs are tax-exempt organizations under Section 501(c)(3)—as they allege in the Complaint (Dkt. No. 1, ¶¶ 24–27)—then they are subject to the eligibility requirements of the Johnson Amendment because they have *chosen* to take advantage of the government subsidy that Congress made available to organizations described in Section 501(c)(3), despite having options otherwise. Accordingly, Plaintiffs' allegation—that the First Amendment, as written and as enforced by the IRS, "abridges" their speech—fails to state a claim for relief because it is based on an erroneous point of law and leads to no cognizable legal theory. *Schor v. Select Portfolio Serv.,* No. 4:16-CV-829-ALM-KPJ, 2017 WL 2486090, at *2 (E.D. Tex. May 11, 2017) (noting dismissal under 12(b)(6) is appropriate if complaint fails to assert a cognizable legal theory or the facts asserted cannot support a cognizable legal theory.).

Plaintiffs' reliance in their Complaint on *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) (Dkt. No. 1, ¶ 103) is misplaced. There, a Section 501(c)(4) nonprofit corporation challenged on constitutional grounds the Bipartisan Campaign Reform Act of 2002 (BCRA). The plaintiff argued the BCRA's prohibition on corporations using general treasury funds to make independent expenditures for speech that is an "electioneering communication" or that expressly advocates the election or defeat of a candidate, was unconstitutional as applied to a certain film. *Id.* at 320–21. The Court observed the BCRA amounted to an "outright ban" on speech "backed by criminal sanctions." *Id.* at 337. And it held that Congress may not suppress political speech based on a speaker's "corporate identity" and that the BCRA's barring of independent corporate expenditures for electioneering communications violated the First Amendment. *Id.* at 364.

This case is distinguishable from *Citizens United*. *Citizens United* involved a statute that placed a direct restriction on independent political expenditures, which the Court viewed as an outright ban on speech backed by criminal sanctions. The Court noted that by "suppressing the speech of manifold corporations, both for-profit and nonprofit, the government prevents their voices and viewpoints from reaching the public and advising voters on which persons or entities are hostile to their interests." *Id.* at 354. In contrast, the Johnson Amendment is not backed by sanctions—criminal or otherwise—and places no restriction on speech. Instead, it reflects Congress's policy choices regarding the organizations who may receive the dual subsidies of tax-exempt status and eligibility to receive contributions deductible under Section 170. *See Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 648 (7th Cir. 2013) (distinguishing *Citizens United* from *Taxation With Representation* because *Citizens United* applies to "statutes that prohibit or burden speech," whereas *Taxation With Representation* "controls on government subsidies of speech.").

*Citizens United* therefore does not save Count 1 from dismissal under 12(b)(6).

ii.    **Plaintiffs Fail to State a Claim that the Johnson Amendment as Enforced Violates the First Amendment.**

Plaintiffs also fail to state a claim for relief for their "as-enforced" challenge. "[S]elective enforcement of a neutral and facially constitutional law may run afoul of the First Amendment if the government's prosecutorial choices turn on the content or viewpoint of speech." *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.th 1122, 1141 (D.C. Cir. 2023). Although a claim for selective enforcement based on the First Amendment does "not require a showing of discriminatory intent," the "standard for proving such a claim is still 'particularly demanding.'" *United States v. Young*, No. 23-CR-241 (GMH), 2024 WL 3030656, at *2 (D.D.C. June 17, 2024) (citing *Frederick Douglass Found.*, 82 F.th at 1141)). Thus, to "make out a selective enforcement claim, the target of enforcement must displace the presumption that" the government "acted lawfully" by demonstrating the target "was singled out for enforcement from among others similarly situated." *Id.* (cleaned up). "Selective enforcement claims will often be difficult to establish" and are "cabined by the requirement that a plaintiff demonstrate he is similarly situated to others against whom the law was not enforced." *Frederick Douglass Found.*, 82 F.th at 1146.

