**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS TYLER DIVISION**

| | |
|---|---|
| NATIONAL RELIGIOUS BROADCASTERS, SAND SPRINGS CHURCH, FIRST BAPTIST CHURCH WASKOM, and INTERCESSORS FOR AMERICA<br><br>    Plaintiffs,<br><br>v.<br><br>DANNY WERFEL, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE INTERNAL REVENUE SERVICE, and THE INTERNAL REVENUE SERVICE<br><br>    Defendants. | Civil Action No. 6-24-cv-00311 |

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### Table of Contents

Table of Contents .................................................................................................................. i

Table of Authorities.............................................................................................................. ii

I. Introduction....................................................................................................................... 1

II. Statement of the Issues ................................................................................................... 5

III. Statement of Facts ......................................................................................................... 6

IV. Plaintiffs have Standing to Raise this Challenge ......................................................... 7

  A. Plaintiffs Intend to Engage in Protected Conduct. ..................................................... 8

  B. Plaintiffs' Intended Speech is Arguably Proscribed by the Challenged Law. ........... 8

  C. Plaintiffs are Subject to a Substantial Threat of Future Enforcement of the Challenged Law… .......................................................................................................................... 9

V.  Neither the Declaratory Judgment Act nor the Anti-Injunction Act Apply here .................... 10

VI. Sovereign Immunity Poses no Bar to this Case............................................................. 12

VII. There are no Disputed Facts Relative to this Motion .................................................. 13

VIII. The Johnson Amendment as Written Violates the First Amendment.................................. 14

  A. Speech about Candidates is at the Apex of Protected Speech.............................................. 17

  B. This is a Total Ban on Protected Speech ........................................................................... 18

C. *Citizens United* has Changed the Legal Landscape ........................................................... 21

D. The Long-Established Rule that Privileges Cannot be Conditioned on the Forfeiture of Constitutional Rights should Control…………………………………………………...…………………………………24

E. The Johnson Amendment Clearly Fails Strict Scrutiny ....................................................... 29

Conclusion ................................................................................................... 30

**Table of Authorities**

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) ......................... 18, 28

*Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484 (5th Cir. 2014) .................... 12

*Alabama-Coushatta Tribe. Shields of Strength v. U.S. Dep't of Def.*, 735 F. Supp. 3d 755 (E.D. Tex. 2024) ................................................................................... 12

*Alexander v. Americans United Inc.*, 416 U.S. 752 (1974)................................................... 12

*Arkansas Ed. Television Comm'n v. Forbes*, 523 U.S. at 676. ............................................... 18

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383 (5th Cir. 2024) ................................................................................... 7

*Barilla v. City of Houston*, 13 F.4th 427 (5th Cir. 2021).................................................. 7, 9

*Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668 (1996)....................... 24

*Cammarano v. United States*, 358 U.S. 498 (1959)...................................................... 4, 23

*Citizens United v. Federal Election Commission,* 558 U.S. 310 (2010).............................. passim

*Cohen v. United States*, 650 F.3d 717 (D.C. Cir. 2011) ..................................................... 10

*Daily Wire, LLC v. United States Dep't of State*, 733 F. Supp. 3d 566 (E.D. Tex. 2024) ......... 7, 10

*Danos v. Jones*, 652 F.3d 577 (5th Cir. 2011) ............................................................. 13

*Dombrowski v. Pfister*, 380 U.S. 479 (1965) ............................................................... 7

*Dugan v. Rank*, 372 U.S. 609 (1963) ..................................................................... 13

*FCC v. League of Women Voters of California¸* 468 U.S. 364 (1984)........................................ 27

*Fed. Election Comm'n v. Cruz*, 596 U.S. 289 (2022)...................................................... 18

*Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111 (10th Cir. 2017)................................ 10

*Houston Chronicle v. City of League City*, 488 F.3d 613 (5th Cir. 2007)................................ 8

*HS Res., Inc. v. Wingate*, 327 F.3d 432 (5th Cir. 2003)................................................... 14

*Larson v. Domestic Foreign Corp.*, 337 U.S. 682 (1949)................................................... 13

*Legal Services Corporation v. Velazquez*, 531 U.S. 533 (2001)............................................ 27

*Machete Prods., L.L.C. v. Page*, 809 F.3d 281 (5th Cir. 2015)........................................... 29

*Matter of Westmoreland Coal Co.,* 968 F.3d 526 (5th Cir. 2020)............................................ 11

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024)....................................................... 15, 16

*Perry v. Sindermann,* 408 U.S. 593 (1972)................................................................. 25

*Planned Parenthood Ass'n of Hidalgo Cnty. Texas, Inc. v. Suehs*, 692 F.3d 343 (5th Cir. 2012) . 25

*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015) ...................................................... 20

*Regan v. Taxation with Representation of Washington,* 461 U.S. 540 (1983) ...................... passim

*Rivero v. Fid. Invs., Inc*., 1 F.4th 340 (5th Cir. 2021) .................................................. 11
*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47 (2006)............................... 27
*Rust v. Sullivan*, 500 U.S. 173 (1991) ............................................................................ 28
*Sherbert v. Verner,* 374 U.S. 398 (1963). ...................................................................... 24
*South Carolina v. Regan*, 465 U.S. 367 (1984).......................................................... 11, 12
*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020)........................................... 7, 9
*Speiser v. Randall*, 357 U.S. 513 (1958)....................................................................... 14
*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...................................... 7, 8, 12
*Texas v. United States Dep't of Homeland Sec.,* 123 F.4th 186 (5th Cir. 2024) ..................... 13
*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017) ........................... 24
*Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211 (5th Cir. 2023)................................... 12
*U.S. v. American Library Ass'n, Inc.*, 539 U.S. 194 (2003)............................................... 28
*United States v. Alvarez*, 567 U.S. 709 (2012) ............................................................... 20
*Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988) .................................................... 7
*Walz v. Tax Comm'n of City of New York*, 397 U.S. 664 (1970) .......................................... 25, 26
*Z St. v. Koskinen*, 791 F.3d 24 (D.C. Cir. 2015)................................................... 10, 11, 12

## Other Authorities

*Citizens United v. FEC: Corporate Political Speech*, 124 HARV. L. REV. 75 (2010)............... 1, 21
Congressional Research Service, *Tax-Exempt Organizations Under Interval Revenue Code
     Section 501c: Political Activity* Restrictions,
     *https://crsreports.congress.gov/product/pdf/RL/RL33377#:~:text=The%20organizational%20
     definition%20in%20%C2%A7,not%20intervene%20in%20political%20campaigns*..............16
Election Year Issues, (IRS publication) https://www.irs.gov/pub/irs-tege/eotopici02.pdf ....... 3, 19
Erik W. Stanley, *LBJ, the IRS, and Churches: The Unconstitutionality of the Johnson Amendment
     in Light of Recent Supreme Court Precedent*, 24 REGENT U. L. REV. 237 (2012) ................. 22
IRS Website: Lobbying. https://www.irs.gov/charities-non-profits/lobbying ............................. 16
Nina J. Crim and Laurence H. Winer, *Politics, Taxes, and the Pulpit*, Oxford University Press,
     New York (2011) pp. 110-116........................................................................................ 22
Patrick O'Daniel, *More Honored in the Breach: A Historical Perspective of the Permeable IRS
     Prohibition on Campaigning by Churches*, 42 B.C. L.REV. 733 (2001) ................................. 22
Political Campaign and Lobbying Activities of IRC 501(c)(4), (c)(5), and (c)(6) Organizations.
     https://www.irs.gov/pub/irs-tege/eotopicl03.pdf , .................................................................. 2
Tax Guide for Churches and Religious Organizations (Publication 1828).
https://www.irs.gov/pub/irs-pdf/p1828.pdf................................................................................8, 9

