UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

NATIONAL RELIGIOUS
BROADCASTERS, *et al.*

     *Plaintiffs*

v.                                           Civil Action No. 6:24-cv-00311

BILLY LONG, *in his official capacity*
*as* COMMISSIONER OF THE INTERNAL
REVENUE SERVICE, at a;.

     *Defendants*

## [PROPOSED] ORDER AND FINAL JUDGMENT

Before this Court is the Parties' Joint Motion for Entry of a Consent Judgment. ECF 35. Having considered the motion, the Amended Complaint and applicable law, the Court **GRANTS** the Motion.

**1.** Plaintiffs' claims challenge the so-called Johnson Amendment, the portion of 26 U.S.C. § 501(c)(3) that requires certain organizations including churches to refrain from "participat[ing] in, or interven[ing] in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office" as a condition for their non-profit, tax-exempt status.

**2.** Plaintiff Churches (Sand Springs Church and First Baptist Church Waskom) claim that their religious beliefs compel them to take a position on electoral politics, and that the Johnson Amendment imposes an impermissible burden on their ability to do so.

**3.** When a house of worship in good faith speaks to its congregation, through its customary channels of communication on matters of faith in connection with religious services,

concerning electoral politics viewed through the lens of religious faith, it neither "participate[s]" nor "intervene[s]" in a "political campaign," within the ordinary meaning of those words. To "participate" in a political campaign is "to take part" in the political campaign, and to "intervene" in a political campaign is "to interfere with the outcome or course" of the political campaign. *See Participate*, *Merriam-Webster's Dictionary* (2025); *Intervene*, *Merriam-Webster's Dictionary* (2025). Bona fide communications internal to a house of worship, between the house of worship and its congregation, in connection with religious services, do neither of those things, any more than does a family discussion concerning candidates. Thus, communications from a house of worship to its congregation in connection with religious services through its usual channels of communication on matters of faith do not run afoul of the Johnson Amendment as properly interpreted.

4. This interpretation of the Johnson Amendment is in keeping with the IRS's treatment of the Johnson Amendment in practice. As recounted in Plaintiffs' Amended Complaint, the IRS generally has not enforced the Johnson Amendment against houses of worship for speech concerning electoral politics in the context of worship services. ECF 20 at 30-42; *see* Executive Order 13798 (May 9, 2017) ("[T]he Secretary of Treasury shall ensure, to the extent permitted by law, that the Department of the Treasury does not take any adverse action against any . . . house of worship . . . on the basis that such . . . organization speaks or has spoken about moral or political issues from a religious perspective, where speech of similar character has, consistent with law, not ordinarily been treated as participation of intervention in a political campaign on behalf of (or in opposition to) a candidate for public office by the Department of Treasury.").

5. The doctrine of constitutional avoidance counsels in favor of interpreting the Johnson Amendment so that it does not reach communications from a house of worship to its

congregation in connection with religious services through its usual channels of communication on matters of faith. *See, e.g., Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."). For many houses of worship, the exercise of their religious beliefs includes teaching or instructing their congregation regarding all aspects of life, including guidance concerning the impact of faith on the choices inherent in electoral politics. Interpreting the Johnson Amendment to reach such communications would create serious tension with the First Amendment's Establishment Clause: That broad interpretation would treat religions that do not speak directly to matters of electoral politics more favorably than religions that do so—favoring some religions over others based on their speech to their own congregations in connection with religious services through customary channels of worship and religious communication. *See Catholic Charities Bureau, Inc. v. Wisconsin Labor & Indus. Rev. Comm'n*, 145 S. Ct. 1583, 1591 (2025) ("'The clearest command of the Establishment Clause' is that the government may not 'officially prefe[r]' one religious denomination over another." (quoting *Larson v. Valente*, 456 U.S. 228, 246 (1982))).

**6.** For these reasons, the Johnson Amendment does not reach speech by a house of worship to its congregation, in connection with religious services through its customary channels of communication on matters of faith, concerning electoral politics viewed through the lens of religious faith.

7. Accordingly, based on the Parties' Joint Motion for Entry of a Consent Judgment, the Court hereby **PERMANENTLY ENJOINS** Defendants, as well as their successors, agents, and employees, from enforcing the Johnson Amendment against Plaintiff Churches (Sand Springs

Church and First Baptist Church Waskom) based on speech by a house of worship to its congregation in connection with religious services through its customary channels of communication on matters of faith, concerning electoral politics viewed through the lens of religious faith.

3. To the extent Plaintiffs' claims are not resolved by this Final Judgment, those claims are dismissed with prejudice.

4. Each party to bear its own costs and fees.

This final judgment is issued pursuant to Federal Rule of Civil Procedure 58(a). The Clerk of the Court shall transmit a true copy of this judgment to the Parties.