IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| NATIONAL RELIGIOUS BROADCASTERS, *et al.*,<br><br>　　　　　　　*Plaintiffs*,<br><br>　　v.<br><br>BILLY LONG, *in his official capacity as* COMMISSIONER OF THE INTERNAL REVENUE SERVICES, *et al.*<br><br>　　　　　　　*Defendants*. | Civil Action No. 6:24-cv-00311 |

**PROPOSED INTERVENOR'S OPPOSED MOTION TO INTERVENE AS DEFENDANT OR, IN THE ALTERNATIVE, UNOPPOSED MOTION FOR LEAVE TO FILE AS *AMICUS CURIAE***

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ 2
TABLE OF AUTHORITIES .......................................................................................................... 3
INTRODUCTION .......................................................................................................................... 5
BACKGROUND ............................................................................................................................ 6
    I.    Procedural History ............................................................................................................. 6
    II.   Proposed Intervenor .......................................................................................................... 8
ARGUMENT .................................................................................................................................. 8
    I.    Americans United Is Entitled to Intervention as of Right................................................. 9
        A.   The Motion to Intervene is Timely............................................................................ 9
        B.   Americans United Has Legally Protectable Interests. ............................................. 10
        C.   Americans United's Ability to Protect Its Interests Will Be Impaired by the Court's Disposition of This Action. .................................................................................... 12
        D.   Existing Parties Do Not Adequately Represent Americans United's Interests. ..... 12
    II.   Americans United Should be Permitted to Intervene. ................................................... 14
    III.  In the Alternative, Americans United Seeks Leave to File an Amicus Brief. ............... 15
CONCLUSION ............................................................................................................................. 16
CERTIFICATE OF SERVICE ..................................................................................................... 18
CERTIFICATE OF CONFERENCE ............................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Brumfield v. Dodd*,
   749 F.3d 339 (5th Cir. 2014) ............................................................................... 11, 12, 15

*Cath. Charities Bureau, Inc. v. Wisc. Lab. & Indus. Rev. Comm'n*,
   145 S. Ct. 1583 (2025) ............................................................................................. 7, 16

*City of Houston v. Am. Traffic Solutions, Inc.*,
   668 F.3d 291 (5th Cir. 2012) ........................................................................................ 12

*DeOtte v. State of Nevada*,
   20 F.4th 1055 (5th Cir. 2021) ......................................................................................... 9

*Edwards v. City of Houston*,
   78 F.3d 983 (5th Cir. 1996) .................................................................................... 12, 13

*Entergy Gulf States La., L.L.C. v. U.S. E.P.A.*,
   817 F.3d 198 (5th Cir. 2016) .......................................................................................... 9

*Franciscan Alliance, Inc. v. Azar*,
   414 F. Supp. 3d 928 (N.D. Tex. 2019) ......................................................................... 11

*Freedom from Religion Foundation, Inc. v. Shulman*,
   961 F. Supp. 2d 947 (W.D. Wisc. 2013) ...................................................................... 11

*Grutter v. Bollinger*,
   188 F.3d 394 (6th Cir. 1999) ........................................................................................ 12

*Hopwood v. Texas*,
   21 F.3d 603 (5th Cir. 1994) .......................................................................................... 12

*In re Lease Oil Antitrust Litig.*,
   570 F.3d 244 (5th Cir. 2009) .......................................................................................... 9

*La Union del Pueblo Entero v. Abbott*,
   29 F.4th 299 (5th Cir. 2022) ............................................................................. 11, 12, 13

*League of United Latin Am. Citizens v. Clements*,
   884 F.2d 185 (5th Cir. 1989) .................................................................................. 13, 14

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) ....................................................................................................... 8

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
   732 F. 2d 452 (5th Cir. 1983) ....................................................................................... 14

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994) ..................................................................................... 9, 10

*Sierra Club v. Fed. Emergency Mgmt. Agency*,
   No. H-07-0608, 2007 WL 342851 (S.D. Tex. Nov. 14, 2007) ..................................... 15

