IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT
OF TEXAS TYLER DIVISION

| | |
|---|---|
| NATIONAL RELIGIOUS BROADCASTERS, SAND SPRINGS CHURCH, FIRST BAPTIST CHURCH WASKOM, and INTERCESSORS FOR AMERICA<br><br>Plaintiffs,<br><br>v.<br><br>BILLY LONG, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE INTERNAL REVENUE SERVICE, and THE INTERNAL REVENUE SERVICE<br><br>Defendants. | Civil Action No. 6-24-cv-00311 |

**PLAINTIFF'S BRIEF IN OPPOSITION TO PROPOSED INTERVENOR'S MOTION TO INTERVENE AS DEFENDANT**

**Table of Contents**

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................. ii

I. Introduction and Summary of Argument ........................................................................ 1

II. Americans United Has No Legally Protected Interest .................................................. 3

   A. AU Does Not Wish to Exercise Any Right to Speak About Candidates ................. 3

   B. Americans United's Opposition to "Special Exemptions from the Johnson Amendment" for Religious Organizations is a Political Stance Not an Interest Protected by Law ........................ 4

   C. AU Has Not Provided Sufficient Factual Evidence to Support Its Claim of a Protectable Interest ................................................................................................. 6

III. Americans United Has Inaccurately Portrayed the Position of the Defendants as "Abandoning" the Johnson Amendment ............................................................................ 8

Conclusion ........................................................................................................................... 9

i

## Table of Authorities

**Cases**

*Branch Ministries v. Rossotti,* 211 F.3d 137 (D.C. Cir. 2000) ........................................................ 7

*Catholic Charities v. Wisconsin Labor & Industry Review Commission*, 145 S. Ct. 1583 (2025)… .................................................................................................................................................. 5

*City of Houston v. Am. Traffic Solutions, Inc.*, 668 F.3d 291 (5th Cir. 2012) ................................ 6

*Freedom From Religion Found., Inc. v. Koskinen*, No. 12-C-0818, 2014 WL 3811050 (W.D. Wis. Aug. 1, 2014) ............................................................................................................................ 3

*Freedom From Religion Found., Inc. v. Shulman*, 961 F. Supp. 2d 947 (W.D. Wis. 2013)............ 6

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022).............................................. 6

*State of Tex. v. U.S. Dep't of Energy*, 754 F.2d 550 (5th Cir. 1985).............................................. 2

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) .................................................................... 2

**Statutes**

52 U.S.C. § 30118……………………………………………………………………………….8

**Rules**

Fed. R. Civ. P. (24)……………………………………………………………………………...2

**Other Authorities**

Brief of 30 Religious, Civil Rights, and Grassroots Organizations as Amici Curiae in Support of Respondents at 7, *303 Creative LLC v. Elenis*, No. 21-476 (U.S. Aug. 23, 2022)…………… 5

Brief of Americans United for Separation of Church and State et al. as Amici Curiae in Support of Respondents at 3, *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, No. 16-111 (U.S. Oct. 30, 2017)…………….............................................................................................. 4

Brief of Amici Curiae Americans United for Separation of Church and State et al., Supporting Appellees, *Stapleton v. Advocate Health Care Network*, No. 15-1368 (7th Cir. May 13, 2015) ………….................................................................................................................................... 5

Brief of Religious and Civil-Rights Orgs., Amicus Curiae, *Catholic Charities v. Wisconsin Labor & Industry Review Commission*, No. 24-154 (U.S. Mar. 5, 2025) ............................................ 5

ii

I.      **Introduction and Summary of Argument**

Americans United for Separation of Church and State [hereinafter Americans United or AU] has filed a motion to intervene, which both parties oppose. Alternatively, they move for leave to file an amicus brief, which is unopposed by either party. ECF No. 37. This Court granted AU's request to submit an amicus brief. ECF No. 42.

