IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| NATIONAL RELIGIOUS BROADCASTERS, SAND SPRINGS CHURCH, FIRST BAPTIST CHURCH WASKOM, and INTERCESSORS FOR AMERICA,<br><br>    Plaintiffs,<br>v.<br><br>BILLY LONG, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE INTERNAL REVENUE SERVICE, and THE INTERNAL REVENUE SERVICE,<br><br>    Defendants. | CIVIL NO: 6:24-cv-00311 |

## UNITED STATES' OPPOSITION TO MOTION TO INTERVENE

The Court should deny the Motion to Intervene filed by Americans United for Separation of Church and State. AU seeks to interject itself into this litigaton as a defendant, for the purpose of challenging a settlement and Proposed Consent Judgment that does not affect it and in which it has no cognizable interest. In its eagerness to do so, AU stumbles over the facts: the Government has not "abandoned" the Johnson Amendment; rather, it has obtained a conditional settlement that would result in dismissal of broad challenges aimed at invalidating the Johnson Amendment. The Proposed Consent Judgment simply recognizes—based on statutory text, settled interpretive principles, and the IRS's longstanding general treatment of the Johnson Amendment—that the Johnson Amendment does not reach a narrow category of speech: "speech by a house of worship to its congregation in connection with religious services through its customary channels of communication on matters of faith, concerning electoral politics viewed through the lens of religious faith." ECF 35-1 at 3-4.

1

AU disagrees with the narrow Proposed Consent Judgment, preferring that the IRS instead enforce the Johnson Amendment against Plaintiff Churches based on that speech. AU can set out that disagreement in the amicus brief this Court already has authorized. ECF 42. But there is neither need nor basis for intervention here, particularly by an interest advocacy group seeking to undermine the decisions of the democratically accountable Legislative and Executive branches.

*First*, AU cannot intervene because it lacks Article III standing to challenge the Proposed Consent Judgment. AU has no legally cognizable interest in seeking to compel the Government to enforce the Johnson Amendment against third parties consistent with *its* understanding of what the law requires. *Second*, AU fails the other requirements for mandatory intervention. Again, AU has no cognizable interest in the Proposed Consent Judgment and will not be prejudiced absent intervention. Nor has AU shown that the Government inadequately represents its interest in defending the Johnson Amendment and that intervention is timely. *Last*, AU has not shown that permissive intervention is warranted. AU has no claim or defense justifying intervention. Allowing AU to intervene would require both the Court and the Parties to expend more time and resources on a case that has effectively been resolved. Intervention would also be unduly burdensome because the Court has already granted AU leave to file an amicus brief.

## BACKGROUND

This lawsuit concerns Section 501(c)(3) of the Internal Revenue Code, which provides for effective subsidies—in the form of a tax exemption and deductible donations for donors—to qualifiying organizations. 26 U.S.C. §§ 170, 501(c)(3); ECF 20. Specifically, it concerns the so-called Johnson Amendment that conditions Section 501(c)(3) status on qualifying organizations' refraining from "participat[ing]" or "interven[ing]" in a "political campaign" for or against a candidate for public office. The four Plaintiffs—two religious organizations and two churches—

filed this lawsuit in August 2024. Plaintiffs assert claims under the First and Fifth Amendments and the Religious Freedom Restoration Act and seek declaratory and injunctive relief that would wholly preclude enforcement of the Johnson Amendment. ECF 20 at 46–57.

The Parties have now reached a tentative settlement, conditioned on entry of the Proposed Consent Judgment. ECF 35, 35-1. The Parties stipulate to dismissal of all claims by all Plaintiffs—including the broad facial attacks seeking wholesale invalidation of the Johnson Amendment—to the extent those claims are not resolved by the Proposed Consent Judgment. ECF 35 at 4–5.

The Proposed Consent Judgment, in turn, would enjoin the Government from enforcing the Johnson Amendment against the two Church Plaintiffs based on a narrow, clearly defined category of speech: "speech by a house of worship to its congregation in connection with religious services through its customary channels of communication on matters of faith, concerning electoral politics viewed through the lens of religious faith." ECF 35-1. The Consent Judgment offers three reasons in support of the conclusion that the Johnson Amendment does not reach such speech. *First*, the statutory text most plainly read does not reach the sort of intimate communications involved when a house of worship speaks to its congregation during the course of worship services concerning matters of faith, including their intersection with political concerns. ECF 35 at 2–3. *Second*, this interpretation is in keeping with the IRS's general non-enforcement of the Johnson Amendment against such speech.[1] *Id.* at 3. *Finally*, constitutional avoidance counsels in favor of an interpretation of the Johnson Amendment that would not reach such speech. *Id.* at 3–4.

