**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

|  |  |
|---|---|
| NATIONAL RELIGIOUS BROADCASTERS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BILLY LONG*, in his official capacity as* COMMISSIONER OF THE INTERNAL REVENUE SERVICES, *et al.*, <br><br><br> *Defendants*. | Civil Action No. 6:24-cv-00311 |

## <u>PROPOSED INTEVENOR'S REPLY IN SUPPORT OF OPPOSED MOTION TO INTERVENE</u>

1

**INTRODUCTION**

Proposed Intervenor Americans United for Separation of Church and State ("AU") has the right to intervene in the present litigation. In opposing intervention, Plaintiffs and Defendants (together, "Parties") misrepresent AU's reasons for intervening, as well as the nature and scope of the Proposed Consent Decree, ECF No. 35-1. As a Section 501(c)(3) organization subject to the "Johnson Amendment," AU has an interest in being treated equally under the tax code. In the wake of a Proposed Consent Decree, ECF No. 35-1, that would deprive AU of equal treatment, AU seeks to intervene to defend its interests for the duration of litigation. The Court should grant its request.

**ARGUMENT**

I.    **Standing Is Not an Obstacle to Intervention.**

A.  **AU Does Not Need to Demonstrate Independent Standing Because It Is Not Seeking Different Relief from the Existing Parties.**

Contrary to Defendants' assertions, *see* Defs.' Opp'n Mot. Intervene 2, 6, ECF No. 46, AU does not need independent standing to intervene. As a proposed defendant-intervenor, AU is not required to demonstrate standing in same way that a party bringing claims would. *See Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 938 n.3 (N.D. Tex. 2019) (interpreting *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433 (2017) as requiring standing for certain plaintiff-intervenors and not for defendant-intervenors). Article III standing is required of intervenors seeking "different" or "additional" relief from parties with standing in the case. *Town of Chester v. Laroe Ests. Inc.*, 581 U.S. 433, 439–40 (2017). But "'relief' is linked to affirmative claims, not defenses." *Franciscan All., Inc.*, 414 F. Supp. 3d at 938 n.3. In asking the Court to reject the Proposed Consent Decree and Plaintiffs' underlying claims, AU is not raising an affirmative claim, nor is it requesting specific declaratory or injunctive relief.

2

Ultimately, AU seeks dismissal of Plaintiffs' claims and of this lawsuit in its entirety. The Government plainly has "standing" to seek the same "relief," to the extent that such terms can properly be applied to a district court defendant. As a result, AU is not seeking "additional relief" beyond what Defendants are seeking, and it need not demonstrate independent standing. *See Laroe Ests.*, 581 U.S. at 439; *see also Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 673, 674 n.6 (2020) (lower court "erred by inquiring into [defendant-intervenor's] independent Article III standing" because the government had standing to appeal and similarly sought to reverse the district court's injunction).[1]

## B.  Even if Standing Were Required, AU Would Qualify.

Even if Article III standing were required in this case, AU would qualify. If the Proposed Consent Decree goes into effect, or if the Court otherwise disposes of this lawsuit in a manner that exempts religious organizations from the Johnson Amendment, AU will suffer an injury in fact. Under such an order, houses of worship and/or other religious nonprofits would be allowed to endorse political candidates while retaining their Section 501(c)(3) status, but secular nonprofits like AU would not. This disparate treatment is harm sufficient to support standing. *See Freedom From Religion Found., Inc. v. Shulman*, 961 F. Supp. 2d 947, 950–51 (W.D. Wisc. 2013) (policy of enforcing the Johnson Amendment against secular nonprofits, but not religious ones, would constitute "disparate treatment" and amount to "an injury in fact").

---

[1] Indeed, if Defendants are *not* opposed to and in principle seeking dismissal of Plaintiffs' claims, this would be suggestive of improper collusion between the Parties. *See* Br. Amicus Curiae of Ams. United Opp'n Consent J. 24, ECF No. 48. It would leave the Court with no actual controversy to adjudicate, transforming the Proposed Consent Decree into a request for an advisory opinion. *See also id.* at 10–20 (no actual controversy exists where the IRS has not enforced or threatened to enforce the Johnson Amendment against Plaintiffs and has disavowed any intent to do so).

