

800 Maryland Avenue NE
Washington, DC 20002
Phone: (202) 543-0073

December 5, 2025

The Honorable J. Campbell Barker
United States District Court
Eastern District of Texas

Dear Judge Barker,

Plaintiffs submit the following letter brief to clarify issues raised in oral argument.

**Standard of Review for Consent Decree**

This Court has previously summarized the standard of review for consent decrees:

> The Fifth Circuit has held that proposed consent decrees are entitled to a presumption of validity. *United States v. City of Miami*, 614 F.2d 1322, 1333 (5th Cir. 1980). Indeed, to grant approval to a consent decree, a trial court need only determine that the proposed decree is "not unconstitutional, unlawful, . . . contrary to public policy, or unreasonable." *Id*.

*Sec. & Exch. Comm'n v. Reliable One Res., Inc.,* No. 6:23-CV-00006, 2023 WL 1818316, at *1 (E.D. Tex. Feb. 8, 2023). *See also U.S. v. City of Alexandria*, 614 F.2d 1358, 1362 (5th Cir. 1980) (holding that this presumption may be "overcome" by a finding that the decree violates the above-listed standards).

Accordingly, there are two levels of analysis for the proposed decree. First, legal arguments supporting the decree are reviewed under a reasonableness standard to give effect to this presumption. Second, AU's Equal Protection and Establishment Clause claims are decided under the usual rules of constitutional adjudication since opponents must "overcome" the presumption. We restate the constitutional questions presented using this approach.

*1. Is the Establishment Clause reasonably invoked by the parties to support the proffered interpretation of the Johnson Amendment?*

In *Catholic Charities Bureau, Inc. v. Wisconsin Labor & Indus. Rev. Comm'n*, 145 S. Ct. 1583, 1591 (2025), the Supreme Court struck down the state's system of allocating tax exemptions to some religious groups, but not others, based on distinctions between their religious doctrines. The proposed consent decree allows the IRS to avoid this type of constitutional infirmity by ensuring that it does not favor churches whose doctrines do not require them to apply their faith to matters of electoral politics. This approach is consistent with *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490 (1979), where the Court chose not to apply the general law to churches in

order to avoid serious questions that would otherwise arise under the Religion Clauses. *Id.* at 507."

### 2. *Does the Establishment Clause forbid the consent decree's recognition of a narrow exception from the Johnson Amendment, as claimed by AU?*

In *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327 (1987), the Supreme Court decisively rejected the notion that religious exemptions from broad general regulatory laws violate the Establishment Clause. To the contrary, the Court's church autonomy doctrine, which is grounded in part on the Establishment Clause, supports and necessitates the entry of the proposed decree. *See NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490 (1979).

### 3. *Is AU's right to equal protection violated by the proposed decree?*

The idea that religious exemptions to general laws violate equal protection was rejected by the Fifth Circuit in *Golden Glow Tanning Salon, Inc. v. City of Columbus, Mississippi*, 52 F.4th 974, 979 (5th Cir. 2022). The proposed consent decree creates a narrow exception for one particular category of church speech in order to avoid a glaring First Amendment conflict.

Moreover, AU's failure to seek judicial relief protecting its own right to speak about candidates is fatal to its equal protection argument. While the consent decree addresses only worship services, it is inaccurate to claim that the line drawn by the decree is between religious and secular organizations. All nonprofits, religious and secular alike—including churches in other contexts—must still adhere to the Johnson Amendment.

### Anti-Injunction Act

Because Plaintiffs have not violated the Johnson Amendment, this case does not involve the collection or assessment of any tax. By virtue of well-established rule, Plaintiffs need not violate the Johnson Amendment to challenge its chilling effect. *Susan B. Anthony List v. Driehaus,* 573 U.S. 149 (2014); *Turtle Island Foods SPC v. Strain,* 65 F.4th 211, 217 (5th Cir. 2023). Moreover, there is no alternative procedure to challenge the rule that does not involve a prior violation of the statute. *South Carolina v. Regan*, 465 U.S. 367 (1984).

The Court inquired about the applicability of *CIC Servs., LLC v. Internal Revenue Serv.*, 593 U.S. 209 (2021). *CIC* sets out three reasons that the challenge of an IRS rule was not prohibited by the AIA. Although it is not clearly stated, the most logical reading of this case is that the presence of any one of these elements is sufficient to avoid the application of the AIA.

