UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

––––––––

No. 6:24-cv-00311

––––––––

**National Religious Broadcasters et al.,**
*Plaintiffs,*
v.
**Scott Bessent et al.,**[1]
*Defendants.*

––––––––

**O R D E R**

Now before the court is a motion to intervene filed by Americans United for Separation of Church and State ("AUSCS"), a nonprofit organization focused on the cause that its name states. Doc. 37. The court previously granted AUSCS leave to file an amicus curiae brief and to participate in oral argument, and the court will continue to consider AUSCS's arguments. Docs. 42, 91. But the court denies AUSCS's motion to intervene as a party.

**I.  Background**

This case involves a challenge to the Johnson Amendment, codified in 26 U.S.C. § 501(c)(3), which prohibits tax-exempt organizations from "participat[ing] in, or interven[ing] in . . . any political campaign on behalf of (or in opposition to) any candidate for public office," on pain of losing their tax-exempt status or lesser consequences like an excise tax on political expenditures.

Plaintiffs are two churches (Sand Springs Church and First Baptist Church Waskom) and two nonprofit organizations (National Religious Broadcasters and Intercessors for America). They claim that the Johnson Amendment violates their rights under the First Amendment's Free Exercise Clause and Free Speech Clause, under the Fifth Amendment's Due Process Clause (on vagueness and equal-protection grounds), and under the Religious

––––––––

[1] The clerk of court is directed to update the docket to reflect the automatic substitution of the defendant. *See* Fed. R. Civ. P. 25(d).

- 1 -

Freedom Restoration Act ("RFRA"). Doc. 20 at 46–55. As relief, plaintiffs seek a declaratory judgment, an injunction, and attorney's fees. *Id.* at 55–57.

Defendants are the Internal Revenue Service and its Commissioner (collectively, "the government"). The government's answer to the amended complaint generally denies its allegations, including its allegation of a waiver of sovereign immunity creating jurisdiction, its allegation that the Tax Anti-injunction Act does not apply, and its allegations of substantive violations of law.

After the government answered the first amended complaint, it joined with plaintiffs in moving the court to stay deadlines in the case because the parties reached a settlement in principle. The court granted that motion and stayed unreached deadlines.

The parties then moved the court to resolve the case, not by dismissing plaintiffs' claims upon execution of a settlement agreement, but by entry of a consent judgment. Although the government's answer to the complaint denied a waiver of sovereign immunity, and although sovereign immunity generally cannot be waived by litigation conduct, the proposed consent judgment stipulates that the court has jurisdiction. Doc. 35 at 1 ¶ 2. And although the answer asserts that the Tax Anti-injunction Act applies here, the proposed consent judgment stipulates that the court "has the power to provide the injunction with respect to the Plaintiffs." *Id.* at 2 ¶ 5.

The proposed consent judgment goes on to find that statutory text, IRS practice, and the doctrine of constitutional avoidance justify interpreting the Johnson Amendment not to reach "communications from a house of worship to its congregation in connection with religious services through its usual channels of communication on matters of faith," *id.* at 3 ¶ 9, including communications "concerning electoral politics viewed through the lens of religious faith," *id.* at 4 ¶ 10.

The parties thus jointly moved for the court to enter the proposed consent judgment "enjoining Defendants as well as their successors, agents, and employees, from enforcing the Johnson

Amendment against Plaintiff Churches" in the specified manner. *Id*. at 4 ¶ 11. Were the court to enter that injunction and the rest of the proposed consent judgment, the parties would waive appellate rights, bear their own fees and costs, and agree to dismissal with prejudice of plaintiffs' claims "not resolved by the proposed Consent Judgment." *Id*. at 4–5 ¶¶ 12–14. The unresolved claims to be released would be plaintiffs' free-speech and due-process claims, whereas their free-exercise and RFRA claims would underlie the injunction. Doc. 97 (Hr'g Tr.) at 55.

The parties confirmed that the agreed injunction would be binding only as to the government's enforcement of the Johnson Amendment against the two plaintiff churches. *Id*. at 20, 56. Plaintiffs additionally represented that the constitutional-avoidance principle in the proposed judgment was important in creating potentially persuasive judicial reasoning. *Id*. at 14–15, 56.

