UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

———

No. 6:24-cv-00311

———

**National Religious Broadcasters et al.,**
*Plaintiffs,*

v.

**Scott Bessent et al.,**
*Defendants.*

———

## OPINION AND ORDER

This case involves eligibility for federal tax benefits. Congress grants an income-tax exemption to defined religious, educational, and public-interest organizations, 26 U.S.C. § 501(c)(3), and makes donations to covered organizations deductible from one's taxable income, *id.* § 170(c)(2). Qualifying as such an organization requires a covered purpose, non-profit status, and that:

> no substantial part of the activities of [the organization] is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and [the organization] *does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.*

*Id.* § 501(c)(3) (emphasis added). The italicized requirement was added in 1954 and is known as the Johnson Amendment. *See* 100 Cong. Rec. 9604 (1954). Organizations that engage in the political activity defined there can potentially lose their tax-exempt status.

Plaintiffs are two churches and two other nonprofit groups focused on religious practice. Doc. 20 at 6–7 ¶¶ 28–31. They allege self-censorship from activities that would threaten their tax-exempt status under the Johnson Amendment. *Id.* at 7–13 ¶¶ 34–41. Plaintiffs contend that the Johnson Amendment, facially and as applied to them, violates the First Amendment rights to freedom of speech and free exercise of religion, the void-for-vagueness and

equal-protection strands of Fifth Amendment due-process doctrine, and the Religious Freedom Restoration Act (RFRA). *Id.* at 46–55 ¶¶ 110–57.

Defendants are the IRS and its Commissioner. *Id.* at 7 ¶¶ 32–33. They moved to dismiss the original complaint for lack of standing, lack of statutory jurisdiction, and on the merits. Doc. 13. That motion was mooted by plaintiffs' amended complaint. Doc. 20. Under a new administration, defendants answered and then joined plaintiffs in moving for entry of a consent judgment as a final resolution of plaintiffs' claims. Docs. 30, 35. That triggered a motion by Americans United for Separation of Church and State to answer the complaint as an intervenor-defendant or, in the alternative, file an amicus curiae brief. Doc. 37. The court held oral argument on both motions and received post-argument briefing. Docs. 96, 99, 100, 101. The court denied Americans United's motion to intervene but granted it leave to file an amicus curiae brief. Doc. 102.

The court now considers its jurisdiction to enter the proposed relief and finds that it is barred by the Tax Anti-Injunction Act (AIA) and the related tax-suit bar in the Declaratory Judgment Act (DJA). Plaintiffs are not challenging a burden that arises "separate and apart from" a tax. *Cf. CIC Servs., LLC v. IRS*, 593 U.S. 209, 220–22 (2021). The Johnson Amendment exempts organizations from *taxes* if they do not participate or intervene in political campaigns. If credited, then, plaintiffs' claims would restrain the assessment or collection of a tax based on certain activity. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 738–39 (1974) (holding that a suit to prevent the loss of § 501(c)(3) status is a suit to enjoin taxation). The AIA and DJA thus withhold jurisdiction over plaintiffs' claims.

**1.** Defendants' lead argument is that the AIA does not limit a federal court's jurisdiction if the government agrees to an injunction as part of a settlement. Doc. 84 at 7–8. That argument fails. The AIA's and DJA's tax-suit provisions are jurisdictional,

and a court's jurisdiction is determined from the operative complaint. It cannot be waived or created by litigation conduct.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). That rule applies to the AIA's and DJA's tax-suit provisions because they are jurisdictional. *Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 346 (5th Cir. 2021) ("The DJA prohibits courts from providing declaratory relief with respect to federal taxes; that prohibition is jurisdictional."); *Matter of Westmoreland Coal Co.*, 968 F.3d 526, 533 (5th Cir. 2020) ("When the AIA applies, it divests courts of subject-matter jurisdiction.").