Here, Plaintiffs' allegations rest on a handful of speculative examples, none of which demonstrate a plausible claim of liability. For instance, Plaintiffs point to alleged instances of political intervention by certain groups—many of which they apparently sourced from the internet. Among Plaintiffs' allegations are references to newspapers (Dkt. No. 1, ¶¶ 46-80); "Democratic campaign activity in churches" (*id.* ¶¶ 81-90); a statement by the Attorney General regarding improper criteria for screening Section 501(c)(4) exemption applications (*id.* ¶ 91); an anecdote about a church paying an unidentified "tax penalty" for political campaign intervention (*id.* ¶ 92); and a letter issued to Christians Engaged, which proposed to deny that organization's application

for recognition of tax-exempt status because, the letter asserted, the organization's activities resulted in substantial private benefit to a political party (*id.* ¶ 93).

These examples do not rise to the level of plausible liability. As stated already, the Johnson Amendment applies equally to all Section 501(c)(3) organizations and does not make content-based distinctions. Even if the Court assumes that some Section 501(c)(3) newspapers engage in political campaign intervention unhindered and that there has been some unhindered "Democratic campaign activity in churches," Plaintiffs' allegations do not negate that "conservative religious organizations" may also have engaged in similar activities unhindered. In other words, Plaintiffs merely present one-sided allegations from which there is no inference the IRS "singled out" Plaintiffs for enforcement "from among others similarly situated." *Young*, 2024 WL 3030656, at *2; *see Frederick Douglass Found.*, 82 F.th at 1146 (plausible claim for "free speech selective enforcement claim" where the Court could infer from complaint that plaintiff's "members were similarly situated to other[s]" and that the defendant enforced the law at issue based on viewpoint). Plaintiffs, in fact, concede the IRS has not enforced the Johnson Amendment against them.

Thus, Plaintiffs fail to state any as-enforced First Amendment free-speech claim.

2)  *Count 2 Fails to State a Claim Under the Void for Vagueness Doctrine of the Fifth Amendment's Due Process Clause*

Plaintiffs also allege the Johnson Amendment, as enforced by the IRS, is void for vagueness in violation of the Due Process Clause of the Fifth Amendment. They allege the IRS's use of a "facts and circumstances" test in application of the Johnson Amendment "allows the government to freely discriminate against speech based upon viewpoint" (Dkt. No. 1, ¶¶ 108, 110).

"The Fifth Amendment guarantees every citizen the right to due process." *United States v. Vogel*, No. 4:08-CR-224, 2009 WL 10673439, at *3 (E.D. Tex. Sept. 2, 2009) (citation omitted). Stemming from "this guarantee is the concept that vague statutes are void." *Id.* "When a statute is

void for vagueness, the language on its face is unclear." *United States v. Kay*, 513 F.3d 432, 442 n.16 (5th Cir. 2007). The "void-for-vagueness doctrine has been primarily employed to strike down criminal laws." *Groome Res. Ltd. v. Par. of Jefferson*, 234 F.3d 192, 217 (5th Cir. 2000) (citation omitted). But in the civil context, as here, "the statute must be so vague and indefinite as really to be no rule at all." *Id.* (cleaned up); *see also Phillips v. Collin Cmty. Coll. District*, 701 F. Supp. 3d 525, 540 (E.D. Tex. 2023) (Mazzant, J.) (noting that in "a civil action, a law is void for vagueness only if it commands compliance in terms so vague and indefinite as really to be no rule or standard at all or if it is substantially incomprehensible." (cleaned up)).

"When a statute interferes with the right of free speech," a "more stringent vagueness test should apply." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010); *FCC v. Fox Television Stations*, 567 U.S. 239, 253–254 (2012) ("When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech."). But where, as here, a law does not infringe First Amendment rights, but merely declines to subsidize them, the vagueness analysis should not be applied strictly. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 572–573, 589–590 (1998) (rejecting a void-for-vagueness challenge to a statute requiring consideration of "decency and respect for the diverse beliefs and values of the American public" in granting federal arts funding). In that situation, "opaque" rules allocating government "subsidies" are acceptable, even though they would "raise substantial vagueness concerns" if found in a "criminal statute or regulatory scheme." *Id*. at 588–589. As the Supreme Court explained, "when the Government is acting as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe." *Id.* at 589. So long as the rule at issue allocates subsidies in a neutral fashion, and does not raise "concern about the suppression of disfavored viewpoints," the specificity of the rule should be evaluated under a deferential standard. *Id.* at 587.