Pursuant to FRCP 56, Plaintiffs move for partial summary judgment, asking this Court to rule that the Johnson Amendment contained in § 501(c)(3) of the Internal Revenue Code is unconstitutional on its face insofar as it prohibits nonprofit organizations from using their normal means of communication to support or oppose political candidates. No relief is sought pertaining to donations by nonprofits to candidates. For the purposes of this Motion only, Plaintiffs rely solely on their facial Free Speech Clause claims. All other claims, including all claims concerning unequal enforcement by the IRS contained in their First Amended Complaint (hereinafter, "the Complaint"), are reserved for later proceedings.

## I.    Introduction

When the Johnson Amendment was adopted, federal election law barred all corporations, for-profit and nonprofit alike, from using their own funds to speak about candidates.[1]  Because of the Supreme Court's decision in *Citizens United v. Federal Election Commission,* 558 U.S. 310 (2010), this is no longer true. Now, as a matter of federal election law, the vast majority of corporations, for-profit and nonprofit alike—except for 501 (c)(3) organizations—can use their own resources to speak freely in support or opposition of political candidates.

Under the Internal Revenue Code (IRC), the other major categories of nonprofits—those organized under 501 (c)(4), (c)(5), and (c)(6)—may engage in both lobbying activity and electioneering activity and retain their tax-exempt status. Official IRS publications explicitly state:

---

[1] *Citizens United v. FEC: Corporate Political Speech*, 124 HARV. L. REV. 75 (2010). See, Tillman Act of 1907, Pub. L. No. 59-36, 34 Stat. 864 (codified as amended at 2 U.S.C. §441b (2006)); Taft-Hartley Act of 1947, Pub. L. No. 80-101, sec. 304, §313, 61 Stat. 136, 159. The relevant section of Taft-Hartley was repealed and replaced by the Federal Election Campaign Act Amendments of 1976, but the ban was retained. Pub. L. No. 94-283, sec. 112, §321, 90 Stat. 475, 490 (codified as amended at 2 U.S.C. §441b).

"Organizations described in IRC 501(c)(4), (c)(5), and (c)(6) may engage in an unlimited amount of lobbying, provided that the lobbying is related to the organization's exempt purpose."[2]

"IRC 501(c)(4), (c)(5), and (c)(6) organizations may engage in political campaigns on behalf of or in opposition to candidates for public office provided that such intervention does not constitute the organization's primary activity."[3]

IRS official publications establish that:

"Dues or contributions to IRC 501(c)(4), (c)(5), and (c)(6) organizations may be deductible as business expenses under IRC 162. ... Amounts paid for intervention or participation in any political campaign may not be deducted as a business expense. IRC 162(e)(2)(A). . . . Amounts paid for direct legislative lobbying expenses at the federal and state (but not the local) level may not be deducted as a business expense."[4]

IRS publications also establish that under § 527 of the IRC, political organizations, including the Democratic and Republican National Committees, are exempt from federal taxation and of course may advocate for the election of political candidates. Donations to political parties are not generally tax deductible.

Because of a 1954 amendment to the tax code sponsored by Senator Lyndon Baines Johnson, nonprofit corporations operating under § 501(c)(3) are treated very differently. Such organizations may engage in "insubstantial" lobbying activity. Certain (c)(3) organizations are allowed to make an election under § 501(h), which provides a sliding scale of permissible lobbying that ranges from 5% to 20% of an organization's revenue with an upper limit of $1 million. Churches are precluded from making such an election but are permitted to lobby under the broad language of "insubstantial activity." Thus, tax-deductible contributions may be used for "insubstantial" lobbying by all (c)(3) organizations.

---

[2] Political Campaign and Lobbying Activities of IRC 501(c)(4), (c)(5), and (c)(6) Organizations. https://www.irs.gov/pub/irs-tege/eotopicl03.pdf , p. L-2.
[3] *Id.*
[4] *Id.,* p. L-4.

However, (c)(3) organizations are totally prohibited from speaking about candidates. "Yes, the prohibition is absolute."[5] If such an organization spends $10 million feeding the poor and $100 in sending an email to its members that supports a political candidate, the organization itself becomes a taxable entity and deductibility for the entire $10 million is forfeited. Moreover, "Congress also amended IRC 504 to provide that an IRC 501(c)(3) organization that lost its exemption due to violating the prohibition on political campaign activities may not at any time thereafter be treated as an IRC 501(c)(4) organization."[6]

In their previous Motion to Dismiss, relying chiefly on *Regan v. Taxation with Representation of Washington,* 461 U.S. 540 (1983) (hereinafter referred to as *Taxation*), Defendants asserted the constitutionality of the Johnson Amendment principally upon the theory that the government is not obligated to subsidize political speech about candidates. However, even assuming Defendants' interpretation of *Taxation* is correct, in that case the Court explicitly acknowledged that the government may not discriminate in its provision of subsidies. The Johnson Amendment, as written, discriminates by banning political speech by (c)3s while permitting other nonprofit organizations to participate in such speech while retaining their exempt status. "The case would be different if Congress were to discriminate invidiously in its subsidies." *Taxation,* 461 U.S. at 548.

This discrimination in the IRC's provision of subsidies is manifested in two ways. First, because the *Taxation* Court treated both tax exemptions and tax-deductibility as "subsidies," organizations formed under (c)(4), (c)(5), (c)(6) and § 527 are "subsidized" by Congress even though they may support or oppose candidates because the organizations themselves are tax-

---

[5] Election Year Issues, (IRS publication) https://www.irs.gov/pub/irs-tege/eotopici02.pdf p. 352.
[6] *Id.* at p. 338.

exempt. *Taxation*, 461 U.S. at 544 ("Both tax exemptions and tax-deductibility are a form of subsidy that is administered through the tax system.").

Second, the IRC also subsidizes these 501 (c)(4), (5), and (6) organizations by allowing them to receive tax-deductible dues, simply requiring an allocation so that the portion of dues attributable to lobbying or electioneering may not be deducted. But for (c)(3) organizations, there is no opportunity for such an allocation. If a (c)(3) organization spends any money whatsoever for candidate speech, then not only does the organization lose its exempt status, but 100% of its donations are no longer deductible.

Plaintiffs do not contend that the First Amendment requires the government to subsidize political speech by making donations for that purpose tax-deductible. If Congress chose to write § 501 (c)(3) in a manner that paralleled the allocation rules applicable to (c)(4), (c)(5), and (c)(6) organizations, there would be no constitutional violation. This case challenges the rule that (c)(3) organizations lose both their exempt status and deductibility for all donations if they spend even a *de minimis* amount supporting or opposing a political candidate. If Plaintiffs prevail, § 501(c)(3) can be revised to provide such an allocation rule if Congress so desires. But the First Amendment prohibits the current law from imposing draconian punishments—utterly disproportionate to the government's stated goal—upon clearly protected speech by one category of speaker while allowing it for others.