*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977) ................................................................................................. 9, 10
*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
  338 F.R.D. 364 (W.D. Tex. 2021) .............................................................................................. 14
*Texas v. U.S. Dep't of Homeland Sec.*,
  754 F. Supp. 3d 713 (E.D. Tex. 2024) ........................................................................................ 15
*Texas v. United States*,
  805 F.3d 653 (5th Cir. 2015) ........................................................................................ 10, 12, 13
*Town of Chester v. Laroe Ests., Inc.*,
  581 U.S. 433 (2017) .................................................................................................................... 11
*United States v. City of Alexandria*,
  614 F.2d 1358 (5th Cir. 1980) .................................................................................................... 15

**Statutes**

26 U.S.C. § 501(c)(3) ........................................................................................................ 5, 6, 8, 11

**Other Authorities**

*See* Br. of Religious & Civil-Rights Orgs. as *Amici Curiae* ISO Respondents, *Cath. Charities Bureau, Inc. v. Wisc. Lab. & Indus. Rev. Comm'n*, No. 24-154, https://www.au.org/wp-content/uploads/2025/03/AU-Amicus-Brief-to-SCOTUS-Catholic-Charities-v.-Wisconsin-LIRC-3.5.25.pdf ................................................................................................................... 16

**Rules**

Fed. R. Civ. P. 24(a) ....................................................................................................................... 9, 12
Fed. R. Civ. P. 24(b). ........................................................................................................................... 9
L.R. CV-7(h) ...................................................................................................................................... 18
L.R. CV-7(i) ....................................................................................................................................... 18

## INTRODUCTION

Proposed Intervenor Americans United for Separation of Church and State ("Americans United") moves to intervene as a defendant in this action to vindicate a federal law (the "Johnson Amendment") that prevents tax-exempt organizations from endorsing or opposing political candidates—and to ensure that religious and nonreligious organizations receive equal treatment under federal law. Americans United is a tax-exempt § 501(c)(3) organization that works to preserve the separation of church and state as a vital component of democratic governance. The outcome of this litigation—including the potential entry of the Proposed Order and Final Judgment, ECF No. 35-1 ("Proposed Consent Decree" or "Decree")—will impact Americans United's interest in receiving equal treatment under the tax code and will interfere with its mission-driven work.

Defendants have taken the consequential step of abandoning the defense of a federal law that has safeguarded our democracy for decades. As Defendant-Intervenor, Americans United will provide a critical perspective, including timely arguments opposing the Proposed Consent Decree, that will otherwise be absent from this case and that will support this Court's duty to reject entry of unlawful consent decrees. Americans United therefore respectfully requests that the Court grant its motion to intervene as of right or, in the alternative, permit intervention. Should the Court deny intervention, Americans United alternatively seeks leave to file an amicus brief opposing entry of the Proposed Consent Decree within fourteen days of the Court's order approving this motion.[1]

---

[1] Plaintiffs and Defendants do not oppose Americans United's request for leave to file an amicus brief.

**BACKGROUND**

The Johnson Amendment prohibits § 501(c)(3) nonprofit organizations, including churches and other houses of worship, from "participat[ing] in, or interven[ing] in (including [by] publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office." 26 U.S.C. § 501(c)(3). In the absence of this prohibition, special interests, corporations, and wealthy donors could easily co-opt religious and other nonprofit organizations in the service of political campaigns and candidates.

The Johnson Amendment represents a deal struck by the American people, acting through Congress, and the many nonprofit organizations operating throughout the country: tax exemption and the eligibility to receive tax-deductible contributions are available in exchange for refraining from making political endorsements. All organizations—religious or secular, partisan or nonpartisan, and formally political or apolitical—are free to endorse political candidates. But only those that choose to comply with the Johnson Amendment may enjoy the benefits that § 501(c)(3) of the tax code affords.