In order to evaluate whether the request to intervene is appropriate, it is helpful to review exactly what actions AU wishes to take in this case. It says nothing about desiring to raise new questions to be resolved. No mention is made of seeking to call witnesses. There is no suggestion that it seeks any particular form of relief. Rather, AU simply wants to make legal arguments about the propriety of this Court's approving the proposed Consent Decree. AU does not even allude to the prospect of participating in the full litigation that would follow should this Court decline to approve the Consent Decree.

Americans United describes its desired actions as follows:

> As Defendant-Intervenor, Americans United will provide a critical perspective, including timely arguments opposing the Proposed Consent Decree, that will otherwise be absent from this case and that will support this Court's duty to reject entry of unlawful consent decrees.

ECF No. 37 at 5.

> Here, Americans United serves an essential function—raising arguments that Defendants have waived or conceded, and challenging entry of the Proposed Consent Decree. Its role as Defendant-Intervenor will support the Court's independent duty to ensure that a consent decree is not unlawful, unreasonable, or inequitable.

*Id*. at 13–14 (citations omitted).

> Americans United will provide substantive legal arguments on complex constitutional issues, with which Americans United has significant of experience through its litigation and amicus practice.

1

*Id*. at 15.

> Americans United's brief will be neutral and non-partisan: in fact, its primary objective is to prevent entry of a Consent Decree that both Parties previously agreed to. Finally, the brief will contribute a new perspective that is not already discussed by the Court and will support the Court's role in adjudication, for the reasons in Section I above.

*Id*. at 15–16.

Every action contemplated by AU will be fully satisfied by filing an amicus brief. The Fifth Circuit's observation in *State of Tex. v. U.S. Dep't of Energy* is apt: "[W]hen he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." 754 F.2d 550, 553 (5th Cir. 1985) (cleaned up). *See also Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) ("[A]n intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons; that would-be intervenor merely prefers one outcome to the other.") Plaintiffs respectfully suggest that the overwhelming emphasis in AU's submission deals with ideological and precedential concerns.

AU correctly recites the relevant standards for intervention under Fed. R. Civ. P. (24)(a)(2):

> A non-party has the right to intervene in an action when: (1) their intervention application is timely; (2) they "have an interest relating to" the subject matter of the action; (3) they are "so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest"; and (4) their interests are not "adequately represent[ed]" by the existing parties to the suit. Fed. R. Civ. P. 24(a)(2); *see also DeOtte v. State of Nevada*, 20 F.4th 1055, 1067 (5th Cir. 2021).

ECF No. 37 at 9.

However, the submission by AU fails to satisfy at least two of these four standards. First, AU does not possess an "interest" related to the subject matter. Second, it fails to show that its interests are not adequately represented by the Defendants.

2

## II. Americans United Has No Legally Protected Interest.

### A. AU Does Not Wish to Exercise Any Right to Speak About Candidates.

AU seeks to intervene as a Defendant to uphold the ban on candidate speech by all nonprofits including itself. It claims no right of speech for itself. The sole and unmistakable goal of its intervention is to ensure that all houses of worship are silenced.

AU places substantial reliance on *Freedom From Religion Found., Inc. v. Shulman*, 961 F. Supp. 2d 947 (W.D. Wis. 2013) to bolster its claim that its demand for equal treatment with houses of worship vis-à-vis the Johnson Amendment is a protectable interest. However, AU overlooked one critical factor in that case. When the IRS moved to dismiss that case because the Foundation did not want to exercise the right of freedom of electoral speech for itself, the court rebuffed that claim on a factual basis:

> It is evident from this statement that the Foundation would prefer to both participate in political campaigns and keep its tax-exempt status. Thus, it is not the case that the IRS is extending a benefit to religious organizations that the Foundation is uninterested in obtaining for itself.

*Id.* at 951.