---

[1] AU has long urged stronger enforcement of the Johnson Amendment against such speech. *See* ECF 37-1 (detailing examples of calling for enforcement); *IRS Must Investigate Pastor Greg Locke For Partisan Political Remarks From Pulpit That Violate Johnson Amendment*, Am. United (May 16, 2022), https://tinyurl.com/592swshh; Rob Boston, *IRS, Please Take Note: Americans Don't Want Partisan Politics in Houses of Worship.*, Am. United (Nov. 3, 2022), https://tinyurl.com/ynje4s6x ("It's time for the IRS to enforce the law."); *Priest Tells Wisc. Voters*

After the Parties filed their Joint Motion, AU filed its motion to intervene as a defendant or, in the alternative, for leave to file an amicus brief. ECF 37 at 5. AU does not suggest that it wishes to engage in more political speech; rather, AU seeks to advance its understanding of the Johnson Amendment and to have it enforced against the speech that would be protected by the Proposed Consent Judgment. *See* ECF 37 at 5. AU also seeks to intervene more broadly to "vindicate" the Johnson Amendment. *Id.* To that end, AU filed a purported "Intervenor-Defendant's Answer" addressing all of Plaintiffs' claims. ECF 38.

On July 17, 2025, this Court granted AU's unopposed motion for leave to file an amicus curiae brief opposing the Proposed Consent Judgment. ECF 42.

## ARGUMENT

This Court should deny AU's motion for intervention. AU lacks Article III standing to challenge the Proposed Consent Judgment. It further fails the requirements for mandatory intervention because (i) it has no cognizable interest in this action and thus would not be prejudiced by entry of the Proposed Consent Judgment, and (ii) its motion is untimely. Permissive intervention should be denied for similar reasons, and because it would run counter to judicial economy and would be unduly burdensome.

### A.    AU LACKS ARTICLE III STANDING.

**1.**    AU's Motion should be denied because it lacks standing. The Supreme Court has made clear that "an intervenor of right must have Article III standing in order to pursue *relief that is different from that which is sought by a party with standing.*" Town of Chester, N.Y. v. Laroe

---

*Not To Support Pro-Choice Judge In Election*, Am. United (May 1, 2023), https://tinyurl.com/mbdh3s7j (criticizing priest for imploring members at mass not to vote for pro-choice candidate); Rob Boston, *Texas 'Cowboy' Pastor Rustles Up A Blatant Violation Of Johnson Amendment*, Am. United (Oct. 20, 2020), https://tinyurl.com/3wy6km5m (highlighting purported violation of pastor who spoke about candidates in worship service).

*Ests.*, 581 U.S. 433, 440 (2017) (emphasis added). And, to the extent it seeks a result different from the parties to the litigation, a proposed permissive intervenor must also prove Article III standing. *See Cross Sound Cable Co. v. Long Island Lighting Co.*, 2022 WL 247996, at *9 (E.D.N.Y. Jan. 27, 2022) (collecting cases); *W. Virginia v. U.S. Dep't of Treasury*, 571 F. Supp. 3d 1229, 1247 (N.D. Ala. 2021) (noting that *Laroe Estates*'s reasoning extends to permissive intervention); *United States v. Bayer Cropscience LP*, 2018 WL 3553413, at *9 (S.D.W.V. 2018); *Seneca Res. Corp. v. Highland Twp.*, 2017 WL 4171703, at *6 (W.D. Pa. 2017). AU seeks relief that is different from the Parties: where the Parties seek entry of the Proposed Consent Judgment barring enforcement of the Johnson Amendment against the two Church Plaintiffs for a narrow class of speech, ECF 35-1, AU seeks rejection of the Proposed Consent Judgment and thus enforcement of the Johnson Amendment against those Church Plaintiffs for the same speech, ECF 37 at 5, 8.