The Parties are wrong to suggest that AU has no interest in engaging in conduct that is proscribed by the Johnson Amendment. *See* Defs.' Opp'n 7; Pls.' Opp'n Mot. Intervene 3–4, ECF No. 43. Like the Plaintiff churches, AU has longstanding members with whom it regularly communicates and with whom it might wish to share views about political candidates. *See* Amicus Br. 31, ECF No. 48. AU refrains from sharing those views because of the Johnson Amendment. *See* Part II.A, *infra.* The Proposed Consent Decree (or a similar Court order) would thus deprive AU of a valuable benefit and subject it to disfavored treatment vis-à-vis religious organizations. *See, e.g.*, *Freedom From Religion Found.*, 961 F. Supp. 2d at 951.[2] AU's commitment to and longstanding history of advocacy around the Johnson Amendment, *see* Mot. to Intervene 8, 11–12, ECF No. 37, further underscore that AU has a "particular interest" in this litigation. *See City of Houston v. Am. Traffic Solutions, Inc.*, 668 F.3d 291, 294 (5th Cir. 2012).

Defendants insist that AU lacks standing to challenge the Proposed Consent Decree, specifically, because the Decree only enjoins application of the Johnson Amendment as to the Plaintiff churches. *See* Defs.' Opp'n 3. But as AU has explained, the Decree contains broad legal conclusions about the Johnson Amendment that are not cabined to the specific Plaintiffs. *See* Mot. Intervene 7; Amicus Br. 9. Already, the Proposed Consent Decree has been publicly perceived as allowing all houses of worship to endorse or oppose political candidates. *See, e.g.*, Elizabeth Dias & David A. Fahrenthold, *How Conservative Christians Cracked a 70-Year-Old Law*, N.Y. Times (July 30, 2025), https://bit.ly/4mlPWPh; Amicus Br. 9 & n.2. Once it is entered, the Decree will bear the Court's imprimatur and operate as an adjudication. *Ibarra v. Tex. Emp. Comm'n,* 823 F.2d

---

[2] If, as Defendants argue, AU lacks standing to intervene because it has not actually engaged in conduct that violates the Johnson Amendment, *see* Defs.' Opp'n 7–8, then Plaintiffs similarly lack standing to pursue their claims, *see* Amicus Br. 17–20. The Court would be obliged to dismiss this case and the question of intervention would be moot.

873, 878 (5th Cir. 1987). The Government would be hard pressed to argue that the legal conclusions in the Decree are not equally applicable to other houses of worship.

Moreover, the "category of speech" permitted by the Proposed Consent Decree is neither "narrow" nor "clearly defined." *Contra* Defs.' Opp'n 3. The phrase "speech by a house of worship to its congregation, in connection with religious services through its customary channels of communication on matters of faith, concerning electoral politics viewed through the lens of religious faith," *see* Proposed Consent Decree ¶ 6, is facially ambiguous and could potentially reach a wide array of speech—including contexts that are analogous to AU's communications with its members. *See* Amicus Br. 27, 31. In short, the Proposed Consent Decree would subject AU to disfavored treatment under the Johnson Amendment as compared with houses of worship.

Relying exclusively on private settlement agreements—none of which involved government defendants, proposed intervenors, or a court-ordered consent decree—Defendants incorrectly argue that AU must make a heightened showing of injury to object to the Proposed Consent Decree. *See* Defs.' Opp'n 5. On the contrary, courts are particularly scrupulous about third parties' rights in the context of consent decrees. *See* Amicus Br. 20. Where a consent decree has even "the potential to affect third parties," the court must find that the "effect on third parties is neither unreasonable nor proscribed." *Williams v. City of New Orleans*, 729 F.2d 1554, 1560 (5th Cir. 1984) (citation modified). Accordingly, the Fifth Circuit has permitted intervention for the express purpose of challenging a proposed consent decree without requiring a heightened showing of standing. *See, e.g.*, *Edwards v. City of Houston*, 78 F.3d 983, 989, 1006 (5th Cir. 1996) (granting intervention under Rule 24(a)). And even if Defendants were correct that AU must show "plain legal prejudice" in order demonstrate injury, *see* Defs.' Opp'n 6, deprivation of equal treatment

5

under the law—a harm of constitutional dimensions—must surely constitute such prejudice. *See Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984).