First, the challenged rule in *CIC* created "affirmative reporting obligations . . . apart from the statutory tax penalty." *Id.* at 219. Here, 501(c)(3) creates a separate obligation to *refrain* from supporting or opposing candidates. Both cases involve a duty distinct from the payment of taxes.

Second, the "reporting rule and the statutory tax penalty are several steps removed from each other." *Id*. at 220. Before a tax could be imposed in *CIC*, the entity had to deliberately violate the reporting requirement; then "the IRS must determine (often no small matter) that a violation . . . had in fact occurred;" and finally, "the IRS must make the—entirely discretionary—decision to

impose a tax penalty." *Id*. "Between the upstream Notice and the downstream tax, the river runs long. So it is again hard to characterize this suit's purpose as enjoining a tax." *Id*. at 221. All three contingencies are equally present here.

Third, a violation of the challenged rule risked penalties beyond the mere imposition of a tax. In *CIC,* a criminal prosecution could follow. Here a separate civil proceeding is possible that goes far beyond tax collection. Under 26 U.S.C. § 7409, the Commissioner is authorized to initiate a civil action to obtain an injunction stopping any political expenditure and additional relief to ensure that the assets of the organization are preserved for charitable purposes. These additional penalties are not mere tax collection.

**Sovereign Immunity**

Plaintiffs fully addressed the issue of sovereign immunity in their Motion for Partial Summary Judgment. (ECF 23, 12-13.) The waiver of sovereign immunity in the APA is fully applicable. *See Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484 (5th Cir. 2014); *Shields of Strength v. U.S. Dep't of Def.*, 735 F. Supp. 3d 755, 764-66 (E.D. Tex. 2024). In addition, the parties agreed that this Court has jurisdiction over this matter in the Joint Motion for Entry of Consent Judgment (ECF 35. Para. 2). Since the waiver of sovereign immunity is a prerequisite for such jurisdiction, the government has stipulated that sovereign immunity has been waived.

**Seditious Speech "Exception" to Church Autonomy**

In oral argument, AU contended that not everything said in a church worship service is constitutionally protected, giving the example of seditious speech in a religious service. The Second Circuit addressed such a claim in *United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999). Rahman, a Muslim cleric, inspired a series of violent actions aimed at advancing Islamic jihad. Among other things, he told adherents to "make up with God" by shooting Egyptian President Hosni Mubarak while in the United States. *Id.* at 117.

Plaintiffs fully agree that speech that falls outside of the First Amendment's protection is not insulated from prosecution merely because it occurs in a religious service. But this case does not involve unprotected speech. Indeed, "[d]eliberation on the position and qualifications of candidates is integral to our system of government." *Arkansas Ed. Television Comm'n v. Forbes,* 523 U.S. 666, 676 (1998).

**Customary Channels of Communication**

Plaintiffs wish to clarify that the consent decree language concerning use of "customary channels of communication" was derived from the conceptual approach taken in 11 CFR 114.4(c)(6) and modified to fit churches rather than adopting its precise language. The goal was to achieve parity with the FEC rules.

    Respectfully submitted,
    */s/ Michael P. Farris*
    Michael Farris
    DC Bar No. 385969
    National Religious Broadcasters

800 Maryland Avenue NE
Washington, DC 20002
571-359-6000
mfarris@nrb.org

David A. Kallman
MI Bar No. P34200
Stephen P. Kallman
MI Bar No. P75622
Kallman Legal Group, PLLC
Attorney at Law
5600 W. Mount Hope Hwy.
Lansing, MI 48917
517-322-3207
dave@kallmanlegal.com
steve@kallmanlegal.com

Rita M. Peters
VA State Bar No. 46821
7586 Stoney Lick Road
Mount Crawford, VA 22841
540-830-1229
rpeters@selfgovern.com

Andrew W. Stinson
State Bar No. 24028013 Ramey & Flock, PC
100 E. Ferguson Street, Suite 500
Tyler, TX 75702
903-597-3301
astinson@rameyflock.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed Plaintiffs in the Pacer system on December 5, 2025, and that counsel for all other parties and amici will thereby be automatically served with an electronic copy.

                                                       */s/ Michael P. Farris*