Numerous amici curiae filed briefs supporting or opposing the proposed consent judgment. One of them, AUSCS, also moved to intervene as a defendant (Doc. 37) and filed a proposed answer (Doc. 38) to the amended complaint. AUSCS argues that it has a legally protectible interest in the transaction at issue in this case—and that its interest goes beyond a generalized preference that this case come out a certain way—because AUSCS is itself a § 501(c)(3) organization with a right to equal treatment by the government, which it asserts would be undermined if the two plaintiff churches receive relief from one reading of the Johnson Amendment while AUSCS does not. Doc. 37 at 10–12.

The parties oppose AUSCS's intervention. They argue that how the government enforces the Johnson Amendment against AUSCS itself is not the potential transaction disputed in this lawsuit. In contrast, the parties argue, AUSCS has no personalized and legally protectible interest in how the government enforces the Johnson Amendment against the plaintiffs in this case.

The court granted AUSCS leave to participate in oral argument as amicus curiae, and AUSCS so participated. Doc. 91, 97. Now before the court is AUSCS's motion to intervene as a

defendant with the rights of a party and file its proposed answer to the amended complaint.

## II. Intervention standards

As opposed to argument as an amicus curiae, intervention in a lawsuit generally allows exercise of all procedural rights enjoyed by parties regarding discovery, dispositive motions, and trial. *See* 7C Wright & Miller's Federal Practice & Procedure § 1920 (3d ed. 2025). The intervention inquiry thus turns, not only on how a given proceeding may affect the movant's interests, but also on the effect of intervention on the public interest in the efficient resolution of cases and controversies. *See id.* § 1901.

Federal Rule of Civil Procedure 24 requires the court to grant intervention in some circumstances and permits the court to grant intervention, in its discretion, in other circumstances. First, Rule 24(a) requires that intervention be granted in two circumstances:

(a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Movants rely on the second test. Its standard for a sufficient interest in the case mirrors that of Rule 19(a)(1)(B)(i) for *required* joinder as a party. *See id.* advisory committee's note to 1966 amendment ("The amendment provides that an applicant is entitled to intervene in an action when his position is comparable to that of a person under Rule 19(a)(2)(i), as amended, unless his interest is already adequately represented in the action by existing parties."); Fed. R. Civ. P. 19(a)(1)(B)(i) ("that person claims an interest relating to the subject of the

action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest").

Second, Rule 24(b) permits intervention in other circumstances:

> (b) PERMISSIVE INTERVENTION.
>
>> (1) In General. On timely motion, the court may permit anyone to intervene who:
>>
>>> (A) is given a conditional right to intervene by a federal statute; or
>>>
>>> (B) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b). Movants rely on the second test, which has two parts. It requires "a threshold determination that the applicant's claim or defense and the main action have a question of law or fact in common. The determination is not discretionary; it is a question of law. If this requirement is met, then the district court must exercise its discretion in determining whether to permit intervention." *Howse v. S/V Canada Goose I*, 641 F.2d 317, 322–23 (5th Cir. 1981) (citation and quotation marks omitted).

### III. Intervention of right

An unconditional right to intervene under Rule 24(a)(2) exists only if a nonparty claims an "interest relating to the property or transaction that is the subject of the action." That is the same as Rule 19(a)(1)(B)(i)'s test for when the nonparty was *required* to have been joined as a party, as noted above. That interest must be a "direct, substantial, legally protectable interest in the proceedings . . . that the substantive law recognizes as belonging to or being owned by the applicant." *Edwards v. City of Hou.*, 78 F.3d 983, 1004 (5th Cir. 1996) (en banc).

That demanding standard is not met here. The "transaction that is the subject of the action" here is the potential enforcement of the Johnson Amendment against plaintiffs. That is all that an injunction here could control. *See generally Trump v. CASA, Inc.*,

606 U.S. 831 (2025). The only parties with a direct, legally protectable interest in that transaction are plaintiffs, as the potential objects of enforcement, and the government, as the potential enforcer.