Subject-matter jurisdiction is determined by the nature of the claims and parties in the operative complaint, not by consent during litigation. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant . . . ."); *People's Bank v. Calhoun*, 102 U.S. 256, 260–61 (1880) ("[M]ere consent of parties cannot confer upon a court of the United States the jurisdiction to hear and decide a case."). Entry of a judgment declaring rights or enjoining conduct is an exercise of the judicial power even if the parties consent to it. *Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a judicial function and an exercise of the judicial power to render judgment on consent.").

Indeed, enlisting the judicial power is why some litigants prefer to settle cases not with dismissals but with consent judgments—they bind defendants regardless of policy changes. *See Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1136 (D.C. Cir. 1983) (Wilkey, J., dissenting) ("An agency can abandon a rule so long as the change in policy is not arbitrary and capricious; an agency cannot escape a consent decree without the active participation and approval of the court. . . . [G]overnment by consent decree inhibits Congressional influence on agency policy."

(footnote omitted)). But "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1868).

The government cites no authority for its position that its own consent to an injunction regarding a condition for tax benefits creates jurisdiction that the AIA or DJA otherwise denies. It first cites *United States v. United Mine Workers of America*, 330 U.S. 258 (1947), but that decision involved the government as a *plaintiff*. *Id.* at 265 ("The United States on November 18 filed a complaint [to enjoin defendants from encouraging a strike]."). The issue was whether a statute's broad reference to employer-initiated suits to enjoin certain labor practices kept the government from suing for a remedy otherwise available to it. *Id.* at 270. Here, in contrast, the government is the *object* of the claims filed by plaintiffs. The jurisdictional bar here does not interfere with the IRS's ability to sue anyone.

Defendants then cite *Leiter Minerals, Inc. v. United States*, 352 U.S. 220 (1957), but that case concerned the remedial limitation concerning state courts in 28 U.S.C. § 2283, *id.* at 224, which "is not a jurisdictional statute, but goes only to the granting of a particular form of equitable relief." *Matter of Mooney Aircraft, Inc.*, 730 F.2d 367, 372 (5th Cir. 1984); *Machesky v. Bizzell*, 414 F.2d 283, 287 (5th Cir. 1969) ("§ 2283 is non-jurisdictional in that it is no more than a statutory enactment of the principle of comity for application in the relationship between federal and state courts"). That flexible principle of comity gives no license to rewrite Congress's statutory limits on a court's jurisdiction.

Defendants' final citation is also far afield. *United States v. Hercules, Inc.*, 961 F.2d 796 (8th Cir. 1992), concerned statutory limits on an executive officer's authority. It did not discuss a federal court's jurisdiction or purport to overrule the black-letter rule that party consent does not confer subject-matter jurisdiction on federal courts. *Ins. Corp. of Ir.*, 456 U.S. at 702.

**2.** The DJA and AIA apply here because plaintiffs' claims are "in respect to" taxes and seek to restrain the threat of tax

- 4 -

collection or assessment based on certain activity. *See* 26 U.S.C. § 7421; 28 U.S.C. § 2201; *Bob Jones Univ.*, 416 U.S. at 748–49 (holding that the AIA precluded jurisdiction over a suit seeking relief from the threatened loss of the plaintiff's tax-exempt status under § 501(c)(3)).

As relief on their claims, plaintiffs seek a declaration "that the Johnson Amendment is unconstitutional" and an injunction against defendants "prohibiting them from enforcing the Johnson Amendment." Doc. 20 at 56. As noted, the Johnson Amendment is a condition of tax-exempt status under § 501(c)(3) and the tax-deductibility of donations under § 170(c)(2). Relief enjoining the Johnson Amendment's enforcement or declaring that it does not apply to specific conduct would thus directly bear on the amount of tax that could be collected. It would prevent revoking an organization's tax-exempt status under § 501(c)(3) based on the specified conduct, imposing an excise tax for that conduct as a prohibited political expenditure under 26 U.S.C. § 4955, or seeking to enjoin an organization under 26 U.S.C. § 7409 to abandon either that conduct or tax-exempt status.