Again, the Johnson Amendment does not "interfere with the right of free speech" but is part of a classification with respect to the government subsidy of a tax exemption. Thus, in evaluating Plaintiffs' "void for vagueness" claim, the Court should apply the ordinary standard for civil cases and not the more stringent standard for cases involving the interference with free speech.

Here, the text of the section 501(c)(3) is clear and unambiguous. Indeed, Plaintiffs do not argue they are confused by such text as they assure us they have not violated it. Not surprisingly, Plaintiffs reach for something else. They cite a "facts and circumstances" test on the IRS's website that they allege "allows the government to freely discriminate against speech based on viewpoint." But in doing so, Plaintiffs omit the context in which those "facts and circumstances" words were used. Since Plaintiffs incorporate that webpage by reference in their Complaint, the Court may examine the webpage for the rest its context in ruling on this motion. *See Randall D. Wolcott, M.D., v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (citing *Dorsey v. Portfolio Equities*, 540 F.3d 333, 338 (5th Cir. 2008)). Here is what the  webpage actually says:

> Certain activities or expenditures may not be prohibited depending on the facts and circumstances. For example, certain voter education activities (including presenting public forums and publishing voter education guides) conducted in a non-partisan manner do not constitute prohibited political campaign activity. In addition, other activities intended to encourage people to participate in the electoral process, such as voter registration and get-out-the-vote drives, would not be prohibited political campaign activity if conducted in a non-partisan manner.
>
> On the other hand, voter education or registration activities with evidence of bias that (a) would favor one candidate over another; (b) oppose a candidate in some manner; or (c) have the effect of favoring a candidate or group of candidates, will constitute prohibited participation or intervention.

*Internal Revenue Service*, Restriction of Political Campaign Intervention by Section 501(C)(3)  Tax-Exempt  Organizations,  https://www.irs.gov/charities-non-profits/charitable-

organizations/restriction-of-political-campaign-intervention-by-section-501c3-tax-exempt-organizations (Last Updated August 20, 2024).

The IRS explaining on a webpage that certain activities "may not be prohibited" depending on the "facts and circumstances"—and offering examples to that end—does not somehow state a plausible claim that the Johnson Amendment is "so vague and indefinite as really to be no rule at all." *Groome Resources Ltd.*, 234 F.3d at 217. Thus, this allegation does not state a claim. Further, in support of their void for vagueness claim, Plaintiffs offer a conclusory statement that certain churches are "permitted routinely to violate" the Johnson Amendment while the IRS allegedly "warns others, including Plaintiffs, that they must obey its provisions" (Dkt. No. 1, p. 45). Even taking those allegations as true, no inference may be drawn that the IRS's enforcement of the Johnson Amendment renders the statute too vague to pass muster. Thus, Count 2 states no claim.

3)  *Counts 3 and 4 Fail to State a Claim Under the First Amendment's Free Exercise Clause and the RFRA*

Plaintiffs allege that their religious convictions require them to discuss scripture in the context of everyday life and that "[n]o area of life is exempt from the reach of Scripture" (Dkt. No. 1, ¶ 113). They allege it is their spiritual duty to teach about issues such as religious freedom, the right to life, racism, and the duties of parents to their children and note that each of these topics is also a current political topic that is treated in different manners by different political candidates (*id.* ¶ 114). Plaintiffs also contend that if they cannot inform their listeners how the views of various political candidates compare to the Bible's position, they will fall short of fulfilling their spiritual duties (*id.* ¶ 115). They state that section 508(c)(1) automatically classifies church Plaintiffs as Section 501(c)(3) organizations, thereby rendering them subject to the Johnson Amendment's requirements with no alternative (*id.* ¶ 118). Last, Plaintiffs claim the Johnson Amendment is not a neutral rule of general applicability because of arbitrary enforcement by the IRS (*id.* ¶ 123).

44

"The Free Exercise Clause provides that 'Congress shall make no law . . . prohibiting the free exercise' of religion." *Kennedy v. Bremerton Sch. Dist*., 597 U.S. 507, 524 (2022) (quoting U.S. CONT. amend. I)). Designed to "augment" the First Amendment's protection of free religion, the RFRA "mandates that government shall not substantially burden a person's exercise of religion unless the government demonstrates that the burden furthers a compelling governmental interest by the least restrictive means." *Diaz v. Collins*, 114 F.3d 69, 71 (5th Cir. 1997) (citations omitted)).