Moreover, the Johnson Amendment offends the longstanding rule that government may not condition receipt of a benefit upon forfeiture of a constitutional right. Plaintiffs' argument parallels exactly the concurring opinion of Justice Douglas in *Cammarano v. United States*, 358 U.S. 498, 515 (1959) . In that case, an Arkansas beer distributor challenged the IRS ruling that his donations to a ballot initiative were not deductible as business expenses. His donations were

aimed at defeating an initiative that would have decimated his business by requiring all beer in the state to be sold in government liquor stores. His right to deduct such amounts as business expenses was denied by the Court. However, Justice Douglas posited a slightly different case. "If Congress had gone so far as to deny all deductions for 'ordinary and necessary business expenses' if a taxpayer spent money to promote or oppose initiative measures, then it would be placing a penalty on the exercise of First Amendment rights." *Id.*

If a (c)(3) organization engages in any political speech whatsoever, the Johnson Amendment denies tax deductibility for all donations, not just amounts used for political speech. This punishment is accompanied by a loss of the organization's exempt status. The Johnson Amendment clearly imposes a unique penalty upon the exercise of First Amendment rights by one type of organization and is, thus, unconstitutional on its face.

## II.    Statement of the Issues

Consistent with Local Rule CV-7(1), Plaintiffs make the following statement of the issues for the purpose of this Motion for Partial Summary Judgment:

1. Have Plaintiffs satisfied the elements for Article III standing, and particularly the elements for "an injury in fact"?

2. Are Plaintiffs' claims barred by either the Declaratory Judgment Act or the Anti-Tax Injunction Act?

3. Is sovereign immunity applicable to the claims raised by Plaintiffs?

4. Are there disputed issues of material fact that preclude the entry of an Order for Partial Summary Judgment?

5. Does § 501(c)(3) violate the First Amendment by imposing a total ban on political speech by one type of nonprofit organization?

### III.    Statement of Facts

It is indisputable that the Plaintiffs are organized under §501(c)(3) of the Internal Revenue Code. Complaint ¶ ¶ 28. 29. 30, 31. Plaintiffs desire to discuss political candidates and their fidelity to Plaintiffs' interests and values (¶ 41). None of the Plaintiffs have violated the Johnson Amendment but instead have engaged in self-censorship of speech they would otherwise transmit (¶36). The verified Complaint also establishes actions Plaintiffs would undertake if the Johnson Amendment was declared unconstitutional:

Facts relative to all Plaintiffs: (1) Plaintiffs would identify a narrow range of issues concerning religious freedom, freedom of speech and the press, and morality. (2) Plaintiffs would make known to their audiences their views on each of these issues; (3) Plaintiffs would compare the views of candidates to their own views; (4) Plaintiffs would urge their audiences to vote and to do so in support of the candidates whose views best align with the values of the organization; (5) and all of this would be done in close proximity to the relevant elections.  (Complaint ¶¶ 37-40).

Additional facts re NRB: (1) NRB would publish the views of all federal candidates on its identified issues, which would include broadcasting issues. (2) NRB would invite candidates for federal office whose views align with those of NRB to its annual convention. Such an alignment would be announced to the audience. (Complaint ¶ 37.)

Additional facts re Sand Springs Church and First Baptist Church Waskom: Candidates whose views align with those of the church would be invited to appear during regular Sunday morning services in close proximity to the election. (Complaint ¶¶ 38-39).

Additional facts re Intercessors for America: (1) IFA would continue its long-standing practice of publishing candidate voting guides relative to presidential elections. (2) Unlike prior

6

voting guides, IFA would make its own position clear on each of the identified issues. (3). IFA would urge its readers to vote in accordance with the positions IFA takes. (Complaint ¶ 40).

### IV.    Plaintiffs have Standing to Raise this Challenge

In cases such as this one, where the plaintiffs bring a pre-enforcement challenge to a law, they satisfy the injury-in-fact requirement by demonstrating (1) an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) that their intended future conduct is arguably proscribed by the challenged law, and (3) that the threat of future enforcement of the challenged law is substantial. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-64 (2014)).

The reason that "chilled speech" claims have special and incredibly lenient standards for evaluating standing is because when speech is chilled, the constitutional injury has already occurred, and in most cases, including this one, "the harm from these injuries is ongoing." *Daily Wire, LLC v. United States Dep't of State*, 733 F. Supp. 3d 566, 583 (E.D. Tex. 2024). "In pre-enforcement cases alleging a violation of the First Amendment's Free Speech Clause, the Supreme Court has recognized that chilled speech or self-censorship is an injury sufficient to confer standing." *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir. 2021) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486-87 (1965); *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988)). See also, *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 390–93 (5th Cir. 2024).

In short, "[i]t is not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech." *Speech First*, 979 F.3d at 331. The Fifth Circuit has repeatedly held, in the pre-enforcement context, that "chilling a

plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Id.*
at 330-31 (quoting *Houston Chronicle v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007).

### A. Plaintiffs Intend to Engage in Protected Conduct.

The Complaint establishes that Plaintiffs seek to engage in political speech about
candidates. "Because petitioners' intended future conduct concerns political speech, it is certainly
affected with a constitutional interest…. The constitutional guarantee has its fullest and most
urgent application precisely to the conduct of campaigns for political office." *Susan B. Anthony
List v. Driehaus*, 573 U.S. 149, 162 (2014).

### B. Plaintiffs' Intended Speech is Proscribed by the Challenged Law.

The actions that Plaintiffs would take but for the Johnson Amendment clearly violate the
IRS's interpretation of § 501(c)(3). Rev, Rul. 78-248, 1978-1 C.B. 154. This publication makes it
plain that when an organization presents the views of candidates in a way that reveals the "bias"
of the organization, the law has been violated. The IRS has also published its "Tax Guide for
Churches & Religious Organizations" (Publication 1828).[7] It interprets the law as follows:

> [V]oter education or registration activities with evidence of bias that: (a) would favor one
> candidate over another; (b) oppose a candidate in some manner; or (c) have the effect of
> favoring a candidate or group of candidates, will constitute prohibited participation or
> intervention.

> Church S, a Section 501(c)(3) organization, distributes a voter guide during an election
> campaign. The voter guide is prepared using the responses of candidates to a
> questionnaire sent to candidates for major public offices. Although the questionnaire
> covers a wide range of topics, the wording of the questions evidences a bias on certain
> issues. By using a questionnaire structured in this way, Church S is participating or
> intervening in a political campaign.

---

[7] https://www.irs.gov/pub/irs-pdf/p1828.pdf

Publication 1828 makes it clear that failing to treat all candidates equally in public appearances violates the law. (*Id.* at 15). Any indication that a church would be inclined to support or oppose a candidate is evidence of a violation. *Id*. Even a nonprofit organization's communications about *issues* may constitute improper campaigning, subject to the following factors: whether the statement identifies one or more candidates for a given public office, expresses approval or disapproval for one or more candidates' positions or actions, is delivered close in time to the election, makes reference to voting or an election, and addresses an issue that has been raised as an issue distinguishing candidates for a given office. Pub. 1842, p. 13. According to the IRS's stated interpretation, it is clear that Plaintiffs' intended activities are proscribed by the Johnson Amendment.