By preventing religious and other 501(c)(3) organizations from intervening in political campaigns, the Johnson Amendment protects their financial independence, ensuring that they are not corrupted by money and led astray from their intended missions. That consideration applies to houses of worship and other religious entities just as much as to other nonprofits, and is in keeping with the fundamental principle underlying the separation of church and state: religious freedom is best preserved by keeping religion apart from the corrupting influences of politics.

### I.     Procedural History

In August 2024, Plaintiffs—four nonprofit organizations, including two churches—filed a lawsuit arguing that the Johnson Amendment violated the First and Fifth Amendments to the U.S.

Constitution and the Religious Freedom Restoration Act. ECF No. 1, ¶¶ 114–151. In December 2024, Defendants filed a motion to dismiss, ECF No. 13, arguing lack of jurisdiction and failure to state a claim for relief. This motion was dismissed as moot after Plaintiffs filed an Amended Complaint in February 2025. *See* ECF Nos. 19, 20.

On April 21, Plaintiffs moved for partial summary judgment. ECF No. 23 at 1. Defendants subsequently filed an Answer to the Amended Complaint on May 22, ECF No. 30, in which they denied that Plaintiffs were entitled to relief.

However, in a break from its prior defense of Congress's law, Defendants joined Plaintiffs in a Joint Motion for Entry of Consent Judgment ("Joint Motion") on July 7, ECF No. 35, along with the Proposed Consent Decree, ECF No. 35-1. In response, the Court stayed all litigation deadlines pending its review of the proposed consent judgment. ECF No. 36.

The Proposed Consent Decree would permanently enjoin Defendants and their successors from enforcing the Johnson Amendment against the two Plaintiff churches: Sand Springs Church and First Baptist Church Waskom. Decree ¶ 7. To explain this outcome, the Decree includes sweeping legal pronouncements, ranging from statutory interpretation to application of recent Supreme Court precedent. For example, the Decree asserts that the Johnson Amendment, when "properly interpreted," "does not reach speech by a house of worship to its congregation, in connection with religious services through its customary channels of communication on matters of faith, concerning electoral politics viewed through the lens of religious faith." *Id.* ¶¶ 3, 6. The Decree likewise suggests that enforcing the Johnson Amendment against the Plaintiff churches would "create serious tension with the First Amendment's Establishment Clause" by "treat[ing] religions that do not speak directly to matters of electoral politics more favorably than religions that do." *Id.* ¶ 5 (citing *Cath. Charities Bureau, Inc. v. Wisc. Lab. & Indus. Rev. Comm'n*, 145 S.

7

Ct. 1583, 1591 (2025)). Such pronouncements upend decades-long understandings of when and how the Johnson Amendment applies. And they usurp the Court's role in "exerci[sing] independent judgment" to "decide whether the law means what the agency says." *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392–94 (2024).

## II. Proposed Intervenor

Americans United is a national, nonsectarian public-interest organization committed to preserving the constitutional principles of religious freedom and the separation of church and state. Boston Decl. ¶ 4. As a tax-exempt organization, Americans United complies with all relevant provisions of 26 U.S.C. § 501(c)(3), including the Johnson Amendment. *Id.* ¶ 3. Americans United has a long history of advocating for nonprofit nonpartisanship, including through enforcement of the Johnson Amendment, as a core component of its mission. *Id.* ¶¶ 5–8.

Americans United supports the Johnson Amendment and believe that this law be enforced against religious and nonreligious organizations alike as intended by Congress. Americans United also objects to government policies, agreements, or carve outs that treat religious nonprofits more favorably than secular nonprofits. *See id.* ¶¶ 11–12. The Proposed Consent Decree does just this. By exempting Sand Springs Church and First Baptist Church Waskom—but not Americans United—from restrictions on endorsing or opposing political candidates, the Proposed Consent Decree would deprive Americans United of equal treatment under the law. To the extent that the government affords special exemptions from the Johnson Amendment to religious organizations, Americans United (and other secular nonprofits) are entitled to the same benefits.