It is true that the Wisconsin District Court discussed the possibility that the relief granted could result in equality; it could either protect or deny the right to speak for both religious and nonreligious nonprofits. *Id.* But this discussion does not override the fact that standing was granted on the basis that the Foundation claimed to want to exercise the freedom of electoral speech for itself. AU clearly has taken a different path and has no basis for relying on this non-precedential case.[1]

---

[1] The Wisconsin case was dismissed by the joint motion of both parties for lack of evidence. *Freedom From Religion Found., Inc. v. Koskinen*, No. 12-C-0818, 2014 WL 3811050, at *1 (W.D. Wis. Aug. 1, 2014).

Could prolife activists be granted permission to intervene in cases when a state government, in the opinion of the activists, is not defending its laws restricting abortion in a sufficiently categorical manner?

Allowing Americans United to intervene in this case could open a new floodgate for intervention by activist organizations whenever they disagree with the tactics of a government defendant. The proper method for expressing their preferred view of the law is via an amicus brief.

### B. Americans United's Opposition to "Special Exemptions from the Johnson Amendment" for Religious Organizations is a Political Stance, Not an Interest Protected by Law.

Americans United describes its "interest" to this Court as follows: "Americans United also objects to government policies, agreements, or carve outs that treat religious nonprofits more favorably than secular nonprofits." ECF No. 37 at 8. It is true that Americans United has taken similar positions in a for-profit context—opposing religious exemptions from state laws prohibiting discrimination based on sexual orientation and gender identity.[2]

Stated succinctly, AU claims that its consistent record (most often in amicus briefs) of opposing religious exemptions from general laws is a legally protected interest. One might reasonably think that this would require a showing of consistently making this same argument over time. However, at times, Americans United takes a position that appears to be radically at odds with its "no religious exemptions" stand proffered here. For example, AU told the Seventh Circuit in 2015:

---

[2] *See* Brief of Americans United for Separation of Church and State et al. as Amici Curiae in Support of Respondents at 3, *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, No. 16-111 (U.S. Oct. 30, 2017); Brief of 30 Religious, Civil Rights, and Grassroots Organizations as Amici Curiae in Support of Respondents at 7, *303 Creative LLC v. Elenis*, No. 21-476 (U.S. Aug. 23, 2022).

> Americans United has long supported legal exemptions that reasonably accommodate religious practice. *See, e.g.*, Brief of Americans United for Separation of Church and State as Amicus Curiae in Support of Petitioner, *Holt v. Hobbs*, 135 S. Ct. 853 (2015) (No. 13-6827), 2014 WL 2361896 (supporting religious exemption from prison rules prohibiting facial hair). Consistent with its support for the separation of church and state, however, Americans United opposes religious exemptions that would impose harm on innocent third parties.

Brief of Amici Curiae Americans United for Separation of Church and State et al. Supporting Appellees at 1, *Stapleton v. Advocate Health Care Network*, No. 15-1368 (7th Cir. May 13, 2015).

An even more glaring inconsistency is found in AU's submission to the Supreme Court in the 2025 case of *Catholic Charities v. Wisconsin Labor & Industry Review Commission*, 145 S. Ct. 1583 (2025). In its amicus brief,[3] AU leads with this statement of overarching principle:

> Amici believe that government may properly exempt religious institutions or activities from legal requirements in certain circumstances to lift burdens on religious exercise and avoid governmental interference with religion.

Brief of Religious and Civil-Rights Orgs.*, supra*, at 1.

AU expands upon this theme in considerable detail and with obvious approval of some religious exemptions:

> Throughout American history, legislatures and courts have drawn similar lines in determining the appropriate scope and nature of religious exemptions. Property-tax laws, including those predating the founding of our nation, have routinely distinguished between religious and nonreligious uses of church property…
>
> Contrary to Petitioners' arguments, the First Amendment's no-preference, entanglement, and church-autonomy doctrines do not prohibit states from offering limited, categorical religious exemptions or from distinguishing between religious and nonreligious entities and activities in assessing the applicability of exemptions, as Wisconsin has done here.

*Id*. at 3–4.