AU lacks Article III standing to seek that relief. While AU purports to advance the interests of all Americans, the Supreme Court has made clear that it is the Executive Branch, not AU, who directs enforcement of federal laws. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021) ("Private plaintiffs are not accountable to the people and are not charged with pursuing the public interest in enforcing a defendant's general compliance with regulatory law."). Indeed, it is well-settled that a desire to see the law enforced against someone else does not qualify as a cognizable injury for purpose of Article III standing. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution."); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021) (noting that enforcement priorities are "within the discretion of the Executive Branch," not "private plaintiffs (and their attorneys)"). Relatedly, it is equally well-settled that a would-be litigant has no standing to challenge someone else's tax-exempt status. *See Allen v.*

*Wright*, 468 U.S. 737 (1984), *abrogated on other grounds by Lexmark Int'l v. Static Control Components*, 572 U.S. 118, 126 (2014); *Fulani v. Brady,* 935 F.2d 1234, 1331 (D.C. Cir. 1991); *In re U.S. Cath. Conf.*, 885 F.2d 1020, 1031 (2d Cir. 1989). AU may not stand in the shoes of the Government "to vindicate federal law." ECF 35 at 5. That duty belongs solely to the Executive Branch—not an interest group.

Further, a non-settlor lacks standing to object to a settlement unless it can demonstrate that the settlement will cause it "plain legal prejudice." *See LeBlanc v. Texas Brine Co.*, 989 F.3d 359, 364 (5th Cir. 2021) (collecting cases); *In re M/T Stolt Flamenco*, 2023 WL 1967952, at *2 (S.D. Tex. Feb. 13, 2023). The "plain legal prejudice" standard is more stringent than the injury-in-fact requirement: "[m]ere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice." *Agretti v. ANR Freight Sys.*, 982 F.2d 242, 246 (7th Cir. 1992). "That level exists only in those rare circumstances when, for example, the settlement agreement *formally* strips a non-settling party of a legal claim or cause of action, . . . invalidates a non-settling party's contract rights, or the right to present relevant evidence at trial." *Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014). AU cannot show that it will suffer "plain legal prejudice" from the settlement and Proposed Consent Judgment, because they do not affect AU at all—and certainly not in any legally cognizable way.

**2.** AU has not offered any justification for disregarding the settled law foreclosing its standing and, thus, its request for intervention. *First*, contrary to AU's contention, it is not freed from the requirement to show Article III standing simply because it seeks to intervene as a defendant. ECF 37 at 11 n.2. In *Town of Chester*, the Supreme Court held that "an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." 581 U.S. at 439. If there was ever doubt about whether the Article III standing

requirement applied to would-be intervenor defendants, the Supreme Court removed it in *Little Sisters of the Poor v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020), where the Court applied the *Town of Chester* framework to an intervenor-defendant who sought to defend a federal rule. Other courts have rightly followed suit, requiring would-be intervenors to show standing when they seek a result not sought by the preexisting parties. *See Cal. Steel Indus. v. United States*, 48 F.4th 1336, 1342 (Fed. Cir. 2022) ("[W]here a party tries to intervene as another defendant, that defendant-intervenor must demonstrate Article III standing."); *Cal. Dep't of Toxic Substance Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022) (requiring Article III standing for intervenor-defendant who sought "relief that no existing party to the case seeks"); *DeOtte v. Azar*, 332 F.R.D. 173, 179 (N.D. Tex. 2019) (O'Connor, J.) (same, for intervenor seeking to defend a federal rule and compel enforcement against a class of plaintiffs), *rev'd on other grounds* 20 F.4th 1055 (5th Cir. 2021)[2]; *see also Inst. Shareholder Servs. v. SEC*, 2025 WL 1802786, at *4 n.3 (D.C. Cir. 2025) ("Intervenors seeking relief broader than or different from that sought by existing parties must possess constitutional standing."). Were it otherwise, intervenor-defendants would have free rein to invoke the power of the courts, opening up a large hole in the Article III requirements defining the jurisdiction of the federal courts.

*Second*, AU cannot satisfy Article III by reframing its request for relief as a plea for supposedly equal treatment. AU does not even seek to endorse candidates. To the contrary, AU seeks to mandate enforcement of (its understanding) of the Johnson Amendment against others, which, as already discussed, is not a cognizable injury capable of creating standing. Adding an argument about unequal treatment does nothing to change that, as confirmed by the cases holding

---

[2] *But see Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 939 n.3 (N.D. Tex. 2019) (O'Connor, J.) (concluding intervenor-defendants need only prove standing if they add a formal claim).