AU easily satisfies the remaining prongs of the standing inquiry: causation and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The harm at issue—disparate treatment under the Johnson Amendment—would stem from the Proposed Consent Decree or a similar order of this Court and not, as Defendants' claim, from the IRS's "longstanding application of the Johnson Amendment." *See* Defs.' Opp'n 9 n.3. While it is true that "the IRS generally has not enforced the Johnson Amendment against houses of worship for speech concerning electoral politics in the context of worship services," *see* Proposed Consent Decree ¶ 4, the IRS has nonetheless treated houses of worship and secular nonprofits comparably. The 2017 Executive Order that the Parties cite as evidence of the IRS's practices directs the IRS not to enforce the Johnson Amendment against houses of worship "where speech of similar character has, consistent with law, not ordinarily been treated as participation o[r] intervention in a political campaign." Proposed Consent Decree ¶ 4 (quoting Exec. Order No. 13798, 82 Fed. Reg. 21675, 21675 (May 4, 2017)). Up to this point, it has been the IRS's avowed practice to treat religious and nonreligious organizations equally. The Proposed Consent Decree would extend preferential treatment to houses of worship. It is this change that would give rise to the harm of disparate treatment.[3] A court order denying Plaintiffs' claims or otherwise dismissing this lawsuit would prevent this specific harm and restore the status quo.

---

[3] While the IRS's history of nonenforcement against houses of worship does not impact AU's standing, it does show that Plaintiffs are not at "imminent risk" of enforcement and thus lack standing to pursue this lawsuit. *See* Amicus Br. 16–20.

**II.      AU Is Entitled to Intervene Under Federal Rule of Civil Procedure 24(a).**

**A.  AU Has Legally Protectable Interests That May Be Impaired by Disposal of This Action, and Will Be Prejudiced If Intervention Is Denied.**

AU has "an interest 'relating to the . . . *transaction* that is the subject of [this] *action*,'" which "may," without intervention, be impaired by this Court's "disposing of the *action*." *See Texas v. U.S. Dep't of Homeland Sec.*, 754 F. Supp. 3d 713, 718 (E.D. Tex. 2024) (emphasis in original) (quoting Fed. R. Civ. P. 24(a)). The "transaction" at issue is Plaintiffs' statutory and constitutional challenge to the Johnson Amendment, both facially and as applied. For the same reasons that AU has demonstrated injury in fact for purposes of standing, *see* Section I.B, *supra*, it has demonstrated a "direct, substantial, legally protectable interest" in this case that amounts to more than a "generalized preference that the case come out a certain way," *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (reiterating, *contra* Defs.' Opp'n 11 n.4, that an interest justifying intervention need not rise to the level of standing) (citation modified). The Court's disposal of this action—whether by entry of the Proposed Consent Decree or otherwise—"may" impede AU's ability to protect that interest by creating a scheme in which churches and other religious nonprofits receive more favorable treatment than secular groups like AU. *See* Fed. R. Civ. P. 24(a)(2).

Contrary to Defendants' suggestion, AU does not seek to intervene in order to "compel the Government to enforce the Johnson Amendment against third parties," let alone to "challenge someone else's tax-exempt status." *See* Defs.' Opp'n 2, 5. Rather, AU seeks intervention to: (1) prevent the Parties from carving out a prejudicial exception to this law that would negatively impact AU; and (2) ensure that religious and secular organizations, including AU, are treated equally under the Johnson Amendment. While AU may desire more stringent enforcement of the Johnson Amendment as a policy matter, it recognizes that, as a legal matter, the IRS has reasonable discretion in deciding whether and when to enforce the Johnson Amendment against a particular

nonprofit organization or house of worship. *See* Amicus Br. 17; *see also* 26 U.S.C. § 7611(a) (describing when the IRS "may" begin an inquiry into a church's Section 501(c)(3) status). The IRS does not, however, have discretion to completely disregard the Johnson Amendment or to categorically interpret the Johnson Amendment as treating all houses of worship more favorably than all secular nonprofits. *See* Amicus Br. 24–27, 30–31; *see also Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 15 (1989) (government violates the Establishment Clause when it provides a tax subsidy "exclusively to religious organizations" that is not constitutionally required and cannot "reasonably be seen as removing a significant state-imposed deterrent" to religious exercise).