A private party's preference that the government enforce a law against another private party is generally not a direct, legally cognizable interest in that potential enforcement. *United States v. Texas*, 599 U.S. 670, 678 (2023) ("When a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed to establish standing.") (quotation marks omitted); *Diamond v. Charles*, 476 U.S. 54, 64 (1986) (explaining that an intervenor-defendant "lacks a judicially cognizable interest in the prosecution or nonprosecution of another" and that "[a]n asserted right to have the Government act in accordance with the law is not sufficient, standing alone, to confer jurisdiction on a federal court") (citations omitted); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

Limited exceptions to that principle exist. For instance, Congress could give a party standing to sue and enforce a federal law in particular circumstances, which might change the analysis. *See Texas*, 599 U.S. at 682. Or a law-enforcement official might be uniquely situated to claim a public nuisance caused by another actor's abandonment of enforcement responsibilities, even without evidence of special harm to the suing official. *See id.* at 682–83; *Texas v. DHS*, 756 F. Supp. 3d 310, 345 (E.D. Tex. 2024).

But neither exception applies here. First, this case is a pre-enforcement action, not an action by AUSCS claiming to step into the shoes of a prosecutor with statutory authorization. Second, AUSCS is not a law-enforcement officer who is uniquely empowered to vindicate public wrongs without evidence of special harm. AUSCS's asserted right to have the government act in accordance with the law is too generalized to be judicially cognizable for intervention purposes. *Diamond*, 476 U.S. at 64.

- 6 -

AUSCS argues that it has a direct, legally protectible interest in how the government enforces the Johnson Amendment against the four plaintiffs here because the outcome might cause inequality with how the government enforces the Johnson Amendment against AUSCS, as a secular nonprofit, implicating AUSCS's own right to equal treatment. Doc. 37 at 11. As an initial matter, AUSCS apparently did not think that its interest was threatened when the government's view that the Johnson Amendment does not reach some of plaintiffs' intended speech led the government to move to dismiss this case. *See* Doc. 37 at 9–10 (arguing that earlier intervention would have been premature because of the government's "vigorous" defense of the Johnson Amendment in its motion to dismiss).

But, that aside, AUSCS's interest in equal treatment as religious nonprofits is not unique to AUSCS. It is shared by hundreds of thousands of secular nonprofits. But if a secular nonprofit has an equal-protection challenge to its own anticipated treatment under the Johnson Amendment, that separate dispute as to a separate transaction can be litigated in an appropriate forum. *Cf. Texas*, 599 U.S. at 681 ("[T]he Court has adjudicated selective-prosecution claims under the Equal Protection Clause. In those cases, however, a party typically seeks to prevent his or her own prosecution, not to mandate additional prosecutions against other possible defendants.").

Lastly, AUSCS argues that it has a sufficient interest because of its 40-year history of advocacy on the Johnson Amendment. Doc. 37 at 11–12. But experience and ideological interest in *legal issues* is not the same as a legally protectible interest in the "transaction that is the subject of the action," as required for intervention of right under Rule 24(a)(2). *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) ("an intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons"); *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 345 (6th Cir. 2007) (rejecting

intervention by public interest group that had "only an ideological interest in the litigation" and where "the lawsuit [did] not involve . . . regulation of [the organization's] conduct in any respect"). AUSCS's experience has led the court to allow its participation in briefing and oral argument as an amicus curiae. But it did not require plaintiffs to join AUSCS as a defendant under Rule 19 and does not require the court to add AUSCS as a defendant under Rule 24(a).

## IV. Permissive intervention

Under Rule 24(b)(1)(B), if the nonparty's claim or defense and the main action have a question of law or fact in common, the court has discretion to permit the nonparty's intervention.

As to the first test, AUSCS does not purport to have a "claim" in common with plaintiffs' claims. AUSCS's motion to intervene does mention a potential equal-protection challenge to its own anticipated treatment as a secular nonprofit, if the plaintiff churches benefit from the consent judgment proposed here. But that hypothetical future dispute is not shared with the plaintiffs' constitutional claims asserted here. Thus, AUSCS moves to intervene as a defendant, not a plaintiff.