Put differently, if the plaintiffs here gave up their § 501(c)(3) tax-exempt status, none of the harms they allege could occur. That is the same dynamic as in *Bob Jones University*, which held the AIA's jurisdictional bar applicable. *See also Crenshaw Cnty. Priv. Sch. Found. v. Connally*, 474 F.2d 1185, 1188 (5th Cir. 1973) (holding that the AIA applied because, without tax-exempt status, the plaintiff "will be liable for taxes on any net income realized by it and contributors to it will not be permitted to deduct from their gross income the amount of their contributions. Either event will result in an increase in taxes.").

Plaintiffs rely on a false dichotomy in arguing that "[i]t is their speech, not their money, that is at stake here." Doc. 83 at 4. Both are implicated. The rights underlying plaintiffs' claims for relief arise under the First Amendment as well as the Fifth Amendment and RFRA. *Cf. Bob Jones Univ.*, 416 U.S. at 736 (addressing claims under the rights to free exercise of religion, to free association,

and to due process and equal protection of the laws). But the relief sought is from the allegedly threatened enforcement of a condition for *tax benefits*: an organization's tax-exempt status and a donation's tax deductibility. It is the potential enforcement of *tax* conditions (the Johnson Amendment) that allegedly infringes the legal rights invoked.

That distinguishes this case from others challenging tax-independent burdens. For example, the plaintiffs in *CIC Services* challenged an information-reporting regime that imposed costs "separate and apart from" any potential tax liability that might accrue based on the information—a matter "several steps removed"—and which was enforced by a freestanding criminal penalty for failure to report. 593 U.S. at 220–22. This case does not involve any penalty independent of tax status. It does not involve reporting costs with no proximate relation to tax collection. The claims allege that the Johnson Amendment cannot lawfully be applied to condition *tax* consequences on certain expressive conduct.

Similarly, *Linn v. Chivatero* challenged the seizure of records by federal agents and sought the return of that property. 714 F.2d 1278, 1279 (5th Cir. 1983). The court had jurisdiction there because the litigant did not "challenge the propriety of any tax that may be assessed against him" but instead only the government's seizure and use of records. *Id.* at 1283. As such, the status of the government agents "as tax officials is incidental to the underlying complaint." *Id.* at 1282. The opposite is true here. The complaint seeks relief from potential enforcement of the Johnson Amendment—a condition for tax advantages.

*Linn* in fact recognized several principles applicable here. The Fifth Circuit noted that a plaintiff's "decision to cast his lawsuit in constitutional terms does not mean that the Anti-Injunction Act is inapplicable." *Id.* That overcomes plaintiffs' appeal to the constitutional nature of their legal rights.

*Linn* also noted that the Fifth Circuit has "interpreted the Act broadly: it is applicable not only to the assessment and collection of taxes, but to 'activities which are intended to or may culminate

in the assessment or collection of taxes' as well." *Id.* (quoting *Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d 1315, 1320 (5th Cir.), *modified on other grounds*, 646 F.2d 223 (5th Cir. 1981)). Enforcement of the Johnson Amendment—what is disputed here— would directly affect the assessment or collection of taxes on income that would otherwise be exempt or deductible.

As such, the AIA removes this court's jurisdiction to issue injunctive relief in this "suit for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). Declaratory relief is also outside this court's jurisdiction. The DJA withholds jurisdiction to declare party rights "with respect to Federal Taxes." 28 U.S.C. § 2201(a). And the DJA's bar is "at least as broad" as the AIA's bar. *McCabe v. Alexander*, 526 F.2d 963, 965 (5th Cir. 1976).

Other fora, however, may be available. A refund suit could be brought if a tax were ultimately collected. 26 U.S.C. § 7422; 28 U.S.C. §§ 1346(a)(1), 1491. And an exception in 28 U.S.C. § 2201(a) now allows a 26 U.S.C. § 7428(a) declaratory suit—available in one of three courts headquartered in the District of Columbia— if the IRS were to make any determination with respect to an organization's § 501(c)(3) tax-exempt status. A dispute in that posture would also have the benefit of a specific set of facts upon which the IRS made a determination.