To state a claim "under either the Constitution or the statute [the RFRA]," a plaintiff must allege that its free exercise right has been substantially burdened. *Branch Ministries*, 211 F.3d at 142 (D.C. Cir. 2000) (citations omitted); *see also Campbell v. Garland*, No. 22-11067, 2023 WL 7266990, at *6 (5th Cir. 2023) (noting that to qualify for "protections" under the RFRA, a person must show, among other things, that the government's "action or policy substantially burdens [the relevant religious] exercise by, for example, forcing the plaintiff to engage in conduct that seriously violates his or her religious beliefs" (citation omitted)). But as already explained, any such allegation is meritless because the Johnson Amendment does not restrict, let alone substantially burden, any rights. Nor does the Johnson Amendment "force" any organization to engage in conduct. Rather, organizations are free to forego the tax exemption provided by Section 501(c)(3).

Indeed, the Supreme Court explained in *Taxation With Representation* that "[a] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny." *Taxation With Representation*, 461 U.S. at 549.  Thus, as a matter of law, the Johnson Amendment does not unconstitutionally interfere with Plaintiffs' free exercise of religion; Congress has simply declined to subsidize Plaintiffs' free exercise if that exercise involves political campaign intervention. Accordingly, Plaintiffs allege no "substantial burden" of any religious beliefs to support their claim under the RFRA or the Free Exercise Clause. Moreover,

that Section 508(c)(1)(A) initially grants Plaintiff churches tax-exempt status under Section 501(c)(3) without the need to file an application does not mean that they must forever remain Section 501(c)(3) organizations. Like any other Section 501(c)(3) organization, they remain free to engage in the political campaign intervention or substantial lobbying activities that Congress chose not to subsidize. Thus, Counts 3 and 4 fail to state any claim for relief.

4) *Count 5 Fails to State a Claim Under the Fifth Amendment's Equal Protection Clause*

Plaintiffs assert they have been treated unequally by the Johnson Amendment, as written and as enforced by the IRS, in at least three ways: (1) Section 501(c)(3) nonprofits have no legal alternative to engage in political speech while all other forms of nonprofit organizations have a legal path to do so; (2) some Section 501(c)(3) nonprofits are regularly warned to obey the rules of the Johnson Amendment prohibiting political speech, while others are permitted to engage in such political speech with impunity; and (3) the Code automatically silences churches by placing them into the 501(c)(3) category without application, precluding them from engaging in political speech (Dkt. No. 1, ¶ 138). As addressed throughout this motion, each of these claims is either legally inaccurate or factually unsupported and thus fails to state a claim. First, Section 501(c)(3) organizations enjoy several options to engage in political campaign intervention, including by creating Section 501(c)(4) affiliates to conduct some political campaign activities, and Section 501(c)(3) organizations are not forever locked into restrictions against political activity and are free to engage in that activity without tax-exempt status. Second, as explained above, Plaintiffs' assertion that only "some Section 501(c)(3) nonprofits" are "warned to obey the rules" while others are not rests on speculative examples that do not raise to the level of any plausible claim.

Plaintiffs also suggest that, at a minimum, Section 501(c)(3) organizations should be given the same opportunity as Section 501(c)(6) organizations and perhaps be allowed to raise non-

deductible funds to engage in political speech or inform their donors that a pro rata share of their donation is not deductible (*id.* ¶ 143). In *Taxation With Representation*, the Supreme Court rejected a very similar equal protection challenge to the prohibition on substantial lobbying applicable to Section 501(c)(3) organizations. In doing so, it rejected the taxpayer's argument that because Congress chose not to impose a similar limitation on Section 501(c)(19) veterans' organizations, there was an equal protection problem with the limitation on Section 501(c)(3) organizations. The Court stated: "Generally, statutory classifications are valid if they bear a rational relation to a legitimate governmental purpose … Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes." *Taxation With Representation*, 461 U.S. at 547; *see also Fitzgerald v. Racing Ass'n of Cent. Iowa*, 539 U.S. 103, 108 (2003) ("[T]he Constitution grants legislators, not courts, broad authority (within the bounds of rationality) to decide whom they wish to help with their tax laws and how much help those laws ought to provide."). Indeed, tax legislation has a "presumption of constitutionality." *Apache Bend Apartments, Ltd. v. United States*, 964 F.2d 1556, 1563 (5th Cir. 1992) (quoting *Taxation With Representation*, 461 U.S. at 547). Tax classifications are constitutionally valid if "there is a plausible policy reason for the classification." *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012). A legislature will be considered to have such a plausible reason if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (quoting *Fed. Commc'n Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). Here, there is a clear and rational basis for distinction between Section 501(c)(3) organizations, whose donors may receive a charitable contribution deduction under Section 170(c), and Section 501(c)(6) trade associations whose members who are limited to deducting only their dues that qualify as business expenses under Section 162(a) and further limited under Section 162(e)(2) from deducting any portion of the dues