### C. Plaintiffs are Subject to a Substantial Threat of Future Enforcement of the Challenged Law.

In this case, the threat of enforcement of the Johnson Amendment against Plaintiffs must be assumed. *See Barilla,* 14 F.4th at 433 ("Because Barilla brings a pre-enforcement freedom-of-expression challenge to the Busking Ordinances, we may assume a substantial threat of future enforcement absent compelling contrary evidence, provided that the Busking Ordinances are not moribund."); *Speech First,* 970 F.3d at 336-37 ("Where the policy remains non-moribund, the claim is that the policy causes self-censorship among those who are subject to it, and the students' speech is arguably regulated by the policy, there is standing."). Defendants do not contend that the Johnson Amendment is moribund. A threat of future enforcement is assumed.

There can be no doubt that Plaintiffs' planned actions would constitute multiple violations of the Johnson Amendment, putting their tax-exempt status in jeopardy. In their prior Motion to Dismiss, Defendants claimed that Plaintiffs' plans to violate the Johnson Amendment do not result in Plaintiffs having standing because, according to the Defendants' interpretation of

the *Taxation* case, Plaintiffs have no constitutional right to tax-exempt status, and thus they have no standing to complain about its loss. This argument is nothing more than a merits argument in the guise of a challenge to Plaintiffs' standing.  This is improper. "When considering the question of Article III standing, a federal court must assume the merits of the plaintiff's legal claim." *Daily Wire*, 733 F.Supp.3d at 576. Moreover, the plaintiffs in *Taxation* had standing despite their failure on the merits.

Plaintiffs have demonstrated an injury-in-fact sufficient to sustain standing: a real and substantial chilling effect on constitutionally protected speech. The remaining two standing requirements are easily met in this case and were not challenged by Defendants in their prior Motion. The injury is traceable to Defendants and would be redressed by a favorable decision of the Court. Plaintiffs' Complaint clearly alleges facts demonstrating all elements of standing.

### V.   Neither the Declaratory Judgment Act nor the Anti-Injunction Act Apply here

In their prior Motion to Dismiss, Defendants asked this Court to dismiss this case for lack of subject matter jurisdiction because of the Declaratory Judgment Act, which precludes suits "with respect to Federal Taxes." 28 U.S.C. §2201(a)(DJA). In that Motion, Defendants effectively conceded that this case is not barred by the Anti-Injunction Act 26 U.S.C. § 7421(a) (AIA). We will demonstrate that neither Act is a barrier to consideration of the merits.

Without citing any cases, Defendants admitted that "several circuits have determined that the AIA and DJA are 'coterminous' or 'coextensive.'" Brief at 28.  Some of the leading cases reaching this conclusion are  *Cohen v. United States*, 650 F.3d 717, 722 (D.C. Cir. 2011); *Z St. v. Koskinen*, 791 F.3d 24, 26 (D.C. Cir. 2015); and *Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1115 (10th Cir. 2017). Plaintiffs have been unable to find a single case from any circuit that reaches a contrary conclusion.

This Court should decline Defendants' invitation to embark on a new path based on the contention that this question of law is unsettled in the Fifth Circuit. The exact statement by the Fifth Circuit is "[w]e thus assume without deciding that the two statutes are coterminous and limit our discussion to the AIA. See, e.g., *Cohen v. United States*, 650 F.3d 717, 727–31 (D.C. Cir 2011)." *Matter of Westmoreland Coal Co.,* 968 F.3d 526, 533 (5th Cir. 2020). Moreover, the Fifth Circuit's discussion of the two Acts in *Rivero v. Fid. Invs., Inc*., 1 F.4th 340, 345 (5th Cir. 2021) treated the two statutes as imposing equivalent standards without expressly declaring them to be coterminous. Thus, in the two principal cases relied on by Defendants, the Fifth Circuit treated the AIA and the DJA equivalently. Moreover, in *Rivero* the Fifth Circuit cited with approval the *Cohen* decision from the D.C. Circuit, which adopted the rule of equivalency.

Since every circuit decision known to Defendants has decided the question against their *present* position, and since this Circuit has followed the path established in the other circuits, this Court should reject Defendants' request to chart a new and novel path. Plaintiffs proceed on the basis that AIA and DJA are coterminous.

The Anti-Injunction Act does not bar a lawsuit "where the plaintiff has no alternative means to challenge the IRS's action." *Z St. v. Koskinen*, 791 F.3d 24, 30 (D.C. Cir. 2015) citing *South Carolina v. Regan*, 465 U.S. 367 (1984). This is true here.

There is no other way that these Plaintiffs or any nonprofit organization can litigate the constitutionality of the Johnson Amendment without first violating the law and then waiting for the IRS to decide whether to take enforcement action. Requiring this would run counter to a bedrock rule of constitutional law. "As the Supreme Court has stressed time and again, '[n]othing in [its] decisions requires a plaintiff who wishes to challenge the constitutionality of a law to

11

confess that he will in fact violate that law.'" *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 217 (5th Cir. 2023) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163 (2014)).

Since Plaintiffs have not violated the Johnson Amendment, it cannot be argued that they have violated the conditions of their exemption and thus taxes are due and owing. See *Alexander v. Americans United Inc*., 416 U.S. 752, 759 (1974). This case is not about taxes that have been assessed, rather, it is about Plaintiffs' ability to exercise their First Amendment rights. Thus, the AIA is wholly inapplicable to this case.

The approach of this lawsuit is the only method available to nonprofits to challenge the constitutionality of the Johnson Amendment without first violating it. Thus, under *Z. St. v. Koskinen* and *South Carolina v. Regan* the AIA does not bar this lawsuit. And since the DJA is coterminous with the AIA, the same result follows.

### VI.    Sovereign Immunity Poses no Bar to this Case

Plaintiffs' Complaint relies on 5 U.S.C. § 702, the Administrative Procedures Act, which contains a general waiver of sovereign immunity for cases seeking equitable relief. "Congress intended to waive immunity for non-statutory causes of action against federal agencies arising under 28 U.S.C. § 1331." *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 488 (5th Cir. 2014). This Court has recently described in detail the requirements from this statute. *Alabama-Coushatta Tribe. Shields of Strength v. U.S. Dep't of Def*., 735 F. Supp. 3d 755, 764-66 (E.D. Tex. 2024):

> The statute requires plaintiff to show that he: (1) seeks relief other than money damages; and (2) has stated a claim that an agency or officer has acted under color of law. However in *Alabama-Coushatta Tribe*, the Fifth Circuit added two additional requirements: (1) Plaintiffs must show that they have "suffered a legal wrong" or are "adversely affected" by the agency's action. (2) Plaintiffs must show that the agency's action is "final." The finality requirement only arises for cases brought directly under the APA—which is not the case here.  This was made clear by the Fifth Circuit subsequent to this Court's ruling in *Shields of Strength.* Citing *Alabama-Coushatta, supra* at 489*,* the court held: ""[W]hen

12

a plaintiff seeks review of agency action pursuant to a "non-statutory cause of action that arises completely apart from the general provisions of the APA," "[t]here is no requirement of 'finality.' " *Texas v. United States Dep't of Homeland Sec.,* 123 F.4th 186, 199 (fn. 9)(5th Cir. 2024).

Plaintiffs' claims are not for monetary damages, rather, they seek declaratory and injunctive relief from an unconstitutional statute. Waiver is clear.

Moreover, an independent line of cases establishes that sovereign immunity is inapplicable in constitutional cases like this one. The U.S. Supreme Court has held that there are two primary exceptions to sovereign immunity: "(1) action by officers beyond their statutory powers and (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void." *Dugan v. Rank*, 372 U.S. 609, 621-622 (1963) (relying upon *Larson v. Domestic Foreign Corp*., 337 U.S. 682, 701-702 (1949)). See also, *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011) ("we assume for the sake of analysis that the *Larson* exception to sovereign immunity may still apply in certain cases after the 1976 amendments to the Administrative Procedure Act….")

In the case at bar, Plaintiffs' Free Speech claims satisfy the second *Dugan* exception. In this Motion, Plaintiffs are challenging the constitutionality of the Johnson Amendment on its face.  In *Gardner*, the Fifth Circuit held that Plaintiff's claims were barred because he did "not challenge the constitutionality of the statute." *Gardner*, 391 F.2d at 888.  Sovereign immunity does not bar claims that a law of Congress is unconstitutional by virtue of both the general APA waiver and the Supreme Court's holdings in both *Larson* and *Dugan*.

### VII.    There are no Disputed Facts Relative to this Motion

FRCP 56 provides, in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." It does not matter that Defendants have not yet answered. "[A]n

13

answer is not a prerequisite to the consideration of a motion for summary judgment." *HS Res., Inc. v. Wingate,* 327 F.3d 432, 440 (5th Cir. 2003).

This is a Motion for Partial Summary Judgment limited to consideration of Plaintiffs' facial challenge to the Johnson Amendment. All other issues may require consideration of factual matters that may well be contested—especially consideration of the claims that the IRS enforces the Johnson Amendment in a discriminatory manner.

The only facts needed for consideration of this Motion relate to the question of standing. Plaintiffs' status as (c)(3) organizations is uncontestable.  The only other facts needed to establish standing are the stated desires of each organization *vis-à-vis* their respective planned activities if the Johnson Amendment is declared to be unconstitutional. It is doubtful in the extreme that Defendants will contest the factual legitimacy of Plaintiffs' desires. This is not to say that Defendants will concede that such statements are legally adequate to establish standing. But the contest, if any, will be about the legal adequacy of the facts, not truthfulness.

### VIII.   The Johnson Amendment, on its Face, Violates the First Amendment

> It cannot be gainsaid that a discriminatory denial of a tax exemption for engaging in speech is a limitation on free speech…. To deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for such speech.

*Speiser v. Randall*, 357 U.S. 513, 518 (1958).

### Facial Challenge vs. As-Applied

This Motion challenges the constitutionality of a particular aspect of the Johnson Amendment as written. Plaintiffs contend that it is a violation of the Free Speech Clause to deny both tax exempt status and tax-deductibility of all contributions if an organization speaks in support or opposition of a political candidate. Plaintiffs do not claim that there are unique facts

14

concerning themselves that are pertinent to the resolution of this issue. Rather, Plaintiffs argue that all nonprofits have the same constitutional right.

Plaintiffs do not claim that every aspect of § 501(c)(3) is unconstitutional. Plaintiffs do not challenge the aspect of the Johnson Amendment that prohibits giving money directly to candidates. After all, even after the Supreme Court's decision in *Citizens United,* it remains illegal under Federal Election law for corporations to make direct donations to political candidates. This case raises a narrow challenge to one aspect of the law as written. The question arises as to whether this is a facial or as-applied challenge.

The Supreme Court recently held that a facial challenge brought under the First Amendment must demonstrate that "a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep" and "the law's unconstitutional applications substantially outweigh its constitutional ones." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024).  Yet, in *Citizens United*, the Court said that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." 558 U.S. at 331. In *Citizens United,* the Court concluded that narrow challenge to one aspect of the election law was a facial in nature because the essence of the challenge was to the law as written.

Unlike the challenge in *NetChoice*, Plaintiffs do not seek a declaration that the entire statute in invalid. Rather, like the challenge in *Citizens United*, Plaintiffs raise a targeted challenge to one aspect of the law as written. Thus, even if the standard of *NetChoice* applies, the proper question is whether there are valid applications of Johnson Amendment in the context being challenged here. There are no circumstances which can justify a prohibition against any

(c)(3) organization's right to use its own normal means of communication to support or oppose candidates.  The *NetChoice* standard is met. There is no valid application of the rule in question.

### *Taxation* Poses no Barrier in this Case

The central argument raised by Defendants in their prior Motion to Dismiss was that tax exemptions and deductibility for donations were subsidies, and that there is no constitutional violation in denying a subsidy for political speech. Defendants chiefly rely on *Taxation*.

Our analysis of *Taxation* begins with the factual and statutory context. In *Taxation*, the plaintiff was a 501(c)(3) organization that desired to engage in unlimited lobbying while retaining both its exempt status and its ability to receive and expend tax-deductible contributions for such activities. Internal Revenue Code § 501(c)(3) contains separate rules regarding lobbying and political speech. Lobbying is permissible, but only in an insubstantial amount. Current law allows a (c)(3) organization to measure its adherence to the lobbying rules either by the "expenditure test" or the "no substantial part test."[8] The expenditure test is governed by § 501(h), which permits (c)(3) organizations to spend 20% of their first $500,000 of revenue on lobbying, with a sliding scale beyond that number. This section caps lobbying expenses at a maximum of $1,000,000.[9] The "no substantial part test" is amorphous. The IRS says: "A 501(c)(3) organization may engage in some lobbying, but too much lobbying activity risks loss of tax-exempt status."[10]

Since the organization in *Taxation* had (c)(3) and (c)(4) divisions, the ability to lobby in an unlimited amount by a tax-exempt organization was not at issue. The sole claim was the right

---

[8] Congressional Research Service, *Tax-Exempt Organizations Under Internal Revenue Code Section 501(c): Political Activity Restrictions,*
p.4. *https://crsreports.congress.gov/product/pdf/RL/RL33377#:~:text=The%20organizational%20definition%20in%20%20%C2%A7,not%20intervene%20in%20political%20campaigns*
[9] *Id.* at 5.
[10] IRS Website: Lobbying *https://www.irs.gov/charities-non-profits/lobbying*

to receive an unlimited amount of tax-deductible contributions to pay for lobbying. Plaintiffs make no parallel claim here. They readily concede that Congress has usually denied the use of tax-deductible funds for candidate speech. Plaintiffs concede that (c)(3) could be written in a constitutional fashion and prohibit the use of tax-deductible funds for candidate speech in the (c)(3) context as well. However, Plaintiffs make a quite different claim relative to the use of tax-deductible funds for other purposes. Plaintiffs contend that the First Amendment is violated when all use of tax-deductible funds are denied to (c)(3)s for any purpose, if they spend even a minimal amount supporting a candidate. Nothing in *Taxation* purports to govern such a case.

There are four reasons—any one of which is sufficient—that this Court should not extend the rule in *Taxation* to the facial challenge to the Johnson Amendment on Free Speech grounds.

(1) Political speech about candidates is at the apex of First Amendment protection and merits even higher protection than the right to lobby.

(2) *Taxation* addressed a limitation, not a ban on protected speech. The Johnson Amendment imposes a total ban on political speech.

(3) *Citizens United* has changed the legal landscape. It is unconstitutional to condition the right to speak about candidates on the corporate structure of an organization.

(4) The "unconstitutional conditions" doctrine forbids government from imposing a total ban on protected speech as a condition of obtaining a tax exemption.

### A. Speech about Candidates is at the Apex of Protected Speech

While lobbying activity addressed in *Taxation* certainly falls within the ambit of free speech protections, speech about political issues and candidates has been consistently viewed as deserving the highest level of constitutional protection. *Citizens United* highlighted the essential

and lofty nature of the rights in question, calling political speech about candidates "central to the meaning and purpose of the First Amendment." *Citizens United*, *supra,* 558 U.S. at 329.

> Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people. (In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential). The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it. The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office. … For these reasons, political speech must prevail against laws that would suppress it, whether by design or inadvertence. Laws that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.

*Id.* at 339-40. (Cleaned up).

"Deliberation on the positions and qualifications of candidates is integral to our system of government…." *Arkansas Ed. Television Comm'n v. Forbes*, 523 U.S. at 676. "The First Amendment has its fullest and most urgent application precisely to the conduct of campaigns for political office*." Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 302 (2022)*.* Accordingly, this Court should decline to extend a decision that merely limited, but did not ban, "subsidized" speech in the context of lobbying, to a case involving a total ban on the highly protected right to engage in speech about candidates.

### B. This is a Total Ban on Protected Speech

The Supreme Court itself considered it important to emphasize that *Taxation* only addressed a partial ban on lobbying, not an absolute prohibition. *See, Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 215 (2013). ("In rejecting the nonprofit's First Amendment claim, the Court highlighted—in the text of its opinion… —the fact that the condition did not prohibit that organization from lobbying Congress altogether.") Thus, the distinction between a *limitation* versus a *ban* should be given great consideration here.

18

Defendants' prior Motion in this case consistently claimed that plaintiffs are not "banned" from speaking about candidates. This is neither true factually, nor is it constitutionally determinative, since laws that do not ban speech outright can still violate the First Amendment.[11] Plaintiffs are juridical persons that exist as 501(c)(3) corporations; and in the IRS's own words concerning the rule that prohibits speech supporting or opposing candidates by such groups, "[y]es, the prohibition is absolute."[12] Defendants do not dispute this as it pertains to (c)(3) organizations themselves. Rather, they argue that the human beings involved with these organizations could speak about candidates either in their individual capacity or by forming other juridical persons such as a (c)(4) corporation or even a for-profit corporation.  This approach totally ignores the plain truth that 501(c)(3) organizations themselves have free speech rights. This case is not brought in the name of the human beings who run the Plaintiff-organizations.

*Citizens United* rejected the argument that there was no burden on the speech of the plaintiffs because the nonprofit and for-profit corporations could form PACs or other kinds of juridical persons as an alternate means of delivering their desired messages. "PACs, furthermore, must exist before they can speak. Given the onerous restrictions, a corporation may not be able to establish a PAC in time to make its views known regarding candidates and issues in a current campaign." *Citizens United* at 339. Thus, *Citizen United* forecloses the argument that one kind of juridical person can be denied the right to speak about candidates on the basis that it is theoretically possible to form a different kind of entity.

 The Johnson Amendment also unconstitutionally prohibits speech based upon its content. If a pastor from the pulpit merely lists the candidates running for a specific seat, such speech

---

[11] The correct legal standard is "Laws that **burden** political speech are subject to strict scrutiny." *Citizens United*, *supra* at 329. (Emphasis added).
[12] Election Year Issues, (IRS publication) https://www.irs.gov/pub/irs-tege/eotopici02.pdf p. 338.

would likely not run afoul of the Johnson Amendment. However, if that same pastor from the pulpit lists those same candidates and explains to his congregation which candidates support policy positions in line with the church's views, such speech would violate the Johnson Amendment. Such determinations based upon the content of speech plainly violate the First Amendment. The Supreme Court held: "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). "Statutes suppressing or restricting speech must be judged by the sometimes inconvenient principles of the First Amendment." *United States v. Alvarez*, 567 U.S. 709, 715, (2012).

Because the Johnson Amendment prohibits speech by (c)(3) non-profits based upon the content of their speech, it cannot survive a First Amendment challenge.

Moreover, particularly as it pertains to churches, the suggestion that Plaintiffs could form (c)(4) organizations is utterly unworkable. Section (c)(4) organizations do not offer a way to communicate in the regular and normal course of the life of the church. Churches meet in person and have no other means of communication nearly so effective in reaching people. The Johnson Amendment prohibits the use of the church building for communicating election information, and the church's weekly services are likewise off limits for (c)(4) activity. There is no way for a (c)(4) to participate in a realistic fashion during a church service.

The Democratic Party certainly has recognized the irreplaceable nature of church worship services for getting out its messages about candidates. The fact that both sitting presidents and the Democratic nominees for President routinely campaign in church worship services, as

demonstrated by the Complaint, proves that only the Sunday morning worship service can suffice to deliver a church's views about candidates.

*Taxation* should not be extended from a situation involving a *limitation* on lobbying to justify a *total ban* on candidate speech.

### C. *Citizens United* has Changed the Legal Landscape

At the time of its enactment, the Johnson Amendment was consistent with the general approach of Congress regarding corporate political activity.

> For more than one hundred years, Congress has prevented corporations from donating directly to candidates in federal elections. Throughout the twentieth century, legislators and presidents from both sides of the aisle made the ban more robust. More than sixty years ago, the political branches banned campaign expenditures made by corporations and labor unions out of their general treasuries.

*Citizens United v. FEC: Corporate Political Speech*, 124 Harv. L. Rev. 75 (2010).

Thus, at the time that *Taxation* was decided in 1983, there was a general statutory ban on candidate-related spending by all corporations—for-profit and nonprofit alike. This rule was given additional clarity by the Bipartisan Campaign Reform Act of 2002, which prohibited "corporations and unions from using general treasury funds to make direct contributions to candidates or independent expenditures that expressly advocate the election or defeat of a candidate, through any form of media…." *Citizens United,* 558 U.S. at 320.

While direct corporate contributions to candidates are still banned by federal law, the Supreme Court's decision in *Citizens United* ruled the law unconstitutional in the context of independent campaign expenditures by corporations, both for-profit and non-profit, and by unions. *Id.* Corporations can no longer be prohibited from spending their own money to speak out about political candidates.

The central holding of *Citizens United* controls this case. "Government may not suppress political speech on the basis of the speaker's corporate identity. No sufficient governmental interest justifies limits on the political speech of nonprofit or for-profit corporations." 558 U.S. at 365.  The Court held that the federal election law that banned corporate speech had the "purpose and effect … to silence entities whose voices the Government deems to be suspect." *Id.* at 339. The same is true here. The history of the enactment of the Johnson Amendment leaves no doubt that it rose out of the same desire to silence voices that one powerful senator felt to be dangerous to his political fortunes.[13] *Citizens United* condemns such efforts.

> Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints. … Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others. As instruments to censor, these categories are interrelated: Speech restrictions based on the identity of the speaker are all too often simply a means to control content.

*Id.* at 340.

> Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each.

*Id.* at 341.

---

[13] Patrick O'Daniel, *More Honored in the Breach: A Historical Perspective of the Permeable IRS Prohibition on Campaigning by Churches*, 42 B.C. L.Rev. 733, 740-768 (2001); Erik W. Stanley, *LBJ, the IRS, and Churches: The Unconstitutionality of the Johnson Amendment in Light of Recent Supreme Court Precedent*, 24 Regent U. L. Rev. 237, 246-247 (2012); Nina J. Crim and Laurence H. Winer, *Politics, Taxes, and the Pulpit*, Oxford University Press, New York (2011) pp. 110-116.

The Court concluded this aspect of its discussion saying "We find no basis for the proposition that, in the context of political speech, the Government may impose restrictions on certain disfavored speakers. Both history and logic lead us to this conclusion." *Id.* at 341.

Defendants ask this Court to accept the proposition that although the Federal Election Commission (and related law) cannot ban political speech by nonprofit entities, the Internal Revenue Service (and the IRC) can do so with impunity. A detailed review of the Court's discussion in *Citizens United* makes it impossible to justify such a conclusion. Both the FEC and the IRS are subject to the same First Amendment.

The best way to illustrate the illogic of the IRS position is to examine the question: Could *Citizens United* be reversed by simply moving the ban on campaign speech to the tax code? By virtue of their exempt status, (c)(3) and (c)(4)-(6) organizations all receive a federal tax "subsidy." *Taxation, supra* at 544. According to Defendants' reading of *Taxation,* Congress could effectively reverse the holding of *Citizens United* by simply moving the ban on candidate speech by (c)(4)(5) and (6) organizations from the Federal Election Code to the IRC. If this is permissible, it also stands to reason that Congress could also apply this rule to for-profit corporations. The Tax Code could be amended to condition eligibility for any tax deduction (for ordinary business expenses or capital depreciation) upon the forfeiture of the right to use corporate dollars to speak about candidates.

As noted earlier, this is the exact scenario condemned by Justice Douglas in *Cammarano v. United States*, 358 U.S. 498, 515, (1959) (Douglas concurring). "If Congress had gone so far as to deny all deductions for 'ordinary and necessary business expenses' if a taxpayer spent money to promote or oppose initiative measures, then it would be placing a penalty on the exercise of First Amendment rights." Yet, Defendants contend that (c)(3) corporations cannot

receive tax-deductible donations for any purpose if they spend one dollar to speak out about candidates. No rational person believes that Congress could get away with making an end run around *Citizens United* by using tax law instead of election law.

The First Amendment would not be violated if Congress wrote an apportionment rule into subsection (c)(3) like it has for subsections (c)(4)(5) and (6). Not allowing deductibility for **only** those amounts spent to speak about candidates would be within the discretion of Congress. But, when an entity loses *all* tax benefits when it uses *any* money to promote a candidate, the First Amendment has been clearly violated. The ban on political speech by (c)(3) organizations is the last vestige of an era of repression that cannot stand in light of *Citizens United.* It is an outdated relic in our law that can no longer be justified.

### D. The Long-Established Rule that Government Cannot Condition Privileges on the Forfeiture of Constitutional Rights should Control

In *Trinity Lutheran*, the Supreme Court relied upon a time-honored rule.

> As the Court put it more than 50 years ago, "[i]t is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." *Sherbert* [*v. Verner*]*, 374 U.S. [398], 404 [(1963)].

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 463 (2017).

*Trinity Lutheran* involved a constitutional challenge to a Missouri law that prohibited churches from participating in a state program that reimbursed pre-schools for installing playground safety features. The Court described the kind of choice forced upon the church, which is clearly akin to the choice the Johnson Amendment forces on the Plaintiffs:

> It may participate in an otherwise available benefit program or remain a religious institution. Of course, Trinity Lutheran is free to continue operating as a church, just as McDaniel was free to continue being a minister. But that freedom comes at the cost of automatic and absolute exclusion from the benefits of a public program for which the Center is otherwise fully qualified. And when the State conditions a benefit in this way, *McDaniel* [*v. Paty*] says plainly that the State has punished the free exercise of religion:

> "To condition the availability of benefits ... upon [a recipient's] willingness to ... surrender[ ] his religiously impelled [status] effectively penalizes the free exercise of his constitutional liberties." 435 U.S., at 626 (plurality opinion) (alterations omitted).

*Trinity Lutheran,* 582 U.S. at 462. See also *Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996) (cleaned up) ("Our modern 'unconstitutional conditions' doctrine holds that the government may not deny a benefit to a person on a basis that infringes his constitutionally protected ... freedom of speech even if he has no entitlement to that benefit."). Another full statement of this rule was found in the even earlier decision of *Perry v. Sindermann,* 408 U.S. 593, 597 (1972):

> For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited.

The Fifth Circuit followed this rule in *Planned Parenthood Ass'n of Hidalgo Cnty. Texas, Inc. v. Suehs*, 692 F.3d 343, 348–49 (5th Cir. 2012). ("[T]he unconstitutional conditions doctrine, acknowledges that the government, having no obligation to furnish a benefit, nevertheless cannot force a citizen to choose between a benefit and free speech.")

So even if Defendants are correct in applying dicta from *Taxation* to categorize all tax exemptions and deductions as "subsidies," it would not save the Johnson Amendment from this facial challenge because the Johnson Amendment conditions these "subsidies" on complete forfeiture of a constitutional right of the highest order.

Any court should be reluctant to expand upon the "subsidy" dicta in *Taxation* since the idea that tax exemptions are subsidies is inconsistent with the Supreme Court's decision in *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664, 690–91 (1970):

25

General subsidies of religious activities would, of course, constitute impermissible state involvement with religion.

Tax exemptions and general subsidies, however, are qualitatively different. Though both provide economic assistance, they do so in fundamentally different ways. A subsidy involves the direct transfer of public monies to the subsidized enterprise and uses resources exacted from taxpayers as a whole. An exemption, on the other hand, involves no such transfer. It assists the exempted enterprise only passively, by relieving a privately funded venture of the burden of paying taxes. In other words, in the case of direct subsidy, the state forcibly diverts the income of both believers and nonbelievers to churches, while in the case of an exemption, the state merely refrains from diverting to its own uses income independently generated by the churches through voluntary contributions.

In *Walz,* the fact that churches were involved in political issues did not detract from their rights but bolstered their claims for constitutional protection.  ("Adherents of particular faiths and individual churches frequently take strong positions on public issues…. Of course, churches as much as secular bodies and private citizens have that right." *Id.* at 670.

*Taxation* did not reverse *Walz.* In fact, it cited the earlier case saying: "In stating that exemptions and deductions, on one hand, are like cash subsidies, on the other, we of course do not mean to assert that they are in all respects identical." 461 U.S. at 544 (fn. 5).

Plaintiffs contend that the outcome in *Taxation* may well have been correct, but Defendants' interpretation of its reasoning—that tax exemptions and deductions are subsidies that the government can arbitrarily grant or deny—cannot be sustained in light of *Walz* and the overwhelming body of case law concerning unconstitutional conditions. The *Taxation* Court could have reasonably concluded that a (c)(3) seeking to engage in unlimited lobbying simply does not fit within the definition of a "charitable organization." Groups that engage in substantial lobbying are defined and governed by subsection (c)(4). Engaging in *some* lobbying, however, is not inconsistent with being a charity since this is permissible on the face of the statute.

26

Unlike the plaintiffs in *Taxation* who wanted to engage in unlimited lobbying, the Plaintiffs in this case do not seek to engage in unlimited speech about candidates. For all Plaintiffs such speech would be *de minimus*. Nonprofits that primarily engage in political speech are tax exempt under § 527. The holding in *Taxation* simply cannot be extended to sustain a tax scheme where some nonprofits that primarily promote candidates can be exempt while others can say nothing whatsoever about candidates lest they lose their exemption. *Taxation* itself notes: "The case would be different if Congress were to discriminate invidiously in its subsidies." 461 U.S. at 548.

The general rule is that government cannot condition the acceptance of a subsidy on the forfeiture of constitutional rights. In *Agency for Int'l Development, supra* 570 U.S. at 214-217 the Court reviewed several cases that upheld the rule and others where the rule was found to be inapplicable.

In *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 60 (2006), private colleges challenged a federal funding provision that was conditioned on giving military recruiters equal access to the campus for recruitment. The Court upheld the speech limitation, finding "[b]ecause the First Amendment would not prevent Congress from directly imposing the Solomon Amendment's access requirement, the statute does not place an unconstitutional condition on the receipt of federal funds." *Id.*

On the other hand, the Court struck down a speech limitation in *Legal Services Corporation v. Velazquez*, 531 U.S. 533 (2001). Funding was restricted so that "grantees could not accept representations designed to change welfare laws, much less argue against the constitutionality or statutory validity of those laws." *Id.* at 539. The Court rejected the claim that a subsidy turned Legal Services lawyers into government spokesmen. *Id.* at 542-543.

In *FCC v. League of Women Voters of California,* 468 U.S. 364, 399–401 (1984), "the Court struck down a condition on federal financial assistance to noncommercial broadcast television and radio stations that prohibited all editorializing, including with private funds." Even a station receiving only one percent of its overall budget from the Federal Government, the Court explained, was 'barred absolutely from all editorializing.'" *Agency for Int'l Dev., supra,* 570 U.S. at 215-16.  Like the rule in *FCC,* the Johnson Amendment seeks to control all speech by a nonprofit, reaching far beyond what could even arguably be called a government subsidy.

Two of the cases, *Rust v. Sullivan*, 500 U.S. 173 (1991) and *U.S. v. American Library Ass'n, Inc.*, 539 U.S. 194 (2003) (plurality opinion), involved situations where the federal recipients were simply prohibited from using federal funds for a particular purpose while remaining absolutely free to use any other funds for the desired purpose.

The *FCC* and *Legal Services* rule was held to be controlling in *Agency for Int'l Development.* "The Policy Requirement compels as a condition of federal funding the affirmation of a belief that by its nature cannot be confined within the scope of the Government program. In so doing, it violates the First Amendment and cannot be sustained." 570 U.S. at 221.

This review by the Supreme Court itself concerning its "unconstitutional conditions" doctrine makes it plain that the Johnson Amendment violates the First Amendment. The limitation on speech is not "confined to the scope of the Government program." It is a total ban. Plaintiffs are denied all tax benefits if they spend even a token amount on political speech. The rule vastly exceeds the reason it was put in place.

The Fifth Circuit has recognized the rule we advance. "Government funding provisions can become unconstitutional conditions if they effectively prohibit the recipient from engaging in

the protected conduct outside the scope of the [government] funded program." *Machete Prods.,*

*L.L.C. v. Page*, 809 F.3d 281, 289–90 (5th Cir. 2015).

### E. The Johnson Amendment Clearly Fails Strict Scrutiny

[P]olitical speech must prevail against laws that would suppress it, whether by design or inadvertence. Laws that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.

*Citizens United*, 528 U.S. at 340.

The government cannot pretend to claim that it is pursuing a compelling interest in denying tax-exempt status to organizations that speak about candidates. It grants tax-exempt status to (c)(4)(5) and (6) organizations and to §527 organizations and all of those are free to support or oppose political candidates. Discriminatory laws are never compelling.

The argument boils down to the use of tax deductible funds to support or oppose candidates. The IRC does not permit any type of organization to use tax deductible funds to support candidates. But it allows (c)(4)(5) and (6) organizations to receive tax deductible dollars for all of their other activities and remain tax-exempt despite their political speech. This is how narrow tailoring works. If Congress wants to preclude (c)(3)s from using tax-deductible funds for political speech, it can adopt rules that directly parallel its rules for (c)(4)(5) and (6) organizations. Funds received for exempt purposes may be deducted. Funds received for political speech may not be deducted. There is no compelling interest that justifies the denial of tax-exempt status for (c)(3) organizations while (c)(4)(5) and (6) organizations can engage in such speech as tax-exempt nonprofits.

As to the rule on the use of tax-deductible funds, the denial of a (c)(3)'s right to receive $10 million in tax deductible gifts to feed the poor, merely because it spends $100 sending out an email to support a candidate is a classic failure of narrow tailoring.

29

IRC § 501(c)(3), as written, is blatantly unconstitutional. It may be rewritten more narrowly and satisfy the Constitution, but until then the Johnson Amendment should be ruled unconstitutional.

### Conclusion

For the foregoing reasons, this Court should grant Plaintiffs' Motion.

Dated: April 21, 2025

Respectfully submitted,
*/s/ Michael P. Farris*
Michael Farris
DC Bar No. 385969
National Religious Broadcasters
20 F Street
Seventh Floor
Washington, DC 20001
571-359-6000
mfarris@nrb.org

David A. Kallman
MI Bar No. P34200
Stephen P. Kallman
MI Bar No. P75622
Kallman Legal Group, PLLC
Attorney at Law
5600 W. Mount Hope Hwy.
Lansing, MI 48917
517-322-3207
dave@kallmanlegal.com
steve@kallmanlegal.com

Rita M. Peters
VA State Bar No. 46821
7586 Stoney Lick Road
Mount Crawford, VA 22841
540-830-1229
rpeters@selfgovern.com

Andrew W. Stinson
State Bar No. 24028013
Ramey & Flock, PC
100 E. Ferguson Street, Suite 500
Tyler, TX 75702
903-597-3301
astinson@rameyflock.com

*Attorneys for Plaintiffs*

30

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on April 21, 2025 and Plaintiffs served a true and correct copy of the foregoing document on Defendants' counsel of record by electronic mail.

*/s/ Michael P. Farris*