## ARGUMENT

Courts have broad discretion to permit intervention and should do so "where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.

1994). Americans United meets the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a). In the alternative, the Court can and should permit intervention under Federal Rule of Civil Procedure 24(b).

## I. Americans United Is Entitled to Intervention as of Right.

A non-party has the right to intervene in an action when: (1) their intervention application is timely; (2) they "have an interest relating to" the subject matter of the action; (3) they are "so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest"; and (4) their interests are not "adequately represent[ed]" by the existing parties to the suit. Fed. R. Civ. P. 24(a)(2); *see also DeOtte v. State of Nevada*, 20 F.4th 1055, 1067 (5th Cir. 2021). These requirements should "be liberally construed, 'with doubts resolved in favor of the proposed intervenor.'" *Entergy Gulf States La., L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016) (quoting *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009)).

### A. The Motion to Intervene is Timely.

Timeliness is "not a tool of retribution to punish" prospective intervenors, but rather "a guard against prejudicing the original parties by the failure to apply sooner." *Sierra Club*, 18 F.3d at 1205. This inquiry is "contextual" and not tied to any absolute measurement of time. *Id.* Courts consider: (1) how long the would-be intervenor knew or should have known of their interest in the case; (2) the extent of prejudice to existing parties due to the proposed intervenor's failure to move or intervene sooner; (3) the extent of prejudice to the would-be intervenor if the motion were denied; and (4) any unusual circumstances. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977). Under these factors, Americans United's motion is timely.

Americans United filed for intervention just three days after the Parties submitted the Joint Motion and Proposed Consent Decree. Prior to this point in the litigation, Americans United

believed—supported by Defendants' initial, robust Motion to Dismiss—that Defendants intended to vigorously defend the Johnson Amendment in response to Plaintiffs' statutory and constitutional challenges. The Joint Motion and Proposed Consent Decree revealed for the first time that Defendants' interests, strategy, and legal arguments diverged sharply from the those of Americans United. For example, Defendants announced a new, narrower interpretation of the Johnson Amendment and appeared to concede that enforcement of the Johnson Amendment against certain plaintiffs might be unconstitutional. *See* Decree ¶¶ 3, 5–7; Joint Motion, ¶¶ 7, 9–10. Upon realizing that the existing parties would not adequately represent its interests, Americans United promptly sought intervention. *See Stallworth*, 558 F.2d at 264–65, 267 (delay is measured from the moment that the proposed intervenor learned that their interests will not be protected, not the date the lawsuit is filed).

Because Americans United did not delay in seeking intervention, the existing parties are not prejudiced by the motion's timing. *See Sierra Club*, 18 F.3d at 1206 ("[P]rejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation."). Denying intervention, on the other hand, will significantly prejudice Americans United. If the Proposed Consent Order goes into effect, Americans United will immediately be deprived of equal treatment under the Johnson Amendment, as described below. Thus, the motion to intervene is timely.

### B. Americans United Has Legally Protectable Interests.

To intervene as of right, a party must have a "concrete, personalized, and legally protectable interest" in the proceedings. *Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015). The intervenor need not have "an enforceable legal entitlement" or "standing to pursue [their] own claim," but their stake in the matter must go "beyond a generalized preference that the case come

out a certain way." *Id.* at 657, 659.[2] The Fifth Circuit has recognized that the "burden is lower for a 'public interest group' raising a 'public interest question.'" *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (quoting *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014)).

As a 501(c)(3) organization, Americans United has a concrete interest in "vindicat[ing] its own right to equal treatment" by the Internal Revenue Service (IRS). *See Freedom from Religion Foundation, Inc. v. Shulman*, 961 F. Supp. 2d 947, 951 (W.D. Wisc. 2013). The Proposed Consent Decree would permit Sand Springs Church and First Baptist Church Waskom to endorse or oppose political candidates "through its customary channels of communication on matters of faith," while still maintaining their § 501(c)(3) tax-exempt status. *See* Decree ¶ 7. Sand Springs and First Baptist Waskom are eligible for this benefit because they are houses of worship. *See id.* ¶ 3 (arguing that "communications from a house of worship to its congregation . . . do not run afoul of the Johnson Amendment"). Meanwhile, secular nonprofits like Americans United will remain unable to endorse or oppose political candidates through their own channels of communication. If the Proposed Consent Decree goes into effect, Americans United will be "deprived of equal treatment" by the federal government. *See Freedom From Religion Found.*, 961 F. Supp. at 951. This alone gives Americans United a legally protectable interest in the outcome of litigation.

More broadly, Americans United is a public interest organization that seeks to intervene in a case that raises constitutional issues and involves a "statute of general application." *See Brumfield*, 749 F.3d at 344. With over forty years of advocacy and action, Americans United has

---

[2] While plaintiff-intervenors must demonstrate Article III standing to pursue relief that is different from what a party with standing seeks, *see Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 435 (2017), this requirement does not extend to defendant-intervenors. This is because defendant-intervenors do not "seek relief" where their objective is to "defend[] the lawfulness" of a particular statute. *Franciscan Alliance, Inc. v. Azar*, 414 F. Supp. 3d 928, 938 n.3 (N.D. Tex. 2019). "As long as they do not also intend to add an affirmative claim for relief during the district court proceedings, [defendant-intervenors] need not establish standing to intervene." *Id.*

"demonstrated a particular interest" and "expend[ed] significant resources" on ensuring the continued viability of the Johnson Amendment. *See City of Houston v. Am. Traffic Solutions, Inc.*, 668 F.3d 291, 294 (5th Cir. 2012); *Pubelo Entero*, 29 F.4th at 306; Boston Decl. ¶¶ 5-8 (describing efforts, dating back to 1988, to preserve and promote enforcement of the Johnson Amendment). Taken together, the threat of individualized harm and the specific, decades-long history of advocacy around the Johnson Amendment mean that Americans United has more than a mere "ideological, economic, or precedential" interest in intervention. *See Texas*, 805 F.3d at 657.

### C. Americans United's Ability to Protect Its Interests Will Be Impaired by the Court's Disposition of This Action.

Americans United easily carries its "*minimal*" burden of demonstrating that the disposition of this case "may" impair or impede its ability to protect the interests described above. *Brumfield*, 749 F.3d at 344 & n.2 (quoting *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (emphasis in original)). As discussed in Section I.B, *supra*, entry of the Proposed Consent Order will inevitably cause Americans United to experience unequal treatment.

### D. Existing Parties Do Not Adequately Represent Americans United's Interests.

Finally, Americans United's interests are not adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2). A presumption of adequate representation applies in two situations. First, when "the putative representative is a governmental body or officer charged by law with representing the interests" of the intervenor, the intervenor must show that "its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by it." *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (quoting *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994)). Second, when the proposed intervenor has the "same ultimate objective as a party to the lawsuit," the intervenor must show "adversity of interest, collusion, or nonfeasance

on the party of the existing party." *Edwards*, 78 F.3d at 1005. If one or both of these presumptions apply, the proposed intervenor's burden is "relatively minimal" but requires "something more than speculation." *League of United Latin Am. Citizens v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989) (internal quotation marks omitted).

Assuming that one or both presumptions apply, Defendants have already taken legal positions that are "directly adverse" to Americans United's interests, and Americans United has plainly carried its burden of overcoming the presumption of adequate representation. *See Texas*, 805 F.3d at 663. Americans United seeks to intervene so that it can oppose entry of the Proposed Consent Decree, which Defendants have asked the Court to enter. The Proposed Consent Decree contains sweeping legal analysis and language that Americans United rejects as procedurally improper, legally unsound, and deeply harmful to the interests it seeks to protect. *See, e.g.*, Decree ¶ 3 (narrowly interpreting the language of the Johnson Amendment); *id.* ¶ 4 (describing the IRS's policy of not enforcing the Johnson Amendment against religious organizations); *id.* ¶ 5 (improperly drawing on the canon of constitutional avoidance and misconstruing caselaw); *id.* ¶ 6 (narrowing the applicability of the Johnson Amendment). In at least two instances, Defendants declined to substantively defend the constitutionality of the Johnson Amendment: The Proposed Consent Decree cites, but does not dispute, Plaintiffs' allegation that the Johnson Amendment impermissibly burdens their religious practice, and the Decree affirmatively suggests that enforcing the Johnson Amendment against Plaintiffs could raise issues under the Establishment Clause. *See id.* ¶¶ 2, 5; *cf. Pueblo Entero*, 29 F.4th at 308 (representation inadequate where the government stated that they "w[ould] not substantively defend the law").

## II. Americans United Should be Permitted to Intervene.

In the alternative, permissive intervention is appropriate in this case. Courts may permit intervention when: (1) the proposed intervenor's application is timely; (2) the proposed intervenor has a "claim or defense that shares with the main action a common question of law or fact"; and (3) the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3); *see also League of United Latin Am. Citizens*, 884 F.2d at 189 n.2. In determining whether to permit interventions, including adequate representation by other parties and whether the proposed intervenor will "significantly contribute to full development of the underlying factual issues in the suit." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F. 2d 452, 472 (5th Cir. 19834) (citation omitted).

Americans United satisfies these standards. The motion to intervene is timely for the reasons discussed in Section I.A, *supra*. Americans United has a defense that shares a common question of law or fact with this litigation: it seeks to defend the Johnson Amendment against Plaintiffs' constitutional and statutory challenges. Moreover, intervention will not unduly delay or prejudice the existing parties' rights for the same reason that Americans United's motion is timely. *See Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 338 F.R.D. 364, 372 (W.D. Tex. 2021) ("The analysis as to whether the intervention will cause undue delay or prejudice is essentially the same as the timeliness analysis").

Finally, additional considerations warrant permissive intervention here. In determining whether to permit intervention, courts consider whether the proposed intervenor is likely to provide significant contributions to the development of the underlying factual issues. *See League of United Latin Am. Citizens*, 884 F.2d at 189. Here, Americans United serves an essential function—raising arguments that Defendants have waived or conceded, and challenging entry of the Proposed

Consent Decree. *See Brumfield*, 749 F.3d at 345 (the "purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions."). Its role as Defendant-Intervenor will support the Court's independent duty to ensure that a consent decree is not unlawful, unreasonable, or inequitable. *See United States v. City of Alexandria*, 614 F.2d 1358 (5th Cir. 1980).

### III. In the Alternative, Americans United Seeks Leave to File an *Amicus* Brief.

Should the Court deny the Motion for Intervention, Americans United respectfully requests leave to file an amicus brief opposing entry of the Proposed Consent Decree. Courts have encouraged amicus filings where "a party, although short of a right to intervene . . . has a special interest that justifies [their] having a say." *Sierra Club v. Fed. Emergency Mgmt. Agency*, No. H-07-0608, 2007 WL 3472851, at *1 (S.D. Tex. Nov. 14, 2007); *see also Texas v. U.S. Dep't of Homeland Sec.*, 754 F. Supp. 3d 713, 719–20 (E.D. Tex. 2024) (denying motion for intervention but granting permission to file as *amici*).

"No statute, rule, or controlling case defines a federal district court's power to grant or deny leave to file an *amicus* brief." *Sierra Club*, 2007 WL 3472851, at *1. District courts have broad discretion in assessing whether this appropriate. Among other factors, courts consider: (1) whether the brief is focused on law as opposed to fact; (2) whether the information is "timely and useful"; (3) whether the brief is overly partisan; (4) the level of complexity and ambiguity in the law; (5) whether the parties are adequately represented; and (6) whether the amicus adds a new perspective or information. *Id.* at *1–2.

Each of these discretionary factors weighs in favor of Americans United's motion to intervene. Americans United will provide substantive legal arguments on complex constitutional issues, with which Americans United has significant of experience through its litigation and amicus

practice. For example, the Proposed Consent Decree cites the Supreme Court's recent decision in *Catholic Charities Bureau, Inc. v. Wisconsin Labor & Industrial Review Commission*, 145 S. Ct. 1583, 1591 (2025), to support the Parties' argument that enforcing the Johnson Amendment might violate the Establishment Clause. Decree ¶ 5. Because the Supreme Court decided this case a little over a month ago, courts lack clarity on what its precise impact would be. Americans United, which submitted an amicus brief in that case[3] and is involved in similar issues across the country, is well positioned to provide the Court with context as it applies in this novel case. Americans United's brief will be neutral and non-partisan: in fact, its primary objective is to prevent entry of a Consent Decree that both Parties previously agreed to. Finally, the brief will contribute a new perspective that is not already discussed by the Court and will support the Court's role in adjudication, for the reasons in Section I above.

## CONCLUSION

In light of the foregoing, Americans United respectfully requests that the Court grant its motion to intervene, or, in the alternative, to file an amicus brief fourteen days of the Court's order approving this motion.

Dated: July 10, 2025

Respectfully submitted,

/s/ Martin Woodward

Martin Woodward
Kitner Woodward PLLC
13101 Preston Road, Suite 110
Dallas, TX 75240
martin@kitnerwoodward.com

---

[3] *See* Br. of Religious & Civil-Rights Orgs. as *Amici Curiae* ISO Respondents, *Cath. Charities Bureau, Inc. v. Wisc. Lab. & Indus. Rev. Comm'n*, No. 24-154, https://www.au.org/wp-content/uploads/2025/03/AU-Amicus-Brief-to-SCOTUS-Catholic-Charities-v.-Wisconsin-LIRC-3.5.25.pdf.

Alexandra Zaretsky*
Bar No. 5833561**
Jessica Zalph*
Bar No. DC 90017719
Rebecca Markert*
Bar No. WI 1063232***
AMERICANS UNITED FOR SEPARATION
OF CHURCH AND STATE
1310 L Street NW, Suite 200
Washington, DC 20005
zaretsky@au.org
zalph@au.org
markert@au.org
(202) 898-2145

*Application for pro hac vice forthcoming*

**Not a member of the D.C. Bar. Residing and admitted in New York only.*

****Not a member of the D.C. Bar. Residing in and admitted in Wisconsin only.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2025, I electronically filed this motion with the Clerk of the Court for the United States District for the Eastern District of Texas by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

<u>/s/ Martin Woodward</u>

**CERTIFICATE OF CONFERENCE**

I certify that counsel for the Proposed Intervenor have complied with the meet and confer requirements of Local Rule CV-7(h). On July 9, 2025, counsel for Proposed Intervenors (Alexandra Zaretsky, Jessica Zalph, Rebecca S. Markert, and Martin Woodward) conferred with counsel for Plaintiffs (Michael P. Farris, David A. Kallman, Stephen P. Kallman, Andrew W. Stinson, and Rita M. Peters) via video teleconference. On a separate video teleconference call on July 9, counsel for Proposed Intervenors (Alexandra Zaretsky, Jessica Zalph, Rebecca S. Markert, and Martin Woodward) conferred with counsel for Defendants (Jonathan L. Blacker). Plaintiffs and Defendants oppose the motion for intervention because they do not believe Americans United meets the legal standard for intervention. Plaintiffs and Defendants do not object to Americans United's motion, in the alternative, for leave to file an amicus brief opposing entry of the Proposed Consent Decree. Pursuant to local Rule CV-7(i), discussions conclusively ended in an impasse, leaving an open issue for this court to decide.

<u>/s/ Martin Woodward</u>