Using Americans United's own language, the proposed Consent Decree constitutes an occasion when "government may properly exempt religious institutions or activities from legal

---

[3] Brief of Religious and Civil-Rights Organizations as Amici Curiae in Support of Respondents, *Catholic Charities Bureau, Inc. v. Wis. Labor & Indus. Rev. Comm'n*, No. 24-154 (U.S. Mar. 5, 2025)

requirements in certain circumstances to lift burdens on religious exercise and avoid governmental interference with religion." This clearly demonstrates that the proposed Consent Decree does not, in fact, interfere with AU's claimed interest.

### C. AU Has Not Provided Sufficient Factual Evidence to Support Its Claim of a Protectable Interest.

AU makes the following factual claim: "With over forty years of advocacy and action, Americans United has 'demonstrated a particular interest and expend[ed] significant resources' on ensuring the continued viability of the Johnson Amendment." ECF No. 37 at 11–12 (quoting *City of Houston v. Am. Traffic Solutions, Inc.*, 668 F.3d 291, 294 (5th Cir. 2012); *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022); Boston Decl. ¶¶ 5–8).

AU cites the Boston Declaration as the factual basis for these claims. *Id*. However, Mr. Boston's statements do not say a single word about expending any resources whatsoever in ensuring the "continued viability of the Johnson Amendment." This is a far cry from the showing made by the intervenors in the *City of Houston* case, who were described by the Fifth Circuit as "spending a small fortune" to pass a contested ballot measure. 668 F.3d at 294.

Moreover, AU's recitation of its history of advocacy for the "viability" of the Johnson Amendment consists entirely of bringing three alleged violations of the Johnson Amendment to the attention of the IRS. Whether this was done by letter, phone call, or email, the costs involved in such efforts are clearly *de minimis*. And three occasions of complaining about churches over 40 years is hardly a record of intense devotion to the viability of the Johnson Amendment— assuming *arguendo* that such devotion would create a protectable interest. Nor has AU demonstrated that the Consent Decree would adversely impact their desired role as "citizen-enforcers" of the tax code. Two of their three complaints to the IRS would be unaffected by the proposed Consent Decree.

6

AU claims to have objected to the activities of the Jesse Jackson presidential campaign in seeking to raise money for political candidates in churches. No information was provided as to the outcome of AU's complaint. Boston Decl. ECF No. 37-1, ¶ 6. But in any event, the proposed Consent Decree does not adversely affect the rule prohibiting churches from raising money for candidates.

Additionally, Americans United claims a role in the case of a church named Branch Ministries that purchased a full-page ad in two major newspapers opposing the candidacy of William Clinton. ECF No. 37-1, ¶ 7. The case led to the loss of that church's tax-exempt status. *Branch Ministries v. Rossotti,* 211 F.3d 137 (D.C. Cir. 2000). Again, the rule that Americans United claims to have helped enforce is fully preserved by the proposed Consent Decree, because it would not allow churches to purchase such newspaper ads. Such advertising is not a part of their normal means of communication.

Finally, the third instance of AU's efforts to enforce the Johnson Amendment only serves to demonstrate why the entry of the Consent Decree is necessary to protect churches from fear of constitutionally inappropriate interference with their teaching ministries. In 2022, AU "urged the IRS" to enforce the Johnson Amendment against Global Vision Church "who declared that Democratic voters would be expelled from the church and told congregants that they cannot be 'a Democrat and a Christian.'" ECF No. 37-1, ¶ 8. This church's statement does not plausibly describe support or opposition to a *candidate* for public office. If religious autonomy means anything, it surely allows churches to create whatever standards it wishes for membership. Moreover, the Johnson Amendment does not require nonpartisanship; it deals strictly with support or opposition for particular candidates for office.

### III. Americans United Has Inaccurately Portrayed the Position of the Defendants as "Abandoning" the Johnson Amendment.

An element that is critical to Americans United's claimed right of intervention is the suggestion that the Defendants have effectively abandoned the legitimacy of the Johnson Amendment and AU's intervention is needed to rescue this provision in the tax code. ECF No. 37 at 5. This portrayal is simply inaccurate.

Plaintiffs' complaint seeks to have the Johnson Amendment declared unconstitutional *in toto*. ECF No. 20, ¶ 24, ¶ 116, ¶ 121–22, ¶136, ¶ 149, ¶ 157–59. If this relief is granted, no 501(c)(3) organization would be under any limitation from the tax code whatsoever vis-à-vis political candidates. Federal election law still bans direct contributions to candidates from corporations (including nonprofits), 52 U.S.C. § 30118(a)–(b), but independent expenditures would be possible.

Plaintiffs have argued that the Johnson Amendment unconstitutionally denies tax deductibility for all donations received by a (c)(3) organization, rather than following the apportionment rule it employs for the deductibility of business expense contributions to (c)(4)(5) and (6) organizations. "If such an organization spends $10 million feeding the poor and $100 in sending an email to its members that supports a political candidate, the organization itself becomes a taxable entity and deductibility for the entire $10 million is forfeited." ECF No. 23 at 3. Adjustments to this challenged scheme would require future action by Congress, since this Court could, at most, only rule that the Johnson Amendment as currently written is unconstitutional.

All of this illustrates that the Defendants have not abandoned the Johnson Amendment in the proposed Consent Decree. Instead of opening any door whatsoever (even for a brief period) for a nonprofit to make independent expenditures for candidates, this aspect of the Johnson

8

Amendment remains fully in place. Moreover, the ability of churches to take out political ads in newspapers is foreclosed by this proposed Consent Decree. It is limited to what churches (and other houses of worship) say in their worship services using their normal means of communication.

While Plaintiffs and Defendants disagree about the degree of consistency in the IRS's history of allowing church worship services to go unmolested under the Johnson Amendment, the proposed Consent Decree correctly cites both parties' view that the IRS has *generally* refrained from enforcing the Johnson Amendment within the context of a church service. ECF No. 35 at 8. It is fair to say that the IRS has followed this practice in silence, leaving churches to fear that they may be one of the unlucky ones to face the occasional enforcement actions that the IRS has undertaken in the past. ECF No. 20, ¶ 48. And as previously demonstrated, in two of its three actions of reporting churches to the IRS, the proposed Consent Decree would not stop AU from carrying out its mission.

All that this proposed Consent Decree does is to remove the opportunity for disparate treatment and eliminate a chilling effect on churches. It interprets the Johnson Amendment in light of constitutional principles to forbid any and all IRS intervention in the teaching of churches and other houses of worship.

The Johnson Amendment has not been abandoned by the Defendants. The proposed Consent Decree does nothing more than require that the IRS apply the law in a completely consistent and constitutional manner.

## Conclusion

Plaintiffs respectfully urge this Court to deny the Americans United motion to intervene.

Dated: July 18, 2025

        Respectfully submitted,
        */s/ Michael P. Farris*
        Michael Farris
        DC Bar No. 385969
        National Religious Broadcasters
        20 F Street
        Seventh Floor
        Washington, DC 20001
        571-359-6000
        mfarris@nrb.org

        David A. Kallman
        MI Bar No. P34200
        Stephen P. Kallman
        MI Bar No. P75622
        Kallman Legal Group, PLLC
        Attorney at Law
        5600 W. Mount Hope Hwy.
        Lansing, MI 48917
        517-322-3207
        dave@kallmanlegal.com
        steve@kallmanlegal.com

        Rita M. Peters
        VA State Bar No. 46821
        7586 Stoney Lick Road
        Mount Crawford, VA 22841
        540-830-1229
        rpeters@selfgovern.com

        Andrew W. Stinson
        State Bar No. 24028013
        Ramey & Flock, PC
        100 E. Ferguson Street, Suite 500
        Tyler, TX 75702
        903-597-3301
        astinson@rameyflock.com

        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing document was electronically filed on July 18, 2025, and Plaintiffs served a true and correct copy of the foregoing document on Defendants' counsel of record by electronic mail.

                                                      */s/ Michael P. Farris*