that a party lacks standing where he has not personally sought a benefit allegedly withheld on a discriminatory basis. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–67 (1972) (plaintiff lacked standing to challenge club's discriminatory membership policy where he had not sought to become a member); *Albuquerque Indian Rts. v. Lujan*, 930 F.2d 49, 56 (D.C. Cir. 1991) (plaintiffs lacked standing to challenge failure to extend Indian hiring preferences into job categories for which they never applied); *Doe v. Blum*, 729 F.2d 186, 189–90 (2d Cir. 1984) (plaintiffs who never requested family planning services may not challenge Medicaid distribution procedures). Were it otherwise, would-be litigants could enlist the courts in general government oversight, violating core tenets of Article III and undermining the Executive Branch's constitutional power over execution of the law. U.S. Const., art. II (vesting the executive power in the President); *id.* art. III (limiting the judicial branch's authority to "cases" or "controversies"); *see, e.g.*, *In re Gee*, 941 F.3d 153, 161 (5th Cir. 2019) (standing requirements ensure that "courts are not roving commissions assigned to pass judgment on the validity of" governmental action (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11 (1973))).

*Finally*, AU fares no better with its real argument: that the Proposed Consent Judgment would "interfere with its mission-driven work." ECF 37 at 5. That could not possibly be true, because the settlement and Proposed Consent Judgment do nothing to stop AU from continuing its self-proclaimed mission of seeking to "preserve the separation of church and state." *Id.* More fundamentally, however, AU's preference for a different outcome in this litigation—one that would advance its preferred policy agenda—is nothing more than a policy disagreement that is insufficient to create organizational standing. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) ("Like an individual, an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, no

matter how longstanding the interest and no matter how qualified the organization."). In other words, AU's desire to counter the Government's position is nothing more than a "generally available grievance." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–74 (1992).[3]

This Court has cleared the way for AU to express its views in an amicus brief. AU lacks the standing required to go further and intervene in this case.

### B.  AU HAS NOT MET THE REQUIREMENTS FOR INTERVENTION AS A MATTER OF RIGHT.

Under Rule 24, a court "must permit anyone to intervene who ... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Courts "must be circumspect about allowing intervention of right by [the] public-spirited" in suits by or against a public entity for reasons of expediency and judicial economy. *Purl v. HHS*, No. 24-cv-228, 2025 WL 1117477, at *3 (N.D. Tex. Apr. 15, 2025). To intervene of right under Rule 24(a)(2), an applicant must meet the following prerequisites: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit. Failure to satisfy any one

---

[3] Similarly, AU fails the other two requirements of Article III. AU's injury, purported unequal treatment, is not traceable to the proposed consent judgment but instead to a longstanding application of the Johnson Amendment. *See Bennett v. Spear,* 520 U.S. 154, 168–69 (1997). Further, even if AU obtained the result they want in this case, it would not redress their complaint about the scope of the IRS's enforcement of the Johnson Amendment. *See Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) ("It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability.").

requirement precludes intervention of right. *See Taylor Comms. Grp., Inc. v. Sw. Bell Tel. Co.*, 172 F.3d 385, 387 (5th Cir. 1999). AU fails at every step.

### 1) *AU does not have a cognizable interest in this action.*

To demonstrate an interest relating to the property or transaction that is the subject matter of the litigation sufficient to support intervention of right, AU must have a "direct, substantial, legally protectable interest in the proceedings … that the substantive law recognizes as belonging to or being owned by the applicant." *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996). AU never clearly defines its asserted interests, but it is clear that, for all of the reasons discussed above in Part A, AU has no direct, substantial, legally protectable interest in this case.

General interest in the Johnson Amendment or the outcome of this case does not suffice. "[A]n intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons; that would-be intervenor merely *prefers* one outcome to the other." *Texas v. United States,* 805 F.3d 653, 657 (5th Cir. 2015); *accord Northland Family Planning Clinic v. Cox*, 487 F.3d 323, 345 (6th Cir. 2007) (rejecting intervention by public interest group that had "only an ideological interest in the litigation" and where "the lawsuit [did] not involve … regulation of [the organization's] conduct in any respect"). In this respect, AU stands in contrast to the intervenors in *Houston v. Am. Traffic Sols., Inc.*, 805 F.3d 653, 659 (5th Cir. 2015). There, the proposed intervenors had engineered a drive that led to the city charter that was being challenged in court, so the Fifth Circuit held they had a "unique" interest "in cementing their electoral victory and defending the charter amendment themselves." *Id.* But AU has no such nexus to the Johnson Amendment. Its interest is only in a particular approach to enforcement of an existing law—by definition an ideological interest. Nor does AU have a direct, substantial, and legally protected interest in the Proposed Consent Judgment—again, for the same reasons AU

lacks Article III standing.[4] The Proposed Consent Judgment neither costs AU money, nor otherwise harms its economic interests, nor deprives it of a benefit. If AU's interest in this case qualifies as a sufficient interest for intervention of right, that requirement has no limit—a result which would improperly open the floodgates by allowing an ideological organization to intervene of right in any litigation where the Government has taken a position it dislikes or in which a law it cares about is at issue. That is not the law. *See, e.g.*, *LUPE v. Abbott*, 2021 WL 5410516, at * 2 (W.D. Tex. 2021).

The insufficiency of AU's interest is underscored by the limited scope of the Proposed Consent Judgment. Consistent with the recent decision in *Trump v. CASA, Inc.,* No. 24A884, 145 S. Ct. 2540 (2025), the Proposed Consent Judgment extends relief only to the two Church Plaintiffs in this case. While AU may dislike the legal basis for the Proposed Consent Judgment, disagreement with a party's legal position as expressed in a non-precedential consent judgment limited to two parties cannot reasonably qualify as a "direct" and "substantial" interest (even assuming contrary to law that it is legally protectable). *See Texas v. United States*, 805 F.3d at 657–58; *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) ("[I]ntervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought.").

---

[4] As Professor Caleb Nelson has explained, properly interpreted, Rule 24(a) requires much more than an injury-in-fact; it also requires that the party demonstrate that it has a formal "legal right"— a formal cause of action or defense that could be asserted in a current or impending lawsuit—that is at stake in the litigation. *Intervention*, 106 Va. L. Rev. 271, 290, 386 (2020). To the extent current precedent adopts a more capacious definition of "interest" under the Rule, Defendants preserve this argument for appeal. But AU's motion should be denied even under a more capacious test because, as discussed above, all of the potential "interests" that AU might be asserting (it does not articulate its position clearly) have been held non-cognizable.

### 2) *AU would not be prejudiced in its ability to protect its interest without intervention in this matter.*

AU offers only a bare assertion that its ability to protect its interests would be impaired by entry of the Proposed Consent Judgment. ECF 37 at 12. The Court should deny intervention for that reason alone. *See Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021) ("A would-be intervenor bears the burden to prove an entitlement to intervene."). In any event, that assertion is false: AU is not impacted in any way by the narrow Proposed Consent Judgment applicable to only two parties, which neither requires any action on AU's part, nor costs AU money, nor deprives AU of any benefit or opportunity. *See supra* Parts A and B.1.

### 3) *AU's interest is adequately represented.*

A party seeking to intervene must establish "that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). "[W]hen the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor], a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity." *Edwards*, 78 F.3d at 1005. To overcome that presumption, the intervenor must show "that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it]." *Id.* (citation omitted); *accord* 7C Wright & Miller's Federal Practice & Procedure § 1909. And in "a suit involving a matter of sovereign interest, the State is presumed to represent the interests of all of its citizens." *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994).

To the extent AU's claimed interest is in general defense of the Johnson Amendment, its interests are adequately represented by the Government. From the outset of this case, the Government has defended the Johnson Amendment, as Plaintiffs acknowledge. And the Government will continue to do so if the Court declines to enter the Proposed Consent Judgment.

Contrary to AU's suggestion, ECF 37 at 13, an acknowledgement of the nature of Plaintiffs' claims does not in any way suggest that the Government will not "substantively defend" the Johnson Amendment. When it comes to defense of the Johnson Amendment, the Government's interests are the same as AU's interests—and the Government will continue to vigorously defend those interests if the Court rejects the Proposed Consent Judgment.

Insofar as AU's interest is in opposing the Proposed Consent Judgment, AU's participation as amicus suffices. As the Fifth Circuit has explained, "when he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." *Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 553 (5th Cir. 1985).

### 4) *AU's motion for intervention is not timely.*

Finally, AU's motion is not timely because it seeks to jump into a case at the last minute and disrupt a narrow settlement based on longstanding application of the Johnson Amendment. The Fifth Circuit has articulated four factors to evaluate timeliness: (1) time during which an intervenor knew or should have known of his interest in the case; (2) prejudice to existing parties in the litigation as a result of delay in intervention; (3) prejudice to the intervenor upon denial; and (4) unusual circumstances. *Edwards*, 78 F.3d at 1000. AU's motion is untimely for several reasons.

First, this case has been pending for nearly a year. AU has been following this case from the beginning, as confirmed by its press release.[5] AU claims it only became aware of its interest upon filing of the proposed consent judgment because "Defendants announced a new, narrower interpretation of the Johnson Amendment and appeared to concede that enforcement … against certain plaintiffs might be unconstitutional." ECF 37 at 10. The facts belie that claim.

---

[5] *Religious Broadcasters seek to overturn 'no-politicking' rule.*, Am. United (Oct. 1, 2024), https://tinyurl.com/y56drs3f.

As explained in the Joint Motion (ECF 35 at 3), the Parties' interpretation is consistent with the IRS's longstanding treatment of the Johnson Amendment in practice. President Trump's 2017 Executive Order confirmed that treatment would continue. Executive Order 13798 (May 9, 2017). That Executive Order has been in force for nearly ten years and recognizes an approach to the Johnson Amendment that predates it. What's more, AU has routinely and unsuccessfully advocated for enforcement of the Johnson Amendment against speech during worship services. *See, e.g.*, *supra* at 3, n.1. AU was on notice that the government was not applying the Johnson Amendment to a narrow category of speech during worship services but waited to intervene in this lawsuit until the eve of final judgment.

AU is attempting to parachute in at the last minute to disrupt a carefully negotiated settlement between the Parties. AU, on the other hand, will not be prejudiced if it is not allowed to intervene. The proposed consent judgment only applies to the parties and has no effect on AU's interests. AU's desire to be heard on legal issues can be satisfied by AU's amicus brief—to which the Parties consented and which this Court has now allowed. Finally, there are no unusual or mitigating circumstances warranting late-stage intervention.

*	*	*

In sum, AU has not met any of the four requirements for intervention as of right.

### C.	THIS COURT SHOULD DENY PRESMISSIVE INTERVENTION.

To intervene by permission, a would-be intervenor must "timely" move, and demonstrate that it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). And even when the proposed intervenor satisfies all prerequisites, the district court still has discretion to deny permission to intervene, *see Louisiana v. Burgum*, 132 F.4th 918, 923 (5th Cir. 2025), and it may deny permission to intervene based on the same factors supporting

14

denial of leave to intervene as of right, *see United States v. U.S. Virgin Islands*, 748 F.3d 514, 524–25 (3d Cir. 2014). The Court should deny AU's motion for permissive intervention for all of the same reasons it should deny AU's motion to intervene as of right. Moreover, the Court should deny permissive intervention for three additional reasons.

*First*, AU does not purport to have or assert a "claim" and it does not, and cannot, assert a "defense" within the meaning of Rule 24(b). Under the Federal Rules, a "defense" is "a particular type of legal argument that the targets of a claim assert to explain why the court should not grant relief against them." Caleb Nelson, *Intervention*, 106 Va. L. Rev. 271, 274 (2020) (citing Fed. R. Civ. P. 8(b)(1)(A)); *accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997). AU cannot assert a defense here because Plaintiffs do not assert a claim against it and AU has identified no scenario in which anyone could assert a relevant claim against it. With neither a "claim" nor a "defense," AU cannot satisfy the requirements for intervention under Rule 24(b).

*Second*, intervention here would run counter to judicial economy. After a year of litigation, the parties have reached a narrow resolution of all claims, based on a well-reasoned reading of the statute. A rejection of the settlement will cause the Parties to have to expend significant time and resources in this matter that they otherwise would not be spending.

*Third*, intervention would be unduly burdensome. Fed. R. Civ. P. 24(b)(3). This Court has already granted AU leave to file an amicus brief presenting its objections to the Proposed Consent Judgment. There is therefore no reason to allow AU to intervene as a party, and doing so would unduly complicate this litigation. *See Burgum*, 132 F.4th at 923–24.

For these reasons, this Court should deny permissive intervention.

## **CONCLUSION**

For the foregoing reasons, the Court should deny AU's Motion to Intervene.

       /s/ Jonathan L. Blacker
JONATHAN L. BLACKER
Texas Bar No. 00796215
Senior Litigation Counsel
Tax Division
U.S. Department of Justice
1700 Pacific Avenue, Suite 3700
Dallas, Texas 75201
(214) 880-9765
(214) 880-9741 (FAX)
Jonathan.Blacker2@usdoj.gov

ATTORNEY FOR THE UNITED STATES

## CERTIFICATE OF SERVICE

I certify that on July 24, 2025, I electronically filed this document via the Court's ECF system, which will send notice of such filing to all counsel of record entitled to ECF notice.

       /s/ Jonathan L. Blacker
JONATHAN L. BLACKER