Although AU believes the Johnson Amendment serves a critical purpose and should be enforced equally against all nonprofits, *see* Mot. Intervene 6, it also recognizes that political campaigning as a Section 501(c)(3) might benefit it under certain circumstances, *see* Section II.B, *supra.* AU wishes to defend the Johnson Amendment *and* it objects to having its conduct restricted in ways that comparable religious organizations do not. These positions are not inconsistent, *contra* Pls.' Opp'n 4. Imagine, for example, that a government announced its intent to exempt Christians—but no one else—from driving under the speed limit. An atheist who generally supports speed limits as a vital protection for public safety might nonetheless object to this discriminatory treatment. Even if the atheist would prefer for everyone to abide by the speed limit, he too might sometimes benefit from speeding; it is thus unfair that a Christian could avail themselves of this benefit while the atheist could not. The atheist could properly seek to vindicate his right to equal treatment by seeking equal enforcement of the law to everyone. *See Heckler*, 465 U.S. at 740 ("[W]hen the 'right invoked is that of equal treatment,' the appropriate remedy is a mandate of *equal* treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." (emphasis in original)

8

(quoting *Iowa-Des Moines Nat'l Bank v. Bennet*, 284 U.S 239, 247 (1931)). The Proposed Consent Decree places AU in a similar position.[4]

Absent intervention, AU may be prejudiced by the outcome of this litigation, whether or not the Court enters the Proposed Consent Decree. An amicus brief opposing entry of the Proposed Consent Decree does not sufficiently allow AU to protect its rights, *contra* Pls.' Opp'n 2; Defs.' Opp'n 9. If the Court accepts AU's arguments and rejects the Proposed Consent Decree, but fails to dismiss the case outright, litigation (and inter-Party negotiations) will continue without ongoing involvement from AU. Based on the positions Defendants take in the Proposed Consent Decree, AU has reason to believe that the Government may not oppose certain types of challenges that, if sustained, could cause AU to experience disparate treatment. *See* Section II.B, *infra*. Only as a Defendant-Intervenor can AU be sure that it will receive timely notice of developments that may affect its interests and a full opportunity to defend those interests before the Court. Indeed, Plaintiffs have sought leave to file a brief opposing AU's amicus brief, *see* ECF No. 49—an unusual step in the context of an amicus brief, and one which highlights the value of the legal questions and perspectives raised by AU.

### B.  Defendants Do Not Adequately Represent AU's Interests.

Although Defendants claim that they "will continue to" defend the Johnson Amendment if the Court rejects the Proposed Consent Decree, *see* Defs.' Opp'n 12, they have already expressed

---

[4] For similar reasons, Plaintiffs' example of a pro-life activist seeking to defend abortion laws is inapposite. *See* Pls.' Opp'n 4. A person with a deep-rooted moral objection to abortion is unlikely to seek out an abortion even if it were legal to do so; that person thus faces no risk of experiencing unequal treatment under a discriminatory abortion law. This contrast illustrates why AU's interest is not "purely ideological," *see La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (citation modified), and highlights why allowing intervention in the present case will not "open a new floodgate" of ideologically-motivated intervention, *contra* Pls.' Opp'n 4.

views that reflect a "concrete divergence in legal positions," *see Texas v. U.S. Dep't of Homeland Sec.*, No. 6:24-cv-00306, 2024 WL 4039580, at *3 (E.D. Tex. Sept. 3, 2024). For example, the Proposed Consent Decree suggests that applying the Johnson Amendment to houses of worship may violate the federal Establishment Clause, and it announces an interpretation of the Johnson Amendment that would adversely impact AU. *See* Mot. Intervene 7–8; Amicus Br. 20–31. At minimum, the Proposed Consent Decree sends a signal that Defendants "*may*" not choose to defend the Johnson Amendment against every charge leveled by Plaintiffs—including as applied-challenges involving houses of worship. *See Pueblo Enterro*, 29 F.4th at 308 (emphasis in original). This alone is sufficient to demonstrate adversity of interest under Rule 24(a). *Id.* at 308–09. AU has identified "concrete way[s] in which the government's defense of [this] case shows adversity of interest, collusion, or nonfeasance." *See Texas*, 2024 WL 4039580, at *3; Amicus Br. at 24–27. Even if Defendants have not abandoned the Johnson Amendment "*in toto*," *see* Pls.' Opp'n 8, they have abandoned it for purposes that matter to AU.

### C.  Intervention Is Timely.

As discussed in its Motion to Intervene, AU promptly intervened in this case after it became apparent that Defendants intended to take a legal position that would result in disparate treatment of secular organizations like AU. *See* Mot. Intervene at 9-10. Earlier intervention would, consistent with this Court's opinions, have been premature. *See Texas*, 2024 WL 4039580, at *4 (denying intervention where "the federal government ha[d] not announced that it [was] refusing to defend any aspect of the rule or [was] acquiescing to relief beyond that entered by the court"). As discussed above, *see* Section II.B, the IRS's prior policy of nonenforcement did not constitute notice that Defendants would inadequately represent AU, *contra* Defs.' Opp'n 14. Under the IRS's policy, religious and nonreligious organizations were still treated equally. Moreover, the Parties do not

10

explain how the three-day gap between entry of the Proposed Consent Decree and AU's Motion to Intervene caused them prejudice. *See Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) (Prejudice to the existing parties is "measured by the delay in seeking intervention, not the inconvenience . . . of allowing the intervenor to participate in  the litigation").

### III.    AU Qualifies For Permissive Intervention Under Rule 24(b).

AU qualifies for permissive intervention because it asserts defenses that "share[] with the main action a common question of law or fact." *See* Fed. R. Civ. P. 24(b)(1)(B). Defendants argue that AU cannot raise a "defense" because Plaintiffs have not alleged any claim against it, *see* Defs.' Opp'n 15, but this interpretation cannot be reconciled with Rule 24. The Parties cite no authority stating that defendant-intervenors must raise an affirmative claim for relief before courts can permit intervention under Rule 24(b). And since intervention would be unnecessary if Plaintiffs raised a claim against the would-be intervenor in the first place, Defendants' interpretation would mean that—in some cases involving defendants-intervenors—courts would be unable to *permit* intervention under Rule 24(b) even if the proposed intervenor met the requirements for *mandatory* intervention under Rule 24(a). This, of course, makes no sense. *See Texas*, 754 F. Supp. 3d at 718 ("Intervention 'of right' exists to *compel* intervention in a class of cases narrower than all cases in which intervention may be *permitted* under Rule 24(b).") (emphasis in original).

The Court should reject Defendants' remaining arguments against permissive intervention, *see* Defs.' Opp'n 15. First, Rule 24 and Fifth Circuit jurisprudence around consent decrees make clear that judicial economy is not a sufficient reason for excluding parties whose rights may be affected by pending litigation. *See* Mot. Intervene 14; Amicus Br. 20. Second, the Parties fail to explain why intervention would pose a greater burden in this case than in similar cases where intervention was granted after a consent decree was proposed. *See, e.g., Edwards*, 78 F.3d at 989.

11

Dated: July 31, 2025

Respectfully submitted,

/s/ Alexandra Zaretsky

Alexandra Zaretsky**
Bar No. 5833561 (NY)
Jessica Zalph
Bar No. DC 90017719
Rebecca Markert**
Bar No. WI 1063232
AU FOR SEPARATION
OF CHURCH AND STATE
1310 L Street NW, Suite 200
Washington, DC 20005**
zaretsky@au.org
zalph@au.org
markert@au.org
(202) 898-2145

*** Not a member of the D.C. Bar. Authorized to practice before federal courts pursuant to D.C. App. Rule 49(c)(3).*

Martin Woodward
Kitner Woodward PLC
13101 Preston Road, Suite 110
Dallas, TX 75240
martin@kitnerwoodward.com

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2025, I electronically filed this motion with the Clerk of the Court for the United States District for the Eastern District of Texas by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ Alexandra Zaretsky