It is unclear whether AUSCS has a "defense" in common with the defenses asserted by the government. Some have suggested that "defense" must be understood with reference to the plaintiff's "claim," so it must address the manner in which the plaintiff claims that the Article III judicial power should be exercised against the putative intervenor-defendant. *See* Caleb Nelson, *Intervention*, 106 Va. L. Rev. 271, 274 (2020). If that is correct, then there is no common "defense" here either, as plaintiffs are not asking the court to do anything to AUSCS.

Alternatively, a broader view of "defense" could embrace legal theories asserted by interested bystanders who themselves lack a judicially cognizable interest in the relief sought by a plaintiff. *See id.* at 275 ("Many judges, however, now permit intervention even in situations where the existence of any nominate claim or defense is difficult to find.") (quotation marks omitted).

- 8 -

This court need not resolve that dispute to decide the permis-sive-intervention issue. Even assuming for the sake of argument that AUSCS shares with the government a common "defense" within the meaning of Rule 24(b), the court would not exercise its discretion to permit AUSCS's intervention as a defendant.

In exercising that discretion, a court may consider factors such as whether the movants' interest is legally protectible, the nature and extent of that interest, movants' standing to raise relevant le-gal issues, whether the movants are adequately represented by other parties, and whether movants are likely to contribute signif-icantly to the development of factual issues. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 & n.40 (5th Cir. 1984) (en banc). "Permissive intervention under Rule 24(b) is wholly discretionary and may be denied even when the requirements of Rule 24(b) are satisfied." *Louisiana v. Burgum*, 132 F.4th 918, 923 (5th Cir. 2025) (quotation marks omitted).

In this case, the court places great weight on the nature and extent of AUSCS's interest in the transaction in dispute here. As explained above, that interest is not direct and legally protectible. AUSCS does have a generalized interest that the case out a certain way. But that does not counsel strongly in favor of exercising the court's discretion to allow intervention with full party rights—in which "the control of the original parties over their own lawsuit is significantly diminished"—as opposed to allowing AUSCS to participate in the case as amicus curiae. *New Orleans Pub. Serv.*, 732 F.2d at 473.

On the other side of the balance, not only would intervention deprive the original parties of control over their own lawsuit about a transaction that does not involve AUSCS, but the court finds a low probability that AUSCS's access to discovery and trial rights would aid the development of material facts. This case appears to largely turn on legal issues and legislative facts that a court may find for itself, without the rules-based strictures that govern find-ing adjudicative facts concerning the parties. *See generally Chast-leton Corp. v. Sinclair*, 264 U.S. 543, 548 (1924) (noting a court

"may ascertain as it sees fit any fact that is merely a ground for laying down a rule of law").

Finally, the court attaches little weight to the potential for AUSCS's interests to be impaired, absent intervention, by any judgment in this case. AUSCS has already been granted leave to file an amicus brief and participate in oral argument, allowing it to advocate for its ideological interests.

And AUSCS's legal interests will not be adjudicated here. Any final judgment that the court may enter would not bind AUSCS, legally or practically, in whatever litigation it may wish to pursue in the future. Nor would any reasoning animating a final judgment here bind AUSCS, as district-court opinions have no precedential force even within their own district.

If permissive intervention were justified any time that a non-party could have to later grapple with any merely persuasive force of a district court's reasoning in a case, parties traditionally accommodated as amici curiae could routinely intervene of right. At the same time, that broader conception would not allow those intervenors to fully protect their interests of a jurisprudential nature because parties, including intervening parties, cannot appeal from adverse reasoning as opposed to adverse judgments. *Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 876 F.3d 119, 126 (5th Cir. 2017).

## V. Conclusion

For the reasons stated above, AUSCS's motion to intervene (Doc. 37) is denied and its proposed answer as intervenor-defendant (Doc. 38) is stricken.

AUSCS has a provisional right to appeal from this order. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977). Given the court's view about the relatively small impact of delay on the potential future transaction at issue in this case, the court stays proceedings and administratively closes this case for 60 days and then during the pendency of any appeal from this order. *See* Fed. R. App. P. 4(a)(1)(B) (60-day appeal deadline in civil cases against a United States agency or officer).

*So ordered by the court on December 12, 2025.*

J. CAMPBELL BARKER
United States District Judge