**3.** The parties appeal to "a narrow, judicially created exception" to the AIA recognized by the Supreme Court in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962). That exception applies only if (1) "it is clear that under no circumstances could the Government ultimately prevail" and (2) "equity jurisdiction otherwise exists." *Id.* at 7. The first prong requires that the plaintiff have a "certainty of success on the merits." *Bob Jones Univ.*, 416 U.S. at 737. The second prong requires the plaintiff to show that irreparable harm will occur absent an injunction— "harm for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). These prongs define a "stringent" test, *Bob*

*Jones Univ.*, 416 U.S. at 737, that is "most onerous . . . indeed," *Connally*, 474 F.2d at 1187.

As to the second prong, it is not obvious that the government will ever assess an income tax against plaintiffs or impose any other tax consequence under the Johnson Amendment. In any event, after *Bob Jones University*, Congress provided the remedy under 26 U.S.C. § 7428(a) of a pre-tax declaratory suit if the IRS makes a determination about an organization's § 501(c)(3) status. The prospect of a taxpayer paying a tax that results in financial ruin not fixable by a later tax refund—the reason for this narrow, equitable exception—is thus not present.

The exception's first prong is also not met. It requires that a court adopt the "most liberal view of the law and the facts" that favors the taxing authority. *Williams Packing*, 370 U.S. at 7. The prong then requires a "certainty" that the government would collect a tax doomed to be refunded. *Bob Jones Univ.*, 416 U.S. at 737. Given the open-textured nature of the legal provisions at issue here and the wide array of potential facts discussed in the complaint, the court is not prepared to find plaintiffs' contentions so undebatable as to foreclose any possibility of government success. *Cf. id.* at 748 (holding that the "petitioner's First Amendment, due process, and equal protection contentions are sufficiently debatable to foreclose any notion that under no circumstances could the Government ultimately prevail") (quotation marks omitted). The court of course reaches that decision "[w]ithout deciding the merits." *Id.* at 748–49.

**4.** Citing *South Carolina v. Regan*, 465 U.S. 367 (1984), plaintiffs argue that 26 U.S.C. § 7428 "provides no remedy for the chilling effect" on plaintiffs' speech because they have not been subject to an adverse § 501(c)(3) determination. Doc. 83 at 3–4. That echoes the argument in *Bob Jones University* about the "pressures operating on organizations facing revocation of § 501(c)(3) status" before it occurs. 416 U.S. at 731. But the Supreme Court there focused on taxes—the nature of the jurisdictional bar—noting that a tax-refund suit was available and offered "a full, albeit

delayed, opportunity to litigate" the applicability of § 501(c)(3) conditions in light of a party's constitutional rights. *Id.* at 746.

So, even as the law stood in *Bob Jones University*, it was "not a case in which an aggrieved party has no access at all to judicial review." *Id.* Access to judicial review was then expanded by Congress's addition of § 7428(a)'s procedure for pre-tax declaratory relief. Plaintiffs present arguments about the consequences of requiring them to use that procedure. But Congress "is the appropriate body to weigh the relevant, policy-laden considerations, such as the harshness of the present law, the consequences of an unjustified revocation of § 501(c)(3) status, [and] the number of organizations in any year threatened with such revocation." *Id.* at 750. This court also need not decide whether such consequences give plaintiffs standing under *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), for Congress can withhold an inferior court's statutory jurisdiction to decide even Article III cases and controversies. *Bob Jones Univ.*, 416 U.S. at 746 (rejecting due-process challenge to the AIA).

\* \* \*

For the reasons explained above, this case is dismissed without prejudice for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

*So ordered by the court on March 31, 2026.*

J. CAMPBELL BARKER
United States District Judge

- 9 -