allocable to expenses of the association for lobbying or political campaign intervention. Section 501(c)(3) classification rationally provides greater exclusion and relief from taxes than what is available to tax-exempt organizations described in other paragraphs of Section 501(c) and provides greater limits on the conduct that must be avoided to obtain such greater tax relief.

Even for legislation that has a disparate impact on a suspect class, "[t]he equal protection component of the Fifth Amendment prohibits only purposeful discrimination, and when a facially neutral federal statute is challenged on equal protection grounds, it is incumbent upon the challenger to prove that Congress selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Harris v. McRae*, 448 U.S. 297, 323, n.26 (1980). Thus, to state an equal protection claim under the Fifth Amendment, a plaintiff must plead sufficient factual matter to show Congress enacted the law at issue "for the purpose of discriminating." *See Ashcroft v. Iqbal*, 556 U.S. at 677.

The Johnson Amendment, as written, is facially neutral, *see Branch Ministries,* 211 F.3d at 144, and Plaintiffs allege no facts that support a finding that Congress had any discriminatory purpose in enacting it. Thus, Plaintiffs' equal protection clause claim should be dismissed for failing to state a claim under Rule 12(b)(6). Similarly, Plaintiffs have not alleged facts that support a finding that the IRS acted with discriminatory intent in enforcing the Johnson Amendment. As explained above, Plaintiffs' allegations, even if taken as true, fail to raise a claim the IRS has acted in a discriminatory manner or with discriminatory intent with respect to Plaintiffs or similarly situated organizations. Thus, Plaintiffs' as-applied equal protection claim also fails to state a claim.

## VIII.    CONCLUSION

Plaintiffs' claims fail to satisfy Article III standing and are barred by the DJA. Except for the RFRA claim, Plaintiffs' other claims are barred by sovereign immunity. Even if the Court

determines there is jurisdiction for some of the Plaintiffs' claims, the Complaint fails to state a claim for relief because Plaintiffs' entire case is based on the erroneous point of law that Section 501(c)(3) prohibits conduct rather than setting qualifications to be eligible for special tax benefits. This legal flaw leads to the absence of any cognizable legal theory. Thus, the Court should dismiss Plaintiffs' Complaint it its entirety under Rule 12(b)(1) and/or Rule 12(b)(6).

Respectfully submitted,

**DAVID A. HUBBERT**
Deputy Assistant Attorney General

*/s/ Jonathan L. Blacker*
JONATHAN L. BLACKER
Texas Bar No. 00796215
*/s/ Eduardo R. Mendoza*
EDUARDO R. MENDOZA
Texas Bar. No. 24096680
Attorneys, Tax Division
U.S. Department of Justice
1700 Pacific Avenue, Suite 3700
Dallas, Texas 75201
(214) 880-9765 (Blacker)
(214) 880-9735 (Mendoza)
(214) 880-9741 (FAX)
Jonathan.Blacker2@usdoj.gov
Eduardo.Mendoza@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 23, 2024, I electronically filed this document via the Court's ECF system, which will send notice of such filing to all counsel of record entitled to ECF notice.

*/s/Eduardo R. Mendoza*
EDUARDO R. MENDOZA

## <u>CERTIFICATE OF CONFERENCE</u>

No certificate of conference is required because this is a motion to dismiss. *See* L.R. CV-7(i) ("Neither the 'meet and confer' nor the 'certificate of conference' requirements are applicable to . . . the following motions: (1